IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Jonathan David McCoy, | ) | CIVIL ACTION №: 3:10-cv-00132-JFA-JRM |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM IN OPPOSITION TO** |
| City of Columbia, City of Columbia Police Department, John K. Passmore, James Heywood, and Amanda H. Long, all in their individual and official capacities, | ) | **MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE AND MAKE MORE DEFINITE AND CERTAIN** |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Jonathan David McCoy submits this Memorandum in Opposition to Defendant City of Columbia and City of Columbia Police Department's ("City") Motion to Dismiss, or in the Alternative, Motion to Strike and Make More Definite and Certain [Dock En. No. 10].

**STATEMENT OF FACTS**

On the evening of October 16, 2009, McCoy and his friend who was also a guest of McCoy that night, Allen Keith McAlister Jr. ("McAlister"), were socializing with a wedding party at an establishment known as Red Hot Tomatoes on Harden Street in the Five Points District of Columbia, South Carolina.  (Verf. Compl. ¶ 10).  McCoy is a licensed attorney in South Carolina.

Unbeknownst to McCoy at the time, McAlister was asked to leave Red Hot Tomatoes by the bartender after McAlister disputed several charges placed on his food and beverage tab. After McAlister was requested to leave, he immediately exited through the front door of Red Hot Tomatoes and never reentered.  (Id. ¶ 11).  Shortly thereafter, McCoy walked outside of Red Hot Tomatoes and witnessed McAlister being violently shoved against a wall and thrown to the

ground on a public sidewalk by Defendants Passmore, Heywood, and Long.  (Id. ¶ 12).

McAlister was charged with "Refusal to Leave" Red Hot Tomatoes, pursuant to S.C. Code Ann.

§ 16-11-620,[1] and Resisting Arrest pursuant to City of Columbia Municipal Ordinance § 10-

34(a).  (Id. ¶ 13).  This arrest occurred on a public sidewalk outside of Sharky's Restaurant, a

separate and distinct business establishment from Red Hot Tomatoes, and approximately seventy

(70) feet away from the front entrance to Red Hot Tomatoes.  (Id. ¶ 13).

McCoy approached the Officers while McAlister was handcuffed and simply asked if

McAlister was under arrest.  McCoy intended to inquire about the nature of the arrest and the

location of Mr. McAlister's booking.  (Id. ¶ 15).  When McCoy approached, one or more of the

Officers shoved McCoy and yelled at him to "Shut up! Keep walking! It's none of your

business."  (Id. ¶ 16).  McCoy backed away and responded, "I just want to know what happened

and where you are taking him so I can appear at his bond hearing.  I am an attorney and he is

supposed to stay at my house tonight.  I want to know where you are taking him and he needs to

be advised of his right to remain silent," or words to that effect.  (Id. ¶ 17).  Defendant Passmore

and Long continued to pursue McCoy, shoving him and pointing their finger in his face and

yelling at him, "I told you to shut up!  You ain't a lawyer.  But now you will know exactly where

he is going cuz' you are going with him too, son."  (Id. ¶ 18).  Defendants Passmore and Long

forcibly handcuffed McCoy and he was escorted to their patrol vehicles.  (Id. ¶ 19).

---

[1]S.C. Code Ann. § 16-11-620 provides:

> Any person who, without legal cause or good excuse, enters into the dwelling house, place of
> business, or on the premises of another person after having been warned not to do so or any person
> who, having entered into the dwelling house, place of business, or on the premises of another
> person without having been warned fails and refuses, without good cause or good excuse, to leave
> immediately upon being ordered or requested to do so by the person in possession or his agent or
> representative shall, on conviction, be fined not more than two hundred dollars or be imprisoned
> for not more than thirty days.

McAlister should have never been arrested in the first instance.  He never reentered Red Hot Tomatoes.  He was
standing on a public sidewalk over 70 feet away.  The South Carolina Supreme Court has held this provision "has no
application to public property," such as a sidewalk.  State v. Hanapole, 255 S.C. 258, 178 S.E.2d 247 (S.C. 1970).

While McCoy was subjected to search and interrogation standing in front of the patrol vehicle, McCoy stated: "Help me understand. What am I being arrested for?" Defendant Passmore responded, "For that right there— asking questions. It's none of your business." McCoy stated, "Am I arrested for anything else?" Defendant Passmore responded, "No, and asking questions interfered with us." McCoy stated, "I was being polite and simply asking those questions. So it's a crime to ask questions about his arrest?" Defendant Passmore stated, "Yes, and you won't quit asking questions. You should have minded your own business kid." During this exchange, Defendants never claimed McCoy wrongfully touched them or threatened them in any manner. (Id. ¶ 21).

Additionally, Defendant Passmore stated to McCoy at or near the patrol vehicle, "I arrest kids down here all the time that tell me that they are lawyers; that's not the first time I have heard that story," and "since you claim to be a lawyer, you should know about your right to remain silent," and "maybe you can find some clients in jail," to which Defendant Passmore and the other officers snickered. Defendant Passmore stated, "I'm gonna put on the report that you lied to me about being a lawyer. Are you sure you want me to put that down or do you want to explain that to the judge?" (Id. ¶ 22).

When Defendant Long placed McCoy in the back seat of Officer Heywood's patrol vehicle and McCoy stated, "Are you really putting me in this cop car and actually taking me to jail for asking questions?" Defendant Long replied, "Yes— and that's where you go when you get arrested." (Id. ¶ 23). McCoy was charged and arrested with violating City of Columbia Municipal Ordinance Section 10-34(b) for "interfering with a police officer" and he was issued a State of South Carolina Uniform Traffic Ticket, number 13589EW. (Id. ¶ 24).

The City offers <u>no</u> affidavit testimony to dispute that these statements were made.  [Doc. Ent. No. 17]

McCoy and McAlister were transported to the Alvin Glenn Detention Center in Richland County, South Carolina for booking and confinement.  However, Defendants did not properly or timely deliver required booking documentation to the Alvin Glenn Detention Center, and as a result, McCoy and McAlister were prevented from appearing at any of the two scheduled bond hearings set for October 17, 2009.  (<u>Id.</u> ¶ 29).  Without being afforded a right to a bond hearing, McCoy and McAlister were assigned a cell in the general population ward.  (<u>Id.</u> ¶ 25).  McCoy witnessed a neighboring cellmate violently commit suicide by hanging himself with rope from the sink and towel holder of the cell.  (<u>Id.</u> ¶ 30).

On the afternoon of October 17, 2009, while McCoy and McAlister remained confined, McAlister's father met or spoke with individuals of the City of Columbia Police Department, including Defendant Passmore, concerning the arrest.  Defendant Passmore claimed McAlister was arrested for reentering the front door to Red Hot Tomatoes.  Defendant Passmore told McAlister's father, "I was right there.  The officer gave him every chance to leave Red Hot Tomatoes and your son refused.  The officer had no choice but to arrest him.  Every business owner has a right to tell someone to leave their place of business."  (Doc. Entry 12-2; Affidavit of Allen Keith McAlister, Sr. ¶ 4).  Defendant Passmore never stated that McCoy threatened or wrongfully touched the officers in any manner, only that McCoy said he was an "attorney."  (<u>Id.</u> ¶ 5-6).

At the time of the arrest, Defendants Passmore, Heywood, and Long completed an Incident Report.  Defendants Passmore, Heywood, and Long falsified this document in a willful attempt to concoct probable cause for and pretextually justify these wrongful arrests.  This is a

4

crime in South Carolina pursuant to Sections 17-13-50 and 16-17-722 of the South Carolina Code.

In the Incident Report, these Defendants claimed McAlister "came back [to Red Hot Tomatoes]….At that time [McAlister] was advised he was under arrest for Refusal to Leave" and "when [Officers] attempted to place [McAlister] into handcuffs he snatched his arms away and started pushing the Officers away from him. Two other Officers had to help subdue [McAlister] to the ground to gain control of him." Officers falsely claimed McCoy "grabbed an Officer by the arm" and "continued to intervene by getting in RO's face." (Verf. Compl., Ex. D).

After the arrest, McCoy obtained video from two outdoor video surveillance cameras at Red Hot Tomatoes and Sharky's. Thereafter, a copy of this video was delivered to the City Attorney's Office of the City of Columbia. Despite repeated and persistent requests for this charge to be dismissed based on this video evidence, Defendants are continuing to seek prosecution of McCoy. (Verf. Compl., Ex. D and Motion for Preliminary Injunction, Ex 2, Letter from City Attorney's Office dated January 11, 2010). As a result, McCoy filed a Verified Complaint on January 19, 2010. Even though Defendants have maintained this video since early November, Defendants issued a statement on February 4, 2010 claiming that "upon learning of the serious allegations relating to the incident, Chief Tandy Carter (Columbia Police Department) [will] immediately initiate an internal affairs investigation." (Ex 3, Press Release dated February 4, 2010). On February 11, 2010, Defendant City of Columbia and the City of Columbia Police Department filed an answer and moved to dismiss.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a challenged pleading, but it does not resolve disputes surrounding the facts or the merits of a claim. Republican Party of N.C. v. Martin, 980 F .2d 943, 952 (4th Cir. 1992). A court must determine only if the pleading at issue fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The key issue is not whether the plaintiff will prevail on his claim, but whether he is entitled to offer evidence in support of the claim. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). A court should dismiss a case on Rule 12(b)(6) grounds "only in very limited circumstances," Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989), specifically, only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss under Rule 12(b)(6), the pleading must be liberally construed in the light most favorable to the non-moving party, and the allegations made therein must be taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969). The court will "presume that general allegations embrace those specific facts that are necessary to support the claim." Luian v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Defendants have also moved to strike portions of the complaint. "Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." Wright and Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed. 2010). "[A] motion to strike on the basis of irrelevancy should only be granted when it is clear that the material in question can have no

possible bearing upon the subject matter of the litigation and the material may prejudice the other party." <u>Simaan, Inc. v. BP Prods. N. Am., Inc.</u>, 395 F. Supp. 2d 271, 278 (M.D.N.C. 2005). "If any doubt exists the motion should be denied, any doubts being resolved in favor of the pleading." 35A C.J.S. Federal Civil Procedure § 495 (2010).

## <u>LAW/ANALYSIS</u>

I.      **THIS COURT SHOULD NOT ABSTAIN AND DISMISS WITH PREJUDICE PURSUANT TO RULE 12(B)(6).**

The City requests this Court to abstain under the <u>Younger</u> doctrine and dismiss this case with prejudice. Abstention is "an extraordinary and narrow exception to the duty of a [federal] Court to adjudicate a controversy properly before it," and is justified "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." <u>Allegheny County v. Mashuda Co.</u>, 360 U.S. 185, 188-89 (1959).

This Court should not abstain because this is a First Amendment case. The Supreme Court has caution it is "particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." <u>City of Houston v. Hill</u>, 482 U.S. 451, 467 (1987). "We have held that abstention is inappropriate for cases where statutes are justifiably attacked on their face as abridging free expression." <u>Id.</u> (citing <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 489-490 (1965)). "In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." <u>Id.</u> at 467-68. (citing <u>Zwickler v. Koota</u>, 389 U.S. 241, 252 (1967). Just as in <u>Hill</u>, this Court should declined to abstain.

As the Fourth Circuit has held the purpose of abstention is not to "convert a doctrine of comity into a blanket permission for the prolonged commission of unconstitutional acts." This

doctrine should not permit a "state agency to persist in conduct that is patently unconstitutional." Telco Communications Inc. v. Carbaugh, 885 F.2d 1225, 1229 (4th Cit. 1989).

To the extent this Court deems Younger to apply, the exceptions to this doctrine are implicated. The exceptions to the Younger abstention doctrine are cases where (1) the state statute is patently unconstitutional, (2) the prosecution is in bad faith, or (3) other extraordinary circumstances exist. Id. at 46-55.

In setting forth the parameters of the Younger doctrine, the Supreme Court stated: "we do not think that opinion stands for the proposition that a federal court can properly enjoin enforcement of a statute solely on the basis of a showing that the statute 'on its face' abridges First Amendment rights." Id. at 53. "It is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Id. at 53-54 (citing Watson v. Buck, 313 U.S. 387, 402). To satisfy the Younger exception, the invalidity of the statute must be "patent and obvious." Phelps v. Hamilton, 59 F.3d 1058, 1064 (10th Cir. 1995).

If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its jurisdiction. Harman v. Forssenius, 380 U.S. 528 (1965). Relevant state statutory provisions must, however, be relatively plain and unambiguous for there to be no necessity for the federal court to abstain pending determination of the issue in a state court. Trainor v. Hernandez, , 431 U.S. 434, 440-43 (1977).

a)  **City of Columbia Municipal Ordinance § 10-34(b) is Patently and Flagrantly Unconstitutional On Its Face.**

City of Columbia enacted a municipal ordinance in 1979, codified in the Code of Ordinances of the City of Columbia, South Carolina in Section 10-34(b), creating a misdemeanor criminal offense for "interfering with a police officer" within the City of Columbia. City of Columbia Municipal Ordinance § 10-34(b) provides, "It shall be unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties." This ordinance is unconstitutionally broad and vague on its face because it criminalizes a substantial amount of constitutionally protected speech afforded by the First Amendment to the United States Constitution.

The First Amendment requires that "[c]ongress shall make no law….abridging the freedom of speech." U.S. Const. Amend. I. First Amendment rights "are protected by the Fourteenth Amendment from invasion by the States." Edwards v. South Carolina, 372 U.S. 229, 235 (1963).

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982); see also Kolender v. Lawson, 461 U.S. 352, 359 n. 8 (1983). "Criminal statutes must be scrutinized with particular care. Those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." City of Houston, Texas v. Hill, 482 U.S. 451, 458 (1987). (multiple citations omitted). The Court "will not rewrite a state law to conform it to constitutional requirements" and should strike down an unconstitutional law unless the statute is "readily susceptible to a narrowing construction." Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 397

(1988).  "To withstand an overbreadth challenge based on first amendment rights, an ordinance must be narrowly drawn to serve compelling needs of society."  U.S. Labor Party v. Pomerleau, 557 F.2d 410, 412 (4th Cir. 1997) (citing Broadrick v. Oklahoma, 413 U.S. 601, 611-15 (1973)).  Based on clear precedent, as discussed below, this ordinance is patently unconstitutional.

In Hill, the United States Supreme Court struck down a substantially similar municipal ordinance criminalizing actions that "interfere" with a police officer as unconstitutional on its face.  In that case, the City of Houston enacted municipal ordinance 34-11 which stated: "It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty."

The Supreme Court held this ordinance "criminalizes a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement."  Id. at 466.  "The opportunity for abuse…[and]…a virtually open-ended interpretation is self-evident" and this ordinance is "[f]ar from providing the breathing space that First Amendment freedoms need to survive."  Id.  (citations omitted).  "As the Court observed over a century ago, *it would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large*."  Id. at 465.  (citing U.S. v. Reese, 92 U.S. (2 Otto) 214, 221, 23 L.Ed. 563 (1876))(emphasis added).  Because First Amendment freedoms need "breathing space to survive," government may regulate "only with narrow specificity."  Buckley v. Valeo, 424 U.S. 1, 41 (1976).  As recognized by the District Courts, "[t]he Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and even profanity directed at police."  Wilkerson v. Charleston Police Dept., 2009 WL 1506717 (S.D.W.Va. May, 27, 2009).

In so holding, the Supreme Court in <u>Hill</u> reasoned "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" because:

> the Constitution does not allow such speech to be made a crime. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principle characteristics by which we distinguish a free nation from a police state.

<u>Id.</u> at 461-63.  "Speech is often provocative and challenging....[But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."  <u>Id.</u> at 461.  (citations omitted).  "A properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'"  <u>Id.</u>  The Supreme Court held Houston's interference ordinance "is not narrowly tailored to prohibit only disorderly conduct or fighting words."  <u>Id.</u> at 465.

The pronouncement in <u>Hill</u> was first recognized by the South Carolina Supreme Court in <u>State v. Perkins</u>, 306 S.C. 353, 412 S.E.2d 385 (1991).  In <u>Perkins</u>, the South Carolina Supreme Court overturned a conviction of a disorderly conduct offense as unconstitutional as applied where the defendants "became upset and raised their voices" at the officers in the sheriff's office. <u>Id.</u> at 354, 412 S.E.2d 385.  More recently, in <u>State v. Bailey</u>, 368 S.C. 39, 47, 626 S.E.2d 898, 902 (Ct. App. 2006), the South Carolina Court of Appeals affirmed a reversal of a defendant's conviction in municipal court where "[he] was arrested for being boisterous with the deputies and there was no evidence that his language amounted to 'fighting words.'"  The court noted "the 'fighting words' exception may require narrow application in cases involving words addressed to a police officer because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen.  <u>Id.</u> at 46, 626 S.E.2d at 902.

In this case, City of Columbia's Municipal Ordinance § 10-34(b) interference ordinance suffers from the identical constitutional defects as the ordinance the Supreme Court struck down in <u>Hill</u>.    Section 10-34(b) is unconstitutionally broad on its face because it criminalizes a substantial amount of constitutionally protected speech.    Since the Supreme Court has already found Houston's ordinance criminalizing "any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman" to be unconstitutional, it follows this Court should strike down Columbia's ordinance, which makes it "unlawful for any person to interfere with or molest a police officer."    These ordinances are one and the same.    However, Columbia's ordinance is seemingly more broad and less defined than Houston's ordinance because that ordinance applied to certain actions that "assault, strike or in any manner oppose, molest, abuse or interrupt any policeman."    But in Columbia, it is a crime just to "interfere with…a police officer."    The term "interfere with" is undefined, unrestricted, and far out of bounds with clearly proscribed constitutional mandates.    Without a question, the broad and all encompassing nature of this ordinance inevitability criminalizes free speech.    Anything an officer considers to "interfere" with him is a crime.    "Statutes restrictive of or purporting to place limits to those [First Amendment] freedoms must be narrowly drawn to meet the precise evil the legislature seeks to curb…and…the conduct proscribed must be defined specifically….")  <u>Baggett v. Bullitt</u>, 377 U.S. 360, 373 n.10 (1964).    Ordinance § 10-34(b) is not limited or narrowly tailored to physical obstruction of police activity or fighting words as instructed in <u>Hill</u>.    Without this ordinance being limited, it is facially unconstitutional.    It prohibits and criminalizes speech and conduct that in any manner interrupts an officer and accords the police unconstitutional and unfettered discretion in their enforcement.    The construction of this ordinance "prohibits verbal interruptions of police officers," which is patently unconstitutional.  <u>Hill</u> at 461.

Additionally, ordinance § 10-34(b) is unconstitutionally vague.  A reasonable person is incapable of knowing what conduct or words constitute the undefined, ambiguous, and vague criminal offense to "interfere with…a police officer."  Since the ordinance does not define "interfere with," citizens cannot reasonably understand or determine what types of conduct is prohibited.  "A statute is impermissibly vague if it either (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'"  Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074, 1079 (4th Cir. 2006) (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000)). Ordinance § 10-34(b) does both.  The fact this ordinance authorizes and encourages arbitrary and discriminatory enforcement, inviting gross abuses of discretion, is self-evident in this case. "[T]he most important factor affecting the clarity that the Constitution demand of a law is whether it threatens to inhibit the exercise of constitutionally protected rights.  If….the law interferes with the right of free speech….a more stringent vagueness test should apply." Hoffman Estates, 455 U.S. at 499.  This "unfettered discretion….run[s] afoul of the First Amendment."  Child Evangelism Fellowship of S.C. v. Anderson School Dist. Five, 470 F.3d 1062, 1064 (4th Cir. 2006).

The overly broad and vagueness concerns of this ordinance further violate constitutionally afforded due process rights.  The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1.  The Supreme Court has held a person of ordinary intelligence must be able to reasonably understand what conduct is prohibited. Kolender, 461 U.S. at 357.  The Supreme Court has long held unclear laws should be found

13

unconstitutional since they deny due process.  <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972).

The South Carolina Supreme Court in <u>Town of Honea Path v. Flynn</u>, 255 S.C. 32, 176 S.E.2d 564 (S.C. 1970) has already struck down a similar municipal ordinance criminalizing "interference" with a police officer as patently unconstitutional.  The Town of Honea Path enacted an ordinance which provided: "It shall be unlawful for any person to assault, resist, abuse or in any manner, by word or act, interfere with a police officer or any other officer or employee of the City in the discharge of his duty…."  <u>Id.</u> at 38, 176 S.E.2d at 566.  The Supreme Court of South Carolina held: "In the light of the foregoing principles of constitutional law, we cannot help but conclude that the ordinance here under attack is unconstitutional and void insofar as it attempts to make…. 'interference' with any officer 'in any manner, by word or act' a penal offense."  <u>Id.</u> at 39, 176 S.E.2d at 567.  "Aside from any invasion of the constitutional guaranties of freedom of speech, just what kind of word or words would amount to interference with an officer is not at all indicated by the ordinance."  <u>Id.</u> at 40, 176 S.E.2d at 567.

In so reasoning, the South Carolina Supreme Court stated:

> To allow police officers, or other officers actively engaged in assigned duties, the discretion to arrest and prosecute those whom they feel have made inappropriate remarks upon a charge of interference would, we think, invite gross abuses of discretion and impose unfair penalities [sic] and burdens upon the citizenry. The facts of the instant case rather forcefully demonstrate the fundamental reasons why the particular ordinance is constitutionally invalid. It is true that there was some evidence on the part of the prosecution, expressly contraverted [sic] by the appellant, to the effect that appellant offered some slight physical interference or resistence [sic]. But it is not contended that he physically harmed or injured either of the officers or even attempted to do so. The record as a whole rather strongly indicates the probability that there would have been no arrest and no charges against the appellant but for the verbal disagreement between him and the Town police officers as to the proper disposition of the

14

> bottled beverages. Under these circumstances the conviction under this ordinance may well have rested upon nothing more than mere words uttered by the appellant which were not pleasing to the local police officers who obviously did not like anyone questioning or challenging their authority. In view of the probability that the conviction of the defendant rested upon the foregoing provisions of Ordinance No. 102, which are herein declared invalid, such conviction must be set aside.

Id. at 40, 176 S.E.2d at 567-68.  The only distinction between Town of Honea Path's ordinance, which was found clearly unconstitutional, and the City of Columbia's current ordinance is the language "in any manner, by word or act."  However, this is a distinction without any significance.  City of Columbia's ordinance only vaguely utilizes the words "interfere with or molest a police officer" which is tantamount to criminalizing *any* conduct of *any* manner, left solely to the discretion of the enforcer.  This clearly "invite[s] gross abuses of discretion and impose[s] unfair penal[t]ies and burdens upon the citizenry" just as the Court warned against in Town of Honea Path.  "Because a violation depends on the subjective opinion of the [police officer], the speaker has no protection against arbitrary enforcement of the ordinance."  U.S. Labor Party, 557 F.2d at 412.

Despite the South Carolina Supreme Court's clear holding against the Town of Honea Path in 1970 and United States Supreme Court's holding in 1987 in Hill, the City of Columbia continues to allow this unconstitutional ordinance to remain on the books.  This interference ordinance is not limited at all or narrowly defined as required by the constitution and represents a flagrant foul of the First and Fourteenth Amendments.  In light of this well-established precedent, Section 10-34(b) is patently unconstitutional on its face.

### b)  The City of Columbia's Prosecution is in Bad Faith

"Bad faith in the Younger sense generally means a prosecution has been brought without a reasonable expectation of obtaining a valid conviction."  Colonial First Properties, LLC v.

Henrico County Virginia, 166 F. Supp. 2d 1070 (E.D. Va. 2001).  Ordinarily, a bad faith prosecution is shown by a lack of probable cause. See Kugler v. Helfant, 421 U.S. 117, 126 n. 6 (1975).  If prosecutions are brought for the purpose of chilling or preventing a defendant from exercising his or her constitutional rights, this may constitute a harassing and/or bad faith prosecution, even though the charges are predicated on probable cause.  Perez v. Ledesma, 401 U.S. 82, 118 n. 11 (1971).  Based on the holding of Hill, courts have routinely held it is "clearly established" that a reasonable officer should know that "arresting someone for cursing, screaming, and yelling at [an officer] is a violation of the First Amendment." George v. Kanawaha County Sheriff's Dept., 2009 WL 347782 (S.D.W.Va. Feb. 3, 2009) (multiple citations omitted).

Since there is no probable cause, any continued prosecution of McCoy is in bad faith.  It is obvious the City is only continuing to prosecute McCoy because it fears civil liability.  The City should be reminded "in a criminal prosecution is not that it shall win a case, but that justice shall be done….the twofold aim of which is that guilt shall not escape or innocence suffer." Berger v. U.S., 295 U.S. 78, 87 (1935).  The evidence is clear.  In the Incident Report, the Officers only state McCoy "asked what was happening."  This is the only speech the Officers claimed he made.  The officers told McCoy he was being arrested for "asking questions." This is undisputed.  Simply asking "what was happening" does not remotely constitute fighting words as required under the law.  McCoy was not engaging in criminal behavior.  The Officers further stated in the Incident Report that McCoy "grabbed an officer by the arm" and "continued to intervene by getting in [the] RO's face."  However, based on the clear video evidence, this **never** happened.  McCoy **never** "grabbed an officer by the arm."  He **never** "continued to intervene by getting in RO's face."  If anything, it was the Officers that belligerently pursued McCoy after he

16

backed up. Despite the Officer's abusive conduct, the video makes clear, through McCoy's body language, that McCoy remained non-threatening, non-confrontational, and passive. Based on the evidence before the Court, this arrest is unquestionably unconstitutional and no probable cause exists to justify these arrests.[2] The City of Columbia has refused to dismiss these charges. The City is continuing to prosecute McCoy without probable cause and attempting to hold these criminal charges over McCoy's head to gain an advantage in a civil matter. Equity demands this Court not abstain from this dispute.

Thus, McCoy should not be subject to threat of further criminal prosecution and penalties on an ordinance that is patently unconstitutional on its face and without any probable cause. However, in the event this Court does abstain in this matter, any dismissal should be without prejudice, not on the merits, and hold in abeyance pending the outcome of the state proceedings. See Harris County Com'rs Court v. Moore, 420 U.S. 77 (1975).

### c.      Younger Abstention Does not Apply to McCoy's Claim for Damages

In Suggs v. Brannon, 804 F.2d 274, 279 (4th Cir. 1986), the Fourth Circuit held "Younger does not invariable require dismissal of § 1983 damage actions." The court reasoned the "Younger abstention presupposes that the federal plaintiff will have an adequate opportunity to raise constitutional claims during the ongoing state [criminal] proceeding." McCoy cannot receive damages in the City's criminal proceeding. Thus, "[d]eferring the appellants' right to

---

[2] Additionally, based on the clear video evidence, there is no probable cause of the initial arrest of Keith Allen McAlister, Jr. for "Refusal to Leave" Red Hot Tomatoes and "Resisting Arrest." The Incident Report states McAlister "came back [to Red Hot Tomatoes]....at that time [McAlister] was advised he was under arrest for Refusal to Leave" and "when [Officers] attempted to place [McAlister] into handcuffs he snatched his arms away and started pushing the Officers away from him. Two other Officers had to help subdue [McAlister] to the ground to gain control of him." This could not be any further from the truth. As proven by clear video evidence, McAlister was not reentering Red Hot Tomatoes. He was standing approximately seventy (70) feet away on a public sidewalk in front of Sharky's Restaurant, a separate and distinct business establishment, waiting for McCoy to exit Red Hot Tomatoes. All three Officers approached McAlister at the same time, and without advising him that he was under arrest, they forcibly grabbed McAlister and slammed his face against the wall of Sharky's Restaurant, and then tripped him to the concrete sidewalk. He was not trespassing and he never resisted the arrest.

institute an action for damages until the conclusion of the criminal cases might cause their claims to be barred by a statute of limitations. Thus, in order to afford plaintiffs a day in court, they should be allowed to maintain their actions for damages." Accordingly, <u>Younger</u> does not apply to McCoy's claim for damages and this case should proceed.

**II.      The City's Motion to Strike or Make More Definite Certain Is Without Merit.**

In the alternative, the City's request to strike or make more definite and certain is without merit. The City presents thirteen (13) additional grounds for relief under Fed. R. Civ. P. 12. McCoy will address those grounds in the same order as presented by the City.

1.      Paragraphs 13 and 14 provide a necessary statement of background facts relevant to this dispute. The allegations are relevant to issues of probable cause and describe how the Defendants' sworn statement, attached as Exhibit D to the Verified Complaint, is wholly contradicted by the video surveillance evidence, attached as Exhibit A to the Verified Complaint.

2.      Paragraphs 24 and 25 allege that, upon information and belief, if Defendants were following proper procedures in responding to the scene of an incident, the officers should have activated its blue lights. The statements attested to in the Verified Complaint would have been captured on video if the Officers would have followed proper procedures.

3.      Paragraphs 28, 29, 30, 31, 33, 34, 35, and 36 further support McCoy's claims for damages due to Defendants' alleged unlawful arrest. These allegations are not "irrelevant, unnecessary, immaterial, and scandalous."

4.      Paragraph 38 provides a necessary statement of background facts relevant to this dispute. The allegations are relevant to issues of probable cause and describe how the Defendants' sworn statement, attached as Exhibit D to the Verified Complaint, is wholly contradicted by the video surveillance evidence, attached as Exhibit A to the Verified Complaint.

18

5.      Paragraph 41 provides a necessary statement of background facts relevant to this dispute.  The allegations set forth in the paragraph are directly relevant to <u>Younger</u> and the bad faith prosecution of McCoy.

6.      Paragraphs 44, 45, 46, 47, 48, and 49 allege the constitutional underpinnings relevant to this case and constitute "a short and plain statement of the claim showing that the pleading is entitled to relief" as required under Rule 8(a)(2), Fed. R. Civ. P.  These paragraphs place Defendants on clear notice of the theories of liability asserted against them.

7.      Paragraph 59 does not allege a conclusion of law but rather alleges that Defendants knew or should have known that Ordinance Section 10-34(b) is unconstitutional based on the preceding factual allegations.

8.      Sub-paragraph (b) in the prayer for relief should not be struck.  In the paragraph, McCoy is simply reserving his right to amend his complaint to assert common law tort causes of action that may accrue due to the City's continued prosecution of McCoy in the event his is acquitted on his underlying criminal charge.

9.      Paragraph 7 of the Complaint should not be struck to the extent it relies on the Constitution of the State of South Carolina.  This court inevitably has supplemental jurisdiction for any state law claims.

10.     Defendants can be sued in their "official capacities" for violations of 42 U.S.C. § 1983.  The Supreme Court has held that plaintiffs may file suit against both a municipality and its agents in both their official and individual capacities under § 1983.  <u>See</u> <u>Owen v. City of Independence</u>, 445 U.S. 622 (1980); <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978).

11.     As to the First Cause of Action brought under § 1983, Defendants' claim McCoy fails to articulate a violation of a specific constitutional right and how any damages flow from any violation.  To prevail on a § 1983 claim, a plaintiff must show that (1) they were deprived of a federal statutory or constitutional right; and (2) the deprivation was committed under color of state law.  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  The City of Columbia may be liable as a municipality for damages resulting though an express policy, such as a written ordinance or regulation.  See Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).   In the Verified Complaint, McCoy clearly alleges Ordinance § 10-34(b) is unconstitutionally vague and overly broad and violative of the First and Fourteenth Amendments to the United States Constitution.  McCoy alleges he is entitled to damages against the City of Columbia for the enforcement, imprisonment, and prosecution of an unlawful Ordinance against him.

12.     Defendant City of Columbia Police Department is named as an "agency and/or division of the City of Columbia" and not as a separate and distinct entity.  (Verf. Compl. ¶ 3). To the extend this Court deems City of Columbia Police Department as redundant of Defendant City of Columbia, McCoy does not oppose the dismissal of Defendant City of Columbia Police Department as improperly named.

13.     As to the Second Cause of Action seeking declaratory relief, McCoy incorporated the allegations set forth in paragraph 1 through 65 and sufficiently pleads for an order declaring § 10-34(b) unconstitutional of its face, or in the alternative, as applied against him.  Thus, McCoy has properly asserted facts to constitute relief through a declaratory judgment action.

In conclusion, McCoy requests this Court not strike or the dismiss allegations set forth in the Verified Complaint.  In the alternative, the Court should grant McCoy leave to correct any deficiencies contained in the pleadings.

## **CONCLUSION**

For these reasons, the City's Motion to Dismiss, or in the Alternative, to Strike and Make

More Definite and Certain should be denied.

Respectfully submitted,

COLLINS & LACY, P.C.

By:    s/    Robert F. Goings
ROBERT F. GOINGS, ESQUIRE
Federal I.D. No. 9838
rgoings@collinsandlacy.com
JOEL W. COLLINS, JR., ESQUIRE
Federal I.D. No. 224
jcollins@collinsandlacy.com
1330 Lady Street, Sixth Floor (29201)
Post Office Box 12487
Columbia, South Carolina 29211
(803) 256-2660
(803) 771-4484 (f)

Columbia, South Carolina

March 1, 2010

## CERTIFICATE OF SERVICE

This is to certify that on this 1st day of March, 2010, a true and correct copy of Memorandum in Opposition to Motion to Dismiss, or in the Alternative, to Strike and Make More Definite and Certain is being electronically transmitted to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

**COUNSEL SERVED:**
Peter Bathalzar, Esquire
Assistant City Attorney
City of Columbia
P.O. Box 667
Columbia, SC 29202

*Attorneys for Defendant City of Columbia*
*and City of Columbia Police Department*

_____ s/ Robert F. Goings _____