IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jonathan David McCoy, | CIVIL ACTION №: 5:10-cv-132-JFA-KDW |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| City of Columbia, John K. Passmore, James Heywood, and Amanda H. Long, all in their individual capacity, | |
| Defendants. | |

Plaintiff, Jonathan David McCoy ("McCoy") submits this memorandum in support of his motion for partial summary judgment concerning the constitutionality of City of Columbia Municipal Ordinance § 10-34(b). McCoy seeks summary judgment on his (a) First Cause of Action for violation of 42 U.S.C. § 1983 to the extent that this ordinance is unconstitutional; and (b) Second Cause of Action for Declaratory Judgment.

### STATEMENT OF THE CASE

McCoy was arrested and wrongfully prosecuted under City of Columbia Municipal Ordinance § 10-34(b) for allegedly interfering with a police officer. As a result of these unfounded allegations, McCoy brought suit against the City of Columbia on January 19, 2010. (ECF 1, Verified Complaint).

On the eve of trial in the criminal case, the City of Columbia *nolle prossed* the criminal charges against McCoy. (**Exhibit 1**, McCoy Depo. p. 311). The charges were *nolle pross* by the prosecutor because the arresting officers were refusing to testify in the criminal trial against

McCoy, invoking their rights against self-incrimination under the Fifth Amendment to the United States Constitution.  [ECF 23]; (**Exhibit 2**, Crowe Depo. p. 6, 44, 49, 55).

Thereafter, McCoy filed an Amended Complaint for damages under 42 U.S.C. § 1983, as well as causes of action for malicious prosecution, false imprisonment, assault and battery, and negligence. (ECF 30, Amended Complaint).  McCoy also asserted a cause of action seeking a declaratory judgment that the ordinance is unconstitutional on its face and as applied.  The threshold issue in this motion is the constitutionality of City of Columbia Municipal Ordinance § 10-34(b).

## FACTUAL BACKGROUND

On the evening of October 16, 2009, McCoy and his friend, Allen Keith McAlister Jr. ("McAlister"), were socializing with a wedding party at an establishment known as Red Hot Tomatoes on Harden Street in the Five Points district of Columbia, South Carolina.  (Verf. Compl. ¶ 10).  McCoy is a licensed attorney in South Carolina.

Unbeknownst to McCoy at the time, McAlister was asked to leave Red Hot Tomatoes by the bartender after McAlister disputed several charges placed on his food and beverage tab. After McAlister was requested to leave, he immediately exited through the front door of Red Hot Tomatoes and never reentered.  (Id. ¶ 11).  Shortly thereafter, McCoy walked outside of Red Hot Tomatoes and witnessed McAlister being violently shoved against a wall and thrown to the ground on a public sidewalk by Defendants Passmore, Heywood, and Long.  (Id. ¶ 12; McCoy Depo. p. 254).

McAlister was charged with "Refusal to Leave" Red Hot Tomatoes, pursuant to S.C. Code Ann. § 16-11-620,[1] and Resisting Arrest pursuant to City of Columbia Municipal Ordinance § 10-34(a). (Id. ¶ 13). This arrest occurred on a public sidewalk outside of Sharky's Restaurant, a separate and distinct business establishment from Red Hot Tomatoes, and approximately seventy (70) feet away from the front entrance to Red Hot Tomatoes. (Id. ¶ 13).

McCoy approached the officers while McAlister was handcuffed and simply asked if McAlister was under arrest. McCoy intended to inquire about the nature of the arrest and the location of Mr. McAlister's booking. (Id. ¶ 15; McCoy Depo. p. 261). When McCoy approached, one or more of the officers shoved McCoy and yelled at him to "Shut up! Keep walking! It's none of your business." (Id. ¶ 16; McCoy Depo. p. 261). McCoy responded, "I just want to know what happened and where you are taking him so I can appear at his bond hearing. I am an attorney and he is supposed to stay at my house tonight. I want to know where you are taking him and he needs to be advised of his right to remain silent," or words to that effect. (Id. ¶ 17; McCoy Depo. pp. 261-262, 315). Defendant Passmore and Long continued to pursue McCoy, shoving him and pointing their finger in his face and yelling at him, "I told you

---

[1] S.C. Code Ann. § 16-11-620 provides:

> Any person who, without legal cause or good excuse, enters into the dwelling house, place of business, or on the premises of another person after having been warned not to do so or any person who, having entered into the dwelling house, place of business, or on the premises of another person without having been warned fails and refuses, without good cause or good excuse, to leave immediately upon being ordered or requested to do so by the person in possession or his agent or representative shall, on conviction, be fined not more than two hundred dollars or be imprisoned for not more than thirty days.

Based on this statute, McAlister should have never been arrested in the first instance. He never reentered Red Hot Tomatoes. He was standing on a public sidewalk. The South Carolina Supreme Court has held this provision "has no application to public property," such as a sidewalk. State v. Hanapole, 255 S.C. 258, 178 S.E.2d 247 (S.C. 1970). The City of Columbia has also dismissed the charges against McAlister.

to shut up! You ain't a lawyer. But now you will know exactly where he is going cuz' you are going with him too, son." (Id. ¶ 18; McCoy Depo. p 318-319). Defendants Passmore and Long forcibly handcuffed McCoy and he was escorted to their patrol vehicles. (Id. ¶ 19; McCoy Depo. p. 262-263).

While McCoy was subjected to search and interrogation standing in front of the patrol vehicle, McCoy stated, "Help me understand. What am I being arrested for?" Defendant Passmore responded, "For that right there— asking questions. It's none of your business." McCoy stated, "Am I arrested for anything else?" Defendant Passmore responded, "No, and asking questions interfered with us." McCoy stated, "I was being polite and simply asking those questions. So it's a crime to ask questions about his arrest?" Defendant Passmore stated, "Yes, and you won't quit asking questions. You should have minded your own business kid." During this exchange, Defendants never claimed McCoy wrongfully touched them or threatened them in any manner. (Id. ¶ 21; McCoy Depo. pp. 305, 316-319).

Additionally, Defendant Passmore stated to McCoy at or near the patrol vehicle, "I arrest kids down here all the time that tell me that they are lawyers; that's not the first time I have heard that story," and "since you claim to be a lawyer, you should know about your right to remain silent," and "maybe you can find some clients in jail," to which Defendant Passmore and the other officers snickered. Defendant Passmore stated, "I'm gonna put on the report that you lied to me about being a lawyer. Are you sure you want me to put that down or do you want to explain that to the judge?" (Id. ¶ 22; McCoy Depo. p. 318-319).

McCoy was charged and arrested with violating City of Columbia Municipal Ordinance Section 10-34(b) for "interfering with a police officer" and he was issued a State of South

4

Carolina Uniform Traffic Ticket, number 13589EW.  (Id. ¶ 24) (**Exhibit 3**, Uniform Traffic Ticket).

McCoy and McAlister were transported to the Alvin S. Glenn Detention Center in Richland County, South Carolina for booking and confinement.  However, Defendants did not properly or timely deliver required booking documentation to the Alvin S. Glenn Detention Center, and as a result, McCoy and McAlister were prevented from appearing at any bond hearings set for October 17, 2009.  (Id. ¶ 29; McCoy Depo. 100, 111-112).  Without being afforded a right to a bond hearing, McCoy and McAlister were assigned a cell in the general population ward.  (Id. ¶ 25; McCoy Depo. 100-101).  McCoy witnessed a neighboring cellmate violently commit suicide by hanging himself.  (Id. ¶ 30; McCoy Depo. 117; 122-123).

On the afternoon of October 17, 2009, while McCoy and McAlister remained confined, McAlister's father met or spoke with individuals of the City of Columbia Police Department, including Defendant Passmore, concerning the arrest.  Defendant Passmore claimed McAlister was arrested for reentering the front door to Red Hot Tomatoes.  Defendant Passmore told McAlister's father, "I was right there.  The officer gave him every chance to leave Red Hot Tomatoes and your son refused.  The officer had no choice but to arrest him.  Every business owner has a right to tell someone to leave their place of business."  (**Exhibit 4**, Affidavit of Allen Keith McAlister, Sr. ¶ 4).   Defendant Passmore never stated that McCoy threatened or wrongfully touched the officers in any manner, only that McCoy said he was an "attorney."  (Id. ¶ 5-6).

At the time of the arrest, Defendants Passmore, Heywood, and Long completed an Incident Report.  (**Exhibit 5**, Incident Report).  Defendants Passmore, Heywood, and Long falsified this document in a willful attempt to concoct probable cause for and pretextually justify

5

these wrongful arrests.[2] In the Incident Report, these Defendants claimed McAlister "came back [into Red Hot Tomatoes]….At that time [McAlister] was advised he was under arrest for Refusal to Leave" and "when [officers] attempted to place [McAlister] into handcuffs he snatched his arms away and started pushing the officers away from him. Two other officers had to help subdue [McAlister] to the ground to gain control of him." Officers also falsely claimed McCoy "grabbed an officer by the arm" and "continued to intervene by getting in RO's face." (Id.)

After the arrest, McCoy obtained video from two outdoor video surveillance cameras at Red Hot Tomatoes and Sharky's. (McCoy Depo. p 229-233). A true and accurate copy of the surveillance video, along with a Certificate of Authenticity, is attached hereto as Exhibit 6. (**Exhibit 6,** Affidavit of Authenticity and Video). The video confirms McCoy's version of the facts. The video also clearly shows that McAlister did not reenter Red Hot Tomatoes or resist arrest, as the Incident Report states. Rather, it shows the Defendants assaulting McAlister. Further, the video confirms that McCoy did not grab an officer's arm or get in the officer's face when he approached the officers as the Incident Report states. (Id.)

## STANDARD OF REVIEW

To grant a motion for summary judgment, the trial court must find "there is no genuine issue as to any material fact." Rule 56(c), Fed. R. Civ. P. The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990)). A mere scintilla of evidence offered by the non-moving party with the burden of proof is not sufficient to overcome a motion for summary judgment. Anderson, 477

---

[2] This is a crime in South Carolina pursuant to Sections 17-13-50 and 16-17-722 of the South Carolina Code.

U.S. at 252 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Here, no genuine issue of material facts exists concerning the language and application of this municipal ordinance.

## LAW/ANALYSIS

I.   **CITY OF COLUMBIA MUNICIPAL ORDINANCE § 10-34(b) IS FACIALLY UNCONSTITUTIONAL AS OVERLY BROAD AND VAGUE.**

City of Columbia enacted a municipal ordinance in 1979, codified in the Code of Ordinances of the City of Columbia, South Carolina in Section 10-34(b), creating a misdemeanor criminal offense for "interfering with a police officer" within the City of Columbia. City of Columbia Municipal Ordinance § 10-34(b) provides, "It shall be unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties." This ordinance is unconstitutionally broad and vague on its face because it criminalizes a substantial amount of constitutionally protected speech afforded by the First Amendment to the United States Constitution and confers standardless discretion on City of Columbia police officers, municipal judges, and juries to determine whether spoken words are punishable as a criminal "interference".

The First Amendment requires that "[c]ongress shall make no law….abridging the freedom of speech." U.S. Const. Amend. I. First Amendment rights "are protected by the Fourteenth Amendment from invasion by the States." Edwards v. South Carolina, 372 U.S. 229, 235 (1963).

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected

7

conduct." Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982); see also Kolender v. Lawson, 461 U.S. 352, 359 n. 8 (1983). "Criminal statutes must be scrutinized with particular care. Those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." City of Houston, Texas v. Hill, 482 U.S. 451, 458 (1987). (multiple citations omitted). The Court "will not rewrite a state law to conform it to constitutional requirements" and should strike down an unconstitutional law unless the statute is "readily susceptible to a narrowing construction." Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 397 (1988). "To withstand an overbreadth challenge based on first amendment rights, an ordinance must be narrowly drawn to serve compelling needs of society." U.S. Labor Party v. Pomerleau, 557 F.2d 410, 412 (4th Cir. 1997) (citing Broadrick v. Oklahoma, 413 U.S. 601, 611-15 (1973)). Based on clear precedent, as discussed below, this ordinance is patently unconstitutional.

In Hill, the United States Supreme Court struck down a substantially similar municipal ordinance criminalizing actions that "interfere" with a police officer as unconstitutional on its face. In that case, the City of Houston enacted municipal ordinance 34-11 which stated: "It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty."

The Supreme Court held this ordinance "criminalizes a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement." Id. at 466. "The opportunity for abuse…[and]…a virtually open-ended interpretation is self-evident" and this ordinance is "[f]ar from providing the breathing space that First Amendment freedoms need to survive." Id. (citations omitted). "As the Court observed over a century ago, it would certainly be dangerous if the legislature could set a net large enough

to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." Id. at 465. (citing U.S. v. Reese, 92 U.S. (2 Otto) 214, 221, 23 L.Ed. 563 (1876)). Because First Amendment freedoms need "breathing space to survive," government may regulate "only with narrow specificity." Buckley v. Valeo, 424 U.S. 1, 41 (1976). As recognized by the District Courts, "[t]he Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and even profanity directed at police." Wilkerson v. Charleston Police Dept., C/A No. 2:06-cv-00866, 2009 WL 1506717, 2009 U.S. Dist. LEXIS, 58442 (S.D.W.Va., May, 27, 2009) (citing City of Houston).

In so holding, the Supreme Court in Hill reasoned, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" because

> the Constitution does not allow such speech to be made a crime. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principle characteristics by which we distinguish a free nation from a police state.

Id. at 461-63. "Speech is often provocative and challenging....[But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Id. at 461. (citations omitted). "A properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" Id. The Supreme Court held Houston's interference ordinance "is not narrowly tailored to prohibit only disorderly conduct or fighting words." Id. at 465. The pronouncement in Hill has been recognized by the South Carolina Supreme Court in State v. Perkins, 306 S.C. 353, 412 S.E.2d 385 (S.C. 1991).

In this case, City of Columbia's interference ordinance suffers from the identical constitutional defects as the ordinance the Supreme Court struck down in Hill. Section 10-34(b) is unconstitutionally broad on its face because it criminalizes a substantial amount of constitutionally protected speech. Since the Supreme Court has already found Houston's ordinance criminalizing "any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman" to be unconstitutional, it follows this Court should strike down Columbia's ordinance, which makes it "unlawful for any person to interfere with or molest a police officer." These ordinances are one and the same. However, Columbia's ordinance is seemingly more broad and less defined than Houston's ordinance because that ordinance applied to certain actions that "assault, strike or in any manner oppose, molest, abuse or interrupt any policeman." But in Columbia, it is a crime just to "interfere with…a police officer." The term "interfere with" is undefined, unrestricted, and far out of bounds with clearly proscribed constitutional mandates. Without a question, the broad and all encompassing nature of this ordinance inevitability criminalizes free speech. "Statutes restrictive of or purporting to place limits to those [First Amendment] freedoms must be narrowly drawn to meet the precise evil the legislature seeks to curb…and…the conduct proscribed must be defined specifically….") Baggett v. Bullitt, 377 U.S. 360, 373 n.10 (1964). Ordinance § 10-34(b) is not limited or narrowly tailored to physical obstruction of police activity or fighting words as instructed in Hill. It "prohibits verbal interruptions of police officers," which is patently unconstitutional. Hill at 461. It prohibits and criminalizes speech and conduct that in any manner interrupts an officer and accords the police unconstitutional and unfettered discretion in their enforcement. Thus, this ordinance is unconstitutionally broad on its face and not narrowly tailored.

Additionally, ordinance § 10-34(b) is unconstitutionally vague. A reasonable person is incapable of knowing what conduct or words constitute the undefined, ambiguous, and vague criminal offense to "interfere with…a police officer." Since the ordinance does not define "interfere with," citizens cannot reasonably understand or determine what type of conduct is prohibited. "A statute is impermissibly vague if it either (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074, 1079 (4th Cir. 2006) (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000)). Ordinance § 10-34(b) does both. The fact this ordinance authorizes and encourages arbitrary and discriminatory enforcement, inviting gross abuses of discretion, is self-evident in this case. The testimony of individual defendants, as more fully set forth below, confirms that they do not understand what type of "interference" is criminal. In their application, criminal interference is in the discretion of the arresting officer.

"[T]he most important factor affecting the clarity that the Constitution demand of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If….the law interferes with the right of free speech….a more stringent vagueness test should apply." Hoffman Estates, 455 U.S. at 499. This "unfettered discretion….run[s] afoul of the First Amendment." Child Evangelism Fellowship of S.C. v. Anderson School Dist. Five, 470 F.3d 1062, 1064 (4th Cir. 2006).

The overly broad and vagueness concerns of this ordinance further violate constitutionally afforded due process rights. The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The Supreme Court has held a person of

11

ordinary intelligence must be able to reasonably understand what conduct is prohibited. Kolender, 461 U.S. at 357. The Supreme Court has long held unclear laws should be found unconstitutional since they deny due process. Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).

The South Carolina Supreme Court in Town of Honea Path v. Flynn, 255 S.C. 32, 176 S.E.2d 564 (S.C. 1970) has already struck down a similar municipal ordinance criminalizing "interference" with a police officer as patently unconstitutional. The Town of Honea Path enacted an ordinance which provided: "It shall be unlawful for any person to assault, resist, abuse or in any manner, by word or act, interfere with a police officer or any other officer or employee of the City in the discharge of his duty…." Id. at 38, 176 S.E.2d at 566. The Supreme Court of South Carolina held: "In the light of the foregoing principles of constitutional law, we cannot help but conclude that the ordinance here under attack is unconstitutional and void insofar as it attempts to make…. 'interference' with any officer 'in any manner, by word or act' a penal offense." Id. at 39, 176 S.E.2d at 567. "Aside from any invasion of the constitutional guaranties of freedom of speech, just what kind of word or words would amount to interference with an officer is not at all indicated by the ordinance." Id. at 40, 176 S.E.2d at 567.

In so reasoning, the South Carolina Supreme Court stated:

> To allow police officers, or other officers actively engaged in assigned duties, the discretion to arrest and prosecute those whom they feel have made inappropriate remarks upon a charge of interference would, we think, invite gross abuses of discretion and impose unfair penalties [sic] and burdens upon the citizenry. The facts of the instant case rather forcefully demonstrate the fundamental reasons why the particular ordinance is constitutionally invalid. It is true that there was some evidence on the part of the prosecution, expressly contraverted [sic] by the appellant, to the effect that appellant offered some slight physical interference or resistence [sic]. But it is not contended that he physically harmed or injured either of the officers or even

12

> attempted to do so. The record as a whole rather strongly indicates the probability that there would have been no arrest and no charges against the appellant but for the verbal disagreement between him and the Town police officers as to the proper disposition of the bottled beverages. Under these circumstances the conviction under this ordinance may well have rested upon nothing more than mere words uttered by the appellant which were not pleasing to the local police officers who obviously did not like anyone questioning or challenging their authority. In view of the probability that the conviction of the defendant rested upon the foregoing provisions of Ordinance No. 102, which are herein declared invalid, such conviction must be set aside.

Id. at 40, 176 S.E.2d at 567-68.  The only distinction between Town of Honea Path's ordinance, which was found clearly unconstitutional, and the City of Columbia's ordinance is the language "in any manner, by word or act."  However, this phrase modifies to actions that "assault, resist, abuse" an officer, and Town of Honea Path's ordinance does not define when actions to "interfere with a police officer" become criminal.  Just as in Town of Honea Path, the City of Columbia does not define what "interfere with a police officer" means.  City of Columbia's ordinance only vaguely utilizes the words "interfere with or molest a police officer" which is tantamount to criminalizing *any* conduct of *any* manner, left solely to the discretion of the enforcer.  The City of Columbia ordinance is even more broad and vague than the ordinance of the Town of Honea Path.  This ordinance clearly "invite[s] gross abuses of discretion and impose[s] unfair penal[t]ies and burdens upon the citizenry" just as the Court warned against in Town of Honea Path.  "Because a violation depends on the subjective opinion of the [police officer], the speaker has no protection against arbitrary enforcement of the ordinance."  U.S. Labor Party, 557 F.2d at 412.

A side-by-side comparison of the City of Columbia Ordinance against those struck down by the Supreme Court in City of Houston and the South Carolina Supreme Court in Town of Honea Path is shown below.

13

| **City of Houston**<br>Section § 34-11 Resisting Arrest; Interfering with Police Officer<br><br>**(a) It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest.** | **Town of Honea Path**<br>Section § 102 Resisting Arrest; Interfering with Police Officer<br><br>**(a) It shall be unlawful for any person to assault, resist, abuse or in any manner, by word or act, interfere with a police officer or employee of the City in the discharge of his duty.**<br>(b) It shall be unlawful for any person to aid or abet any such assault, resistance, abuse or interference.<br>(c) Any such person or person found guilty of such offense shall be fined not more than One Hundred and no/100 ($100.00) Dollars or imprisoned for not more than thirty (30) days. | **City of Columbia**<br>Section § 10-34 Resisting Arrest; Interfering with Police Officer<br><br>(a) It shall be unlawful for any person, after having been placed under arrest or taken into custody by the police or other persons authorized to do so, to resist arrest whether actively or by flight.<br>**(b) It shall be unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties.** |
|---|---|---|

Despite the South Carolina Supreme Court's clear holding against the <u>Town of Honea Path</u> in 1970 and United States Supreme Court's holding in 1987 in <u>Hill</u>, the City of Columbia continues to allow this unconstitutional ordinance to remain on the books. This is a flagrant foul of the First and Fourteenth Amendments, and therefore, City of Columbia's municipal ordinance § 10-34(b) should be declared facially unconstitutional.

**II.    CITY OF COLUMBIA MUNICIPAL ORDINANCE § 10-34(b) IS UNCONSTITUTIONAL AS APPLIED TO MCCOY IN THIS ARREST.**

In any event, City of Columbia Municipal Ordinance § 10-34(b) is unconstitutional as applied to McCoy. "[W]hen overbreadth or vagueness challenges to a law are made, those challenges usually should be resolved before the validity of the law as applied is addressed." Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

"An 'as-applied' challenge consists of a challenge to a regulation's application only to the party before the court." Newsom v. Albemarle County School Bd., 354 F.3d 249, 258 n.4 (2003) (citing City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 758-59 (1988)). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." Id.

The facts in this case clearly demonstrate that McCoy was arrested for speech that merely questioned the actions of Defendants Passmore, Heywood, and Long. After McAlister was handcuffed and was being escorted by the officers, McCoy approached the officers in a non-threatening manner and simply asked if McAlister was under arrest. (McCoy Depo. p. 261). He was told that he was arrested for "asking questions." (McCoy Depo. p. 319; 334-336). Even the incident report stated that he walked up and "asked what was happening." The officers shoved McCoy and appeared to yell at him. (Id.) McCoy stepped away from the officers and attempted to explain in a non-threatening manner that he was an attorney and just wanted information regarding where McAlister was being taken. Defendants Long and Passmore continued to pursue McCoy for no reason, all the while shoving him, pointing their fingers in his face and yelling at him. (Id.) This is clearly shown on the video. The officers' actions were more like bullies on a playground than those of a police officer.

15

After McCoy was handcuffed, he inquired as to the reason he was being arrested. Defendant Passmore responded by telling McCoy that he was being arrested for asking questions, and that such questions "interfered" with the officers. McCoy was informed that asking questions was a crime. During the exchange, Defendants never told McCoy he was being arrested for wrongfully touching or threatening them— only for "asking questions." (Id. at 305, 316-319; 334-336). However, Defendant Long later testified that McCoy interfered with police "[b]y not backing away from a situation we were trying to handle." (**Exhibit 7**, Long Depo. p. 88).

It is well settled that fighting words are not guaranteed constitutional protection under the First Amendment. The Supreme Court has defined fighting words as "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky v. State of New Hampshire, 315 U.S. 568, 572 (1942); R.A.V. v City of St. Paul. Minnesota, 505 U.S. 377, 380 (1992) (defining fighting words as "conduct that itself inflicts injury or tends to incite immediate violence."). "The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" because "[t]he Constitution does not allow such speech to be made a crime. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principle characteristics by which we distinguish a free nation from a police state." City of Houston 482 U.S. at 461-63. "A properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" Id. "Arresting a person solely based on speech that questions or opposes police action violates the First Amendment." Lowe v. Spears, 258 Fed. Appx. 568 (4th Cir. 2007).

16

In the Incident Report, the officers only state McCoy "asked what was happening." (ECF 30-4). This is the only speech the officers claimed McCoy made. Simply asking "what was happening" does not constitute fighting words. Based on the evidence before the Court, this arrest is unquestionably unconstitutional and these Defendants fabricated the Incident Report in a desperate attempt to concoct probable cause to cover up this knowingly illegal arrest.

Furthermore, the Defendants have a broad, all encompassing, view of what constitutes "interference," Defendant Long testified that "refusing to back out of a reactionary gap, refusing to back away from the scene, refusing to back away from a crime scene, [and] refusing to back away from a law officer who's trying to handle another situation" all constitute crimes in the City of Columbia. (Long Depo. p. 86). The Defendants cannot define criminal interference. Defendant Heywood testified with regard to questions asked to the police by citizens, he could not define "interfering" versus "inquiring." He said, "It's a case by case situation . . . depending on what's going on. I can't sit here and tell you. There's no cookie cutter answer . . . Just by merely somebody talking to you—you know, I can't sit here and just say 'yes' or 'no' that that would consist of interfering." (**Exhibit 8**, Heywood Depo p. 12). As interpreted and applied by the City of Columbia, this Ordinance authorizes police officers to arbitrarily decide for themselves, on the scene, whether speech constitutes "interference" sufficient to justify arrest and prosecution. If the officers who are responsible for enforcing the laws are unable to understand the provisions of this ordinance, it follows that the ordinance cannot be applied fairly and consistently.

Based on the video and overwhelming evidence related to this arrest, this Court should declare City of Columbia's municipal ordinance § 10-34(B) as unconstitutional as applied to McCoy.

## **CONCLUSION**

For the foregoing reasons, McCoy respectfully requests this Court grant this Motion for Partial Summary Judgment and declare that City of Columbia's Municipal Ordinance § 10-34(b) is unconstitutional on its face and as applied, for both substantial vagueness and substantial overbreadth, in violation of the First and fourteenth amendments to the Constitution of the United States.

Respectfully submitted,

By:    s/ Robert F. Goings
Robert F. Goings (Fed. Id. 9838)
rgoings@goingslawfirm.com
GOINGS LAW FIRM, LLC
914 Richland Street, Suite A-101
Post Office Box 436 (29202)
Columbia, South Carolina 29201
(803) 350-9230
(877) 789-6340 (fax)

J. Edward Bell, III  (Fed. Id. 1280)
ebell@edbelllaw.com
David W. Harwell (Fed. Id. 1766)
dharwell@edbelllaw.com
James B. Moore, III (Fed. Id. 10844)
bmoore@edbelllaw.com
Scott C. Evans (Fed. Id. 10874)
sevans@edbelllaw.com
BELL LEGAL GROUP, LLC
232 King Street
Georgetown, South Carolina 29440
(843) 546-2408
(843) 546-9604 (fax)

Columbia, South Carolina

October 18, 2012