IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Jonathan David McCoy, | ) | C/A No.: 5:10-cv-00132-JFA-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CITY OF COLUMBIA'S |
| | ) | MEMORANDUM IN SUPPORT |
| | ) | OF ITS MOTION FOR JUDGMENT |
| | ) | ON THE PLEADINGS AND MOTION |
| | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| City of Columbia, John K. Passmore, James | ) | |
| Heywood and Amanda H. Long, all in their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

The Defendant City of Columbia (hereinafter referred to as the "City") offers this memorandum in support of its motion for judgment on the pleadings and its motion for summary judgment.

**STATEMENT OF FACTS**[1]

This lawsuit arises out of the Plaintiff's arrest outside of a Five Points bar. Shortly before 4:00 a.m. on October 17, 2009, the Plaintiff made his way out of Red Hot Tomatoes, onto a crowded sidewalk, and immediately walked up and interjected himself into an ongoing custodial arrest of another individual ("McAlister").[2]  (Ex. A, McCoy depo at 246, 257, 260; Ex. B, Passmore depo at 48-9, 68).  The Plaintiff approached

---

[1]  It is anticipated that the individual officers will file affidavits in support of their motion for summary judgment.  The City incorporates by reference any facts stated in such affidavits concerning the facts giving rise to probable cause for the Plaintiff's arrest for the charge of interference or any other uncharged offenses.
[2]  Kip McAlister and the Plaintiff are friends and had been socializing together in Five Points on the night of this incident.  (Ex. A, McCoy depo at 193-4).

within arms-length of the arrestee and the officers while the officers were in the process of lifting McAlister from the ground.  (ECF No. 12-1 at 3; Ex. B, Passmore depo at 68; Ex. A, McCoy depo at 257, 260, 285).  The Plaintiff positioned himself between McAlister and the street, where the officers' patrol cars were stationed.  (Ex. C, Long depo at 136; Ex D, Long depo at 18).  The Plaintiff specifically wanted to "get Officer Passmore's attention" while the officers were bringing McAlister to his feet.  (Ex. A, McCoy depo at 256-7, 260).  The Plaintiff reached in with his right hand toward Officer Passmore and began by telling the officers to "Wait, wait, wait."  He told the officers to "Stop," and asked "What the f**k?"  (Ex. B, Passmore depo at 68, 78-9; Ex. E, Dennis depo at 80-3, 92-5).  During the encounter the Plaintiff also said, "Whoa, wait a minute", and he told the officers to "Hang on, guys."  (Ex. A, McCoy depo at 261-2).

The arrest was not blocking the Plaintiff's path.  The Plaintiff walked towards the arrest scene.  The Plaintiff had not seen anything that had transpired between McAlister and the officers before walking out of the bar and seeing McAlister on the ground being handcuffed.  (Ex. A, McCoy depo at 249-51, 254-5, 258-260).  The Plaintiff had not had any prior interaction with any of the officers before approaching the arrest scene.  (Ex. A, McCoy depo at 285-6).  The officers did not know who the Plaintiff was at the time he approached.  (Ex. B, Passmore depo at 48, 68; Ex. C, Long depo at 88).

For the safety of the Plaintiff, the arrestee and the officers, Officer Passmore immediately instructed the Plaintiff to move away from the scene of the arrest and attempted to move the Plaintiff out of the direct vicinity of the ongoing arrest.  (Ex. B, Passmore depo. at 48, 67-8; Ex. D, Long depo. at 17)  In fact, the Plaintiff had approached so close to the officers while they were trying to arrest McAlister that the

Plaintiff had to be pushed away by Officer Passmore after the Plaintiff did not comply with the directive to move away.  (Ex. B, Passmore depo at 68; Ex. A, McCoy depo at 261-3).  The Plaintiff testified he did not move after being instructed to by Officer Passmore because he "didn't have to move on."  (Ex. A, McCoy depo. at 263).  After ignoring Officer Passmore's commands to leave the scene, the Plaintiff stepped toward Officer Long's side.  In a loud voice, Officer Long immediately instructed the Plaintiff to get back but he again did not comply.  This necessitated Officer Long to turn her attention from the arrest of McAlister to deal with the Plaintiff approaching in a threatening manner, with unknown intentions.  (Ex. C, Long depo at 88, 148-9; Ex. D, Long depo at 17).  When Officer Long instructed the Plaintiff to back away he then called her a "f**king bitch" and simultaneously reached out and grabbed Officer Long's lower right arm.  (Ex. C, Long depo at 89; Ex. D, Long depo at 17; Ex. E, Dennis depo at 46-8, 78, 88-9).  Officer Long pulled her gun (right) side away from the Plaintiff and reached for her handcuffs, telling the Plaintiff he was under arrest.  (Ex. D, Long depo at 17).  Upon seeing this, the Plaintiff finally started to back away from the scene.  (Ex. C, Long depo at 129; Ex. D, Long depo at 17; Ex. A, McCoy depo at 263).  The Plaintiff was charged with a violation of section 10-34(b) of the City Code, which makes it unlawful to interfere with or molest an officer in the lawful discharge of his duties.

After initially dealing with the Plaintiff, Officer Passmore attempted to turn his attention back to McAlister.  Therefore, he did not see the Plaintiff grab Officer Long. (Ex. B, Passmore depo at 69-70).  However, he heard the Plaintiff state "f**king bitch" and he then "saw Officer Long jump like something had just happened to her."  At that

point, Officer Passmore went to assist and Officer Long took the Plaintiff into custody. (Ex. B, Passmore depo at 69).

Video cameras located outside of Red Hot Tomatoes and Sharky's[3] captured the arrest scene. The Plaintiff takes the position that the video evidence "clearly" shows that the Plaintiff never grabbed an officer by the arm. (See Am. Complaint ¶ 39). The video footage of the arrest scene is not so unambiguous – it does not clearly show that the Plaintiff did not grab Officer Long's arm. However, the video footage of the arrest scene clearly shows that something occurred during Officer Long's encounter with the Plaintiff that made her react. Officer Long pinpointed this event on the videos and testified that at this moment the Plaintiff grabbed her arm. (Ex. C, Long depo at 183; Ex. D, Long depo at 41).[4]

The only other eyewitness to the event substantiated Officer Long's testimony. This witness, Richard Dennis, was standing on the sidewalk during the encounter. Mr. Dennis described that the Plaintiff walked up close to the officers and initially reached out with his hand towards one of the officers. (Ex. E, Dennis depo at 69-71; 92-95). It appeared to Mr. Dennis that the Plaintiff was trying to get the officers' attention in an effort to stop them from arresting his friend. (Ex. E, Dennis depo at 71). This is similar to the Plaintiff's own testimony that he wanted to get Officer Passmore's attention. (Ex. A, McCoy depo at 256). In addition to the Plaintiff attempting to get Officer Passmore's attention, Mr. Dennis also testified that the Plaintiff grabbed Officer Long's arm "after

---

[3] Red Hot Tomatoes and Sharky's are bars located adjacent to one another, separated by an alleyway. (Ex. E, Dennis depo at 39)  Approximately 15 video cameras had been installed inside and outside of both bars in October 2009.  (Ex. E, Dennis depo at 20, 116).  The Plaintiff obtained video footage from the owner of the two bars.  The Plaintiff did not request or obtain any other footage from any of the other cameras or vantage points.  (Ex. A, McCoy depo at 229-37, 242-4).

[4] Attached as Exhibit H to this memorandum is video footage of the arrest.  Officer Long testified that the Plaintiff grabbed her arm at the 9:10 or 9:11 mark of the attached video.  (Ex. C, Long depo. at 183).

4

being outside arguing."  (Ex. E, Dennis depo at 71-2).  Mr. Dennis was also able to pinpoint the time on the video footage when the Plaintiff grabbed Officer Long's arm. (Ex. E, Dennis depo at 78, 88-89).[5]  Upon observing the Plaintiff grab the officer, Mr. Dennis remarked to himself at the time that the Plaintiff was "going to jail now."  (Ex. E, Dennis depo at 46-7, 132).

It is undisputed that the Plaintiff approached to within an arms-length of the ongoing arrest, interjected himself into an ongoing arrest by his close proximity to the officers, and did not voluntarily back away or move away from the scene.  It is also undisputed that the police did not initiate the encounter and that the Plaintiff did so, while other pedestrians and bystanders can be seen on the video keeping their distance or walking away from the arrest scene.  (Ex. A, McCoy depo at 246).  It is undisputed that the officers did not know who the Plaintiff was and had not had any contact with him prior to him walking up in the middle of an arrest.  Finally, it is undisputed that police resources had to be allocated to the Plaintiff instead of other tasks associated with McAlister's arrest.

## NATURE OF THE CASE

The Plaintiff filed his Amended Complaint on July 30, 2010.  The Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for an alleged violation of his constitutional rights when he was arrested for interfering with the police.  This claim centers around § 10-34(b) of the City Code, which makes it unlawful to interfere with or molest a police officer in the lawful discharge of his duties.  The Plaintiff asserts that this ordinance is unconstitutional on its face and as-applied.  He also appears to assert that he was arrested

---

[5]  Attached as Exhibit I to this memorandum is a portion of Mr. Dennis's video deposition.  The Plaintiff's counsel showed Mr. Dennis video footage of the arrest scene.  The video testimony and the corresponding transcript pages are as follows:  3:45-7:11 at pp.76-8; 15:12-17:13 at pp. 88-9; and 21:47-23:50 at pp. 94-5.

pursuant to the City's custom or practice of arresting persons for conduct based on speech or actions that question or oppose police action.[6]  The Amended Complaint also asserts that the Plaintiff's arrest constituted the state torts of malicious prosecution, false imprisonment, battery, and negligence.

The City has filed a partial motion for judgment on the pleadings[7] and a motion for summary judgment seeking the dismissal of all claims for the reasons set forth below.

## AUTHORITY AND ANALYSIS

### I.    The City is entitled to a judgment as a matter of law on the Plaintiff's claim that Section 10-34(b) of the City Code is unconstitutionally overbroad or vague.

The Plaintiff's facial claim addresses the City's written ordinance making it "unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties."  City Code § 10-34(b).   The Plaintiff states that the ordinance is "unconstitutionally broad and vague on its face . . . because it criminalizes a substantial amount of constitutionally protected speech afforded by the First Amendment to the United States Constitution."  (Am. Complaint. ¶ 53).  The Supreme Court has set forth the framework for analyzing facial overbreadth and vagueness claims:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.  If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in

---

[6]  The City does not separately address the Plaintiff's claim for declaratory relief in this motion.  The City understands that this cause of action is identical to the Plaintiff's § 1983 cause of action against the City and is a legal issue to be decided by the court.

[7]  The City's Rule 12(c) motion seeks a dismissal of the Plaintiff's § 1983 cause of action on the grounds that the Plaintiff's Amended Complaint does not state facts sufficient to allege that the City's ordinance was applied through a custom attributable to the City.

> some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-5 (1982).

### A.     The City's ordinance is not unconstitutionally overbroad.

To prevail on an overbreadth challenge, "particularly where conduct and not only speech is involved", the Plaintiff must demonstrate that the ordinance's overbreadth is "not only . . . real, but substantial as well, judged in relation to the [challenged ordinance's] plainly legitimate sweep," and also that no "limiting construction" or "partial invalidation" could "remove the seeming threat or deterrence to constitutionally protected expression."  Broadrick v. Oklahoma, 413 U.S. 601 at 613, 615 (1973).  The Plaintiff contends that there is no legitimate sweep to the subject ordinance.

In his pleadings, the Plaintiff relies primarily upon City of Houston v. Hill, 482 U.S. 451 (1987), for the contention that § 10-34(b) is unconstitutional and void. However, an analysis of Hill and other decisions interpreting similar legislative enactments does not lead to such an easy conclusion.  Rather, it becomes obvious that § 10-34(b) addresses physical conduct and does not criminalize constitutionally-protected speech.  From the face of the ordinance, it is not apparent whether it prohibits speech at all.  To the extent section 10-34(b) applies to speech, if at all, this section is not unconstitutionally overbroad.

In <u>Hill</u>, the Court found the "enforceable portion" of the ordinance at issue to be overbroad.[8]  The enforceable portion of the ordinance made it "unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty."  The plaintiff did not challenge the portion of the ordinance making it unlawful to assault or strike a police officer.  <u>Id.</u> at 461 n.9.  Therefore, <u>Hill</u> did not address the constitutionality of an ordinance addressing "core criminal conduct" such as physically interfering with police officers, <u>id.</u> at 460, and left untouched a municipality's power to "punish physical obstruction of police action."  <u>Id.</u> at 462 n. 11.  The Court stated that the enforceable portion of the ordinance dealt only with speech and prohibited verbal interruptions of police officers.  <u>Id.</u>  The Court emphasized throughout its opinion that it was concerned with an ordinance that addressed only speech and "criminalize[d] a substantial amount of constitutionally protected speech", <u>id.</u> at 466, and was a "broad statute aimed at speech." <u>Id.</u> at 462 n.11; <u>see</u> <u>id.</u> at 462 ("It is not limited to fighting words nor even to obscene or opprobrious language, but prohibits **speech** that '**in any manner** . . . interrupt[s]' an officer.") (emphasis added).  Moreover, <u>Hill</u> did not strike down all statutes that might, in part, apply to speech.  <u>See id.</u> at 462 n.11.

The Plaintiff's contentions ignore and misconstrue the patent distinctions between the City's ordinance and the one at issue in <u>Hill</u>.  The City's ordinance does not go so far as the Houston ordinance in prohibiting speech that "**in any manner** . . . interrupt[s]" an officer.  Nor does it "attempt[] to make . . . 'interference' with any officer 'in any manner, by word or act' a penal offense."  <u>Town of Honea Path v. Flynn</u>, 255 S.C. 32, 39,

---

[8]  The entire ordinance stated that "It shall be unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty . . . ."  The other portion of the ordinance, making it unlawful to assault or strike an officer, was found to have been preempted by state law.  <u>Hill</u> at 460.

176 S.E.2d 564, 567 (1970). Section 10-34(b) on its face is not a "broad statute aimed at speech." <u>Hill</u> at 462; <u>see</u> <u>Younger v. Harris</u>, 401 U.S. 37, 51 ("Where a statute does not directly abridge free speech, but . . . tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so.").

It is important to note that the defendant in <u>Hill</u> had not physically interrupted the police. The limited facts cited in the decision show that the defendant was merely shouting towards a police officer while that officer was speaking with another individual. <u>Id.</u> at 453. The facts underlying the arrest stated that the defendant "intentionally interrupt[ed] a city policeman . . . by verbal challenges during an investigation." <u>Id.</u> at 454. There was no evidence of any physical act or conduct on the part of the defendant beyond his spoken word. Moreover, the other individual was not being arrested and was not in handcuffs.

In <u>Fair v. City of Galveston</u>, 915 F.Supp. 873 (S.D. Tex. 1996), the plaintiff, relying on <u>Hill</u>, contended that an ordinance making it "unlawful for any person to obstruct, prevent, or interfere with . . . any peace officer in the lawful discharge of his duty" was overbroad and therefore facially invalid under the First Amendment guarantee of free speech. <u>Id.</u> at 879. However, the court found "significant differences" in the challenged ordinance and the one invalidated in <u>Hill</u>. The court noted that the Houston ordinance at issue in <u>Hill</u> "prohibited ***speech*** that 'in any manner . . . interrupt[s]'" an officer in the execution of his duty. 915 F.Supp. at 879 (emphasis added). Instead of using the term "interrupt," which pertains primarily to verbal acts, by using the term

"interfere," the Galveston ordinance "facially pertains to acts which pose an actual hindrance to the accomplishment of a specified task." Id. Therefore, the district court upheld the ordinance and found that the plaintiff had not met her burden of demonstrating its unconstitutionality. Id. at 880. The City also contends there are the same significant differences between § 10-34(b) and the ordinance invalidated in Hill.

The Sixth Circuit more recently recognized those significant differences in a case challenging the constitutionality of a similar ordinance criminalizing interference with an officer. Lawrence v. 48th Dist. Court, 560 F.3d 475 (6th Cir. 2009). The ordinance made it unlawful to "in any way interfere with or hinder [an officer] with the discharge of his duty." Id. at 477. Recognizing that the Hill court "focused on the 'interrupt' element of the crime, not the 'in any manner' portion," the Sixth Circuit stated that by prohibiting interruption the Houston ordinance prohibited speech, given that the term interruption suggested verbal interruption. Id. at 482; see also State v. Bower, 725 N.W.2d 435 (Iowa 2007) (discussing the Supreme Court's interpretation that the ordinance at issue in Hill was limited to verbal interruptions). The Sixth Circuit denied the plaintiff's overbreadth argument and went on to hold that the ordinance's prohibition on interfering did not "suggest speech, and on the contrary, suggest[ed] some kind of physical interference." 560 F.3d at 482.

In addition to the above-cited cases, there are other cases where similarly-worded legislative enactments have been upheld against challenges that they were impermissibly overbroad. In Newton v. City of Muskogee, 2007 WL 4150946 (E.D. Okla. 2007), the plaintiff argued that the phrase "in any way interfere" gave officers unfettered discretion to interpret the statute to apply to speech. However, the court found that "any impact on

10

speech is, at most, minimal . . . and that the phrase can only be understood to reach action, not speech."  Id. at *5.  The court stated that the ordinance was "strikingly different" from that in Hill because it focused primarily on action rather than speech.  Id.

On appeal of his conviction for assault on a police officer, the defendant in Dickens v. U.S., 19 A.3d 321 (D.C. 2011), argued that he was convicted for intimidating an officer based on words alone.  The defendant maintained that the ordinance under which he was convicted was unconstitutionally overbroad and void for vagueness.  Id. at 323.  The ordinance stated:  "Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or **interferes** with a law enforcement officer . . . while that law enforcement officer is engaged in the performance of his or her legal duties shall be guilty of a misdemeanor . . . ."  Id. at 322 (emphasis added).  In addressing the alleged overbroad nature of the ordinance, the court held that it did not extend to constitutionally protected speech.  Id. at 327.  The defendant attempted to equate the District of Columbia ordinance to the one at issue in Hill.  The court disagreed, holding that the ordinance did not punish verbal criticism or challenges to police officers.  The court also held that ***all*** of the action words of the ordinance, such as "intimidates" and "interferes," demonstrate that the statute "is directed exclusively at active confrontation, obstruction, or other action directed against an officer's performance in the line of duty."  Id. (internal quotations omitted).

In State v. Krawsky, 426 N.W.2d 875 (Minn. 1988), the supreme court decided whether a state statute making it a misdemeanor to interfere with a police officer was unconstitutionally overbroad or vague on its face.  Id. at 876.  The statute reads:  "Whoever . . . interferes with a peace officer while the officer is engaged in the

performance of official duties . . . ." Id.  The defendant argued that this statute was "not significantly distinguishable for overbreadth purposes from the ordinance struck down in Houston." Id. at 877.  The Minnesota court disagreed, interpreting its statute to be "directed solely at physical acts, whereas the ordinance in Houston was significantly broader, prohibiting verbal criticism directed at officers." Id.  The court also interpreted its statute to be

> directed at a particular kind of physical act, namely, physically . . . interfering with an officer, whereas under the ordinance in Houston one could be punished for merely 'interrupting' an officer in the line of duty. . . .  On the other hand, physically . . . interfering with a police officer involves not merely interrupting an officer but substantially frustrating or hindering the officer in the performance of his duties. . . .  [T]he statute forbids intentional physical . . . interference with a police officer . . . and may be used to punish 'fighting words' or any other words that by themselves have the effect of physically . . . interfering with a police officer in the performance of his duties . . . .

Id. (internal citations omitted).

The defendant in State v. Williams, 534 A.2d 230 (Conn. 1987), also challenged his conviction for violating a statute which proscribed interfering with a police officer.  The Connecticut court considered the recently-decided Hill case but distinguished it because of the Houston ordinance's "broad sweep . . . which prohibited interfering with a police officer 'in any manner,' and the [ordinance]'s resistance to being construed to proscribe only 'fighting words.'" Williams, 534 A.2d at 238.  Connecticut's supreme court construed its statute to proscribe only physical conduct and fighting words.  Id.; see also State v. Briggs, 894 A.2d 1008, 1013 (Conn. Ct. App. 2006) (stating that the purpose of the interference statute is "to ensure orderly compliance with the police during the performance of their duties; any act intended to thwart this purpose violates the statute").

The challenged ordinance does not implicate protected speech. Even if it does, it does not do so in a way that is "real and substantial." Broadrick, 413 U.S. at 615. "[C]laims of facial overbreadth have been entertained in cases involving statutes which, by their terms, seek to regulate '**only** spoken words.'" Id. at 612 (emphasis added). "Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." Id. at 613. The City's ordinance, by its terms, does not seek to regulate only spoken words.

Almost without fail, the courts that have considered interference ordinances or statutes have upheld them against overbreadth (and vagueness) challenges where opponents were relying on Hill. One of the few cases striking down an interference ordinance did so, at least in part, because the ordinance, like that in Hill, proscribed interference in "any way." See City of Milwaukee v. Wroten, 466 N.W.2d 861, 870 (Wis. 1991). Obviously, § 10-34(b) of the City Code does not suffer from this deformity, and therefore is not pulled into a realm of overbreadth.

      B.     The City's ordinance is not unconstitutionally vague.

Likewise, section 10-34(b) is not unconstitutionally vague.[9] "Regulations can be struck down as impermissibly vague for either of two reasons. First, a regulation can fail to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, a regulation can authorize or even encourage arbitrary and discriminatory enforcement." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 370-1 (4th Cir. 2012).

---

[9] The Hill Court did not address the alleged vagueness of the ordinance. It left undisturbed the trial court's determination that the ordinance was not vague and that "'the wording of the ordinance is sufficiently definite to put a person of reasonable intelligence on fair notice of what actions are forbidden.'" Hill at 456.

City Council did not define any of the terms in the ordinance. However, legislators are not held to unattainable standards when a court is evaluating an ordinance in the face of a vagueness challenge. Id. Dictionary definitions and old-fashioned common sense can facilitate the vagueness inquiry. Id. Section 10-34(b)'s language uses common terms that provide a person of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited.

The word "interfere" means "to come between so as to impede:  hinder" and "to intrude in the affairs of others:  meddle." Webster's II Office Dictionary 377 (3rd ed. 2005).  Interfere has also been defined as follows:  "to check; hamper; hinder; infringe; encroach; trespass; disturb; intervene; intermeddle; interpose.  To enter into, or take part in, the concerns of others."  Black's Law Dictionary 814 (6th ed. 1990); see also Black's Law Dictionary 818 (7th ed. 1999) (defining "interference" as (1) the act of meddling in another's affairs, and (2) an obstruction or hindrance).  These dictionary definitions certainly exhibit the everyday and common usage of the term "interfere."

In Cameron v. Johnson, 390 U.S. 611 (1968), the Supreme Court dealt with a challenge to an anti-picketing statute that prohibited picketing in such a manner so as to obstruct or unreasonably interfere with ingress or egress from public buildings or free use of public ways.  The Court held that "[t]he terms 'obstruct' and 'unreasonably interfere' plainly require no 'guess(ing) at (their) meaning'" and that the statute used "words of common understanding." Id. at 616.

The Plaintiff appears to rely on Town of Honea Path v. Flynn, 255 S.C. 32, 176 S.E.2d 564 (1970), to support his claim that § 10-34(b) is unconstitutionally vague. Flynn was convicting of violating an ordinance that made it "unlawful for any person to

14

assault, resist, abuse or ***in any manner***, ***by word or act***, interfere with a police officer . . . in the discharge of his duty . . . ." Id. at 566 (emphasis added). Flynn contended that this ordinance was "too vague and indefinite to be enforceable." Id. The court agreed and overturned his conviction but its reasoning provides no support for the Plaintiff's claim that § 10-34 is too vague. The court noted that the terms "assault" and "resist" may be sufficiently precise and established but that the meaning of the term "abuse" could vary considerably and might depend on the viewpoint of the abuser or the person being abused. Id. The court did not specifically address the meaning of the term "interference" and instead focused on the fact that the ordinance made it a crime to interfere with an officer "in any manner, by word or act." Id. Therefore, Honea Path provides no guidance to gauge the constitutionality of the City ordinance's use of the term interfere in § 10-34(b).

Some of the same cases that have found interfering ordinances not to be unconstitutionally overbroad have also upheld such ordinances when under attack for vagueness. For instance, the court in Krawsky had "no difficulty in concluding" that a statute prohibiting interference with an officer was not unconstitutionally vague because "[p]ersons of common intelligence need not guess at whether their conduct violates the statute." Krawsky, 426 N.W.2d at 878. Moreover, the court indicated that the statute could not be made more precise. Id. at 878-9; see also In re E.D.P., 573 A.2d 1307 (D.C. Ct. App. 1990) (rejecting a vagueness challenge because the statute's plain language using "impeding" and "interfering" prohibited physical conduct).

Connecticut's supreme court held that a statute defining interfering to include obstruction, resistance, hindrance, or endangerment was not unconstitutionally vague.

See Williams, 534 A.2d at 238.  The court held that a "reasonable interpretation of the statute confines its scope to conduct that amounts to meddling in or hampering the activities of the police in the performance of their duties."  Id.  In other words, the Connecticut court found no reason to venture from dictionary definitions in interpreting its statute.  The court so held in the face of the defendant's argument that the statute did not make clear whether it governed verbal as well as physical conduct.  Id.  This, however, was not fatal to the statute and did not "leave the statute so open-ended that it lends itself to arbitrary enforcement."  Id.; see also Briggs, supra (stating the interference statute was enacted to "prohibit behavior that hampers the activities of the police in the performance of their duties . . . ."); State v. Estes, 117 S.E. 581, 583 (N.C. 1923) ("To 'interfere' is to check or hamper the action of the officer, or to do something which hinders or prevents or tends to prevent the performance of his legal duty . . . .").

The City's ordinance has a legitimate purpose to prohibit acts or conduct that interfere with an officer in the performance of his lawful duties.  The ordinance does not apply to ordinary verbal criticism directed at police officers even where that officer is performing official duties.[10]  The police are not provided with "unfettered discretion to arrest individuals for words or conduct that annoy or offend them."  Hill, 482 U.S. at 465.  The plain terms of the ordinance pertain to physical acts.  The ordinance does not deal with purely speech.  There is no indication that the ordinance allows police to make arrests on the basis of the content of any speech.

---

[10]  This is not to say that verbal actions can never be punished under the City's ordinance if such actions, together with physical acts, have the effect of interfering with an officer's performance of duties.  See Hill, 482 U.S. at 462 n.11.

Therefore, for the reasons stated herein, the City asserts that it is entitled to summary judgment dismissing the Plaintiff's §1983 and declaratory judgment claims concerning the facial unconstitutionality of § 10-34(b).

## II.    The Plaintiff's § 1983 claim against the City should be dismissed because the Plaintiff has not sufficiently pled a City custom or sufficient facts to support the claim.

### A.    Standard of Review

"[A] motion under Rule 12(c) . . . is assessed under the same standard that applies to a Rule 12(b)(6) motion." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009). Such a motion should be granted when, accepting the facts set forth in the pleadings, the case can be decided as a matter of law. Tollison v. B&J Machinery Co., Inc., 812 F.Supp. 618, 619 (D.S.C. 1993). To survive a motion to dismiss, a plaintiff's complaint must "set forth facts sufficient to allege each element of his claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The Supreme Court has recently made clear that Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to do more than make mere conclusory statements to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662 (2009). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft, 556 U.S. at ___ (quoting Twombly, supra.)   The "plausibility standard" of Ashcroft requires a plaintiff to "articulate facts . . . that 'show' that the plaintiff has stated a claim entitling him to relief."  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

> B.     The Plaintiff's Amended Complaint does not allege facts supporting a
> custom attributable to the City.

The Plaintiff's Amended Complaint alleges a cause of action against the City for violation of civil rights under 42 U.S.C. § 1983.  However, a municipality may be liable under § 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  Connick v. Thompson, 131 S.Ct. 1350 (2011) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. at 692).  Rather, to establish municipal liability, "a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right."  Pettiford v. City of Greensboro, 556 F.Supp.2d 512, 530 (M.D.N.C. 2008).

A custom may be the basis for municipal liability only if the continued existence of the custom can be attributed to municipal policymakers and a causal connection can be established between the alleged custom and the specific violation.  Randall v. Prince George's County, 302 F.3d 188, 211 (4th Cir. 2002).  In this regard, for liability to attach, "(1) the municipality must have 'actual or constructive knowledge' of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or

terminate the improper custom and usage." Id. (quoting Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987)). "[A] municipal custom may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

In this case, the Plaintiff's Amended Complaint fails to show any of the facts necessary to hold the City liable on the basis of an alleged custom. The Plaintiff's lone allegation concerning a custom is devoid of facts and simply concludes that "Defendants routinely, through their custom, usage, or practice, arrest individuals in or around the City of Columbia in violation of City of Columbia Municipal Ordinance § 10-34(b) for conduct based on speech or actions that question or oppose police action, all in violation of constitutionally-afforded liberties." (Am. Compl. ¶ 60). The Plaintiff's threadbare recital of the term "custom" does not show how such alleged custom can be attributed to the City. See Ashcroft, 556 U.S. at ___ (stating that "[t]hreadbare recitals of the elements of a cause of action" are not enough to survive a motion to dismiss).

The Plaintiff does not allege any facts showing that City policymakers had actual or constructive knowledge of the alleged custom being employed by the officers. Nor does the Plaintiff allege any facts showing that City Council deliberately failed to correct the improper custom. In other words, the Plaintiff does not allege that the alleged custom is fairly attributable to affirmative decisions of City Council or omissions that demonstrate City Council's deliberate indifference to citizens' rights. Moreover, the Plaintiff has not alleged facts showing that the alleged custom proximately caused a violation of his constitutional rights. See Alexander v. City of Greensboro, 762

F.Supp.2d 764 (M.D.N.C. 2011) (dismissing a complaint for failing to plead sufficient facts showing a municipal custom).

Further, the Plaintiff does not plead any facts that would show that the alleged custom is persistent and widespread. He does not offer any facts that other similarly situated individuals were treated in the same manner. See Rehberg v. City of Pueblo, 2012 WL 1326575 (D. Colo. 2012) (dismissing a complaint pursuant to Rule 12(c) where the plaintiff failed to sufficiently plead facts to show a municipal custom).

Even if the facts stated in the Amended Complaint could support a finding of misconduct by the officers that does not, without more, provide sufficient facts to support an inference that a custom or practice was in place sufficient to meet the Monell standards of municipal liability. Again, the Plaintiff only states in a conclusory manner that the Defendants violated his rights "through their custom, usage, or practice." He does not set forth facts "demonstrat[ing] that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

The Plaintiff has failed to allege facts showing a municipal custom. Therefore, the Plaintiff's § 1983 action based on a municipal custom should be dismissed.

**III.    The City is entitled to summary judgment on the Plaintiff's claims that the ordinance was unconstitutionally applied to him pursuant to a City custom of arresting individuals who question or oppose police action.**

>    A.    The Plaintiff has failed to establish evidence of a constitutional
>          deprivation under the facts alleged and shown in this case.

In addition to the facial challenge to the validity of § 10-34(b), the Plaintiff also challenges his arrest as being unconstitutional as applied to him on the ground that it was the result of a custom to arrest persons for conduct based on speech or actions that

question police action.  (Am. Compl. ¶ 60).  In other words, the Plaintiff is alleging that, instead of properly arresting individuals pursuant to § 10-34(b) for interfering with official duties, the City has a custom to arrest individuals who simply voice opposition to police action.  The Plaintiff supports this allegation of a custom by testifying that he was arrested **only** for asking questions and that his physical actions and conduct did not interfere with the lawful discharge of an officer's duties.  For instance, the Plaintiff testified that he was repeatedly told he was "being arrested for only asking questions." (Ex. A., McCoy depo at 316-9, 334-6).  He also testified that his actions were "non-threatening" and "safe."  (Ex. A, McCoy depo at 260-1, 263).

The Plaintiff's evidence of his actions fails to provide evidence of a disputed issue of material fact demonstrating that his conduct was constitutionally protected.  As will be shown, there is no constitutional right to engage in conduct both disobedient and dilatory and that serves to interfere with police action, all while officers are engaged in the performance of the inherently risky duty of making an arrest.  The Plaintiff's conduct in the early morning hours of October 17, 2009, clearly fell within the proscriptions of § 10-34(b) and provided probable cause for his arrest.

The Plaintiff has failed to establish that merely his speech, and not his physical actions and conduct, precipitated his arrest under the ordinance.  On the contrary, the Plaintiff's actions in approaching to within arms-length of an ongoing arrest to get the officers' attention, reaching towards one of the arresting officers, blocking the officers' path during an arrest, and refusing to back away from the arrest scene substantiated the charge under the challenged ordinance.  In addition, the Plaintiff grabbed one of the officers while that officer was attempting to assist with the arrest of McAlister.  One does

not have a constitutional right to position himself as close as he feels justified to an officer who is performing official duties and then remain there. Such actions which divert an officer's attention and demand an officer to react are not entitled to constitutional protection.

The Plaintiff's undisputed conduct in this matter was similar to that described in State v. Bower, 725 N.W.2d 435 (Iowa 2007) and other cases cited below. Bower was convicted of harassment of a public officer. Bower argued that his actions consisted **only** of shouting at a police officer. However, the court found that he "intentionally approached [the officer] and entered his personal space." Id. at 443. Bower's conduct was "done intentionally to hinder" an investigation and the officer "perceived Bower's actions as threatening." Id. The court denied Bower's as-applied challenge. Id.

Officer Long testified that the Plaintiff approached her and the other officers in a threatening manner, violated her reactionary gap, entered her personal space, and would not back away. (Ex. C, Long depo at 88-9, 148-52, 154-55). The Plaintiff had approached to within arm's length during an arrest, and attempted to, and did, divert an officer's attention. (Ex. A, McCoy depo at 256, 260). The Plaintiff's expert even acknowledges and takes the view that McCoy approached the officers while McAlister was "being stood up." (Ex. K, Tucker Appx. D at p.2). Officer Long was justified in arresting the Plaintiff for interference based on undisputed actions separate and apart from any alleged protected speech.

In Wilkerson v. State, 556 So.2d 453 (Fla. Dist. Ct. App. 1990),[11] the defendant challenged her arrest for obstructing an officer on the ground that she was only exercising

---

[11] The Wilkerson case is cited in part of the First Amendment materials taught to all officers at the South Carolina Criminal Justice Academy. (Exhibit L, Lesson Plan L-11, attached to Report of Plaintiff's

her First Amendment right to free speech.  The "pivotal question" before the court was whether an obstruction statute "impermissibly prohibit[ed] or proscribe[d] protected free speech under the guise of supposed **interference** with an officer."  Id. at 455 (emphasis added).  The court found that the statute had not been given a construction that rendered it invalid because the defendant had done more than "merely yelling and cursing at the officer."  Id. at 456.  The defendant "refused to leave the area where the officers were attempting to make arrests . . . and because the officer considered her physical presence was obstructing or impeding him in the performance of his duty."  Id.  The court also held that "[p]olice officers may lawfully demand that citizens move on and away from the area of a crime without impermissibly infringing upon the citizen's First Amendment rights."  Id. (citing Colten v. Kentucky, 407 U.S. 104 (1972)).

In Abrams v. Walker, 307 F.3d 650 (7th Cir. 2002),[12] an attorney was charged with a violation of a statute making it a misdemeanor to "knowingly resist or obstruct the performance of a known police officer acting in his official capacity.[13]  In Abrams, the attorney pulled his car to the side of the road after observing his client get stopped by a state trooper.  The attorney approached and questioned the trooper's decision to pull his client over.  The trooper instructed the attorney to return to his vehicle and warned him that his failure would result in a citation.  The attorney refused to obey the trooper's

expert).  The Plaintiff's expert testified that the training received by the officers at the SCCJA was proper.  (Ex. F, Tucker depo at 43-6, 55, 187-90).  There is no evidence in this case of improper or inadequate training.

[12] Abrams has been abrogated by Spiegla v. Hull, 371 F.3d 928 (7th Cir. 2004), but only to the extent Abrams required that a plaintiff alleging a First Amendment retaliation claim has the burden of proving but-for causation.

[13] Under the statute, "obstruct", similar to "interfere", means "to be or come in the way of" and does "not proscribe mere argument with a policeman about the validity of . . . police action but proscribe[s] only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent, or delay the performance of the officer's duties . . . ."  People v. Martinez, 717 N.E.2d 535, 538 (Ill. Ct. App. 5th Dist. 1999).

order. "In all, [the attorney's] actions had the effect of interrupting and delaying the trooper's traffic stop of the other vehicle." Id. at 652.

The attorney later sued for violations of his constitutional rights after being acquitted in state court. The district court granted summary judgment for the trooper, finding the trooper had probable cause to arrest the attorney for obstructing a police officer and that the attorney did not engage in any protected First Amendment speech. The court of appeals affirmed and stated that Hill, supra, was of no help to the attorney because the attorney's "**interference** with a traffic stop on the side of a busy interstate was not the proper time, place, or manner for an officer of the court to register disagreement with the traffic stop." Id. at 656 (emphasis added).

The Plaintiff would have one believe that this case is about nothing more than mere verbal communication with the officers. The Plaintiff conveniently ignores that he approached to within less than an arm's length of police officers who were conducting an arrest, with the intention of getting an officer's attention. An arrest is inherently risky and is a potentially dangerous situation for all involved. U.S. v. Stanfield, 109 F.3d 976 (4th Cir. 1997). The undisputed time and manner of the Plaintiff's involvement plainly interfered with official police activity involving a third person. It is clear from the video that the officers had to avert their attention from the arrestee to deal with the Plaintiff's unexpected presence and the officers were blocked from immediately removing the arrestee to the waiting police cars parked on the street. It is clear from the evidence that the Plaintiff physically interfered with an ongoing arrest by disrupting the officers in the performance of their duty. See Wilkerson, supra.

The Plaintiff's subjective feelings that McAlister's arrest had been concluded and that he then approached the officers to a safe distance in a non-threatening manner should have no place in this analysis. (Ex. A, McCoy depo at 255-61). Officers must approach every arrest situation with the knowledge that an arrest presents an element of danger and the officers shall take all reasonable steps to ensure their safety. (Exhibit J, IACP National Law Enforcement Policy Center, Model Policy for Arrest, July 2006, attached as Appendix F to Report of Plaintiff's Expert Melvin Tucker). Officers are also responsible for the safety of an arrestee and they must take all steps reasonably necessary to protect the arrestee from injury by others. Id. In order to accomplish this, officers "shall prevent bystanders from approaching the arrestee until the arrestee is transported from the scene." Id.

The City submits that this is not a case involving only speech. This is not a case where the Plaintiff was standing across the street yelling at the officers. This is not a case where the Plaintiff waited to approach the officers after the scene had calmed down and the officers were in a position to talk. (Ex. C, Long depo at 88-9, 154-5). Moreover, to the extent the Plaintiff asserts he was arrested solely for his speech, which is denied, there is support for the proposition that speech can be characterized as physical interference if it interrupts an officer in such a way to make it difficult, if not impossible, to conduct official duties or diverts an officer's attention during an encounter. King v. Ambs, 519 F.3d 607 (6th Cir. 2008). The Sixth Circuit pointed out that the Supreme Court did **not** hold that the defendant's actions in Hill could not be criminalized but instead ruled that the ordinance could not be enforced because it was too broad. 519 F.3d at 613; see Hill, 482 U.S. at 463 n.12 (noting that "[t]he freedom verbally to challenge police action is not

without limits"). In fact, <u>Hill</u> indicated that "a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection." <u>Hill</u>, 482 U.S. at 463 n.11. Certainly interfering in such a manner with an officer who is making an arrest is also punishable without running into constitutional issues.

<u>King</u> involved an arrest for disorderly conduct pursuant to a statute defining a disorderly person as one who obstructs, resists, impedes, hinders, or opposes an officer in the discharge of his duties. <u>Id.</u> at 610. King filed a § 1983 action after charges were dismissed in state court. King contended that his arrest for telling a friend not to talk to the police violated his First and Fourth Amendment rights. <u>Id.</u> at 608. The court held that the arrest did not violate King's rights because his "act of speaking, by virtue of its time and manner, plainly obstructed ongoing police activity involving a third party." <u>Id.</u> at 614.

The Sixth Circuit also equated King's conduct to that found to be without constitutional protection in <u>Colten v. Kentucky</u>, 407 U.S. 104 (1972). <u>King</u>, 519 F.3d at 614. In <u>Colten</u>, an arrestee "challenged his arrest for disorderly conduct after he repeatedly interrupted a police officer and refused to leave the area where the officer was issuing a traffic citation to . . . a third party." <u>King</u>, 519 F.3d at 614, citing <u>Colten</u>, <u>supra</u>. The Court held the arrestee "was not engaged in activity protected by the First Amendment" because "[h]e had no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time." <u>Colten</u>, 407 U.S. at 109. Further, the Court stated that the government "has a legitimate interest in enforcing

its traffic laws and its officers were entitled to enforce them free from possible **interference** or interruption from bystanders, even those claiming a third-party interest in the transaction." Id. (emphasis added).

The above-described cases are illustrative of the type of conduct and actions that justify arrests and provide probable cause for arrests pursuant to interference ordinances or similar prohibitions on hindering police action.  The Plaintiff's actions in this case served to interfere with and hinder police action, all in violation of § 10-34(b) of the City Code.  The Plaintiff admits that he approached the officers to get their attention and did not back away when instructed to do so.  The Plaintiff's actions were threatening to the officers and they did not know the Plaintiff's identity.  The officers indicated they wanted the Plaintiff to back away and let the situation calm down.  (Ex. C, Long depo at 89, 140, 149-51, 154-5).  The Plaintiff chose to physically interject himself into an arrest and to stand his ground.  (Ex. A., McCoy depo. at 263).  These actions should not be entitled to constitutional protection simply because the Plaintiff alleges that he did nothing more than ask questions about his friend's arrest.  Asking questions about police action does not insulate one from arrest for otherwise illegitimate interference with official police action.

Since there is no evidence that the Plaintiff has suffered a constitutional deprivation, the City is entitled to summary judgment on the Plaintiff's as-applied challenge to the constitutionality of § 10-34(b).

    B.       The Plaintiff's arrest was made based on probable cause.

The Plaintiff's conduct and actions as set forth herein also establish that the officers had probable cause to arrest the Plaintiff.  Discovery in this matter reveals that

there is no genuine issue of material fact concerning lack of probable cause to support the Plaintiff's arrest and the City's motion for summary judgment should be granted.

A claim for an unconstitutional arrest must be judged under the Fourth Amendment. <u>Albright v. Oliver</u>, 510 U.S. 266 (1994).[14] The Fourth Amendment prohibits the unreasonable seizure of a person. However, a seizure, including an arrest, is reasonable if made upon probable cause. The standard for probable cause was defined by the Supreme Court in <u>Beck v. Ohio</u>, 379 U.S. 89 (1964):

> Whether [an] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person arrested] had committed . . . an offense.

<u>Id.</u> at 91. Where probable cause is shown to have existed for a challenged arrest, a law enforcement officer cannot be found to have violated the arrestee's constitutional rights as a consequence of that arrest. <u>Miloslavsky v. AES Engineering Society, Inc.</u>, 808 F.Supp. 351 (S.D.N.Y. 1992), citing <u>Pierson v. Ray</u>, 386 U.S. 547, 557 (1967).

The facts and circumstances within the Defendants' knowledge were clearly sufficient to warrant a prudent man in believing that the Plaintiff had committed the charged crime.[15] To the extent probable cause existed to arrest the Plaintiff, the City cannot be liable for a violation of the Plaintiff's civil rights.

---

[14] All claims alleging constitutional deprivations resulting from restraint and arrest must be analyzed under the Fourth Amendment's prohibition against unreasonable seizures. <u>Albright v. Oliver</u>, 510 U.S. 266 (1994). Therefore, that portion of Plaintiff's Amended Complaint brought pursuant to the First Amendment fails to state a claim upon which relief can be granted and must be dismissed.

[15] As indicated earlier, it is anticipated that the individual Defendants will move for summary judgment on the grounds that probable cause existed for the Plaintiff's arrest for the charged offense and for other uncharged offenses. The City hereby incorporates by reference any facts and arguments made by the individual Defendants concerning probable cause for the charged offense or any uncharged offenses.

C.     The Plaintiff has not produced evidence of a policy or custom attributable to the City that caused a constitutional deprivation.

The City submits that the only way that the City can be liable for a custom is through the actions of its officers.  However, the City cannot be liable on a *respondeat superior* theory pursuant to 42 U.S.C. § 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  "Municipal liability results only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987) (quoting Monell, 436 U.S. at 694).  Going one step further, municipal liability results only when a policy or custom is fairly attributable to the municipality as its "own," Monell, 436 U.S. at 683, and is the "moving force" behind the particular constitutional violation.  Polk County v. Dodson, 454 U.S. 312 (1981).

To avoid imposing vicarious municipal liability as rejected in Monell, any theory of municipal liability must be carefully controlled at three critical points: (1) identifying the specific policy or custom; (2) fairly attributing the policy and fault for its creation to the municipality; and, (3) finding the necessary affirmative link between the identified policy or custom and the specific violation.  Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987); see Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994) (stating that a cause of action against a municipality pursuant to § 1983 must show (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right).

**1.   The Plaintiff has not shown the existence of a specific policy or custom.**

The first critical point in order for a plaintiff to establish municipal liability is the existence or identity of a specific policy or custom.  Spell, supra; Jordan, supra.  The Plaintiff appears to allege that the officers unconstitutionally applied the ordinance pursuant to a City custom that allows arrests without probable cause and for merely questioning police action.  The Plaintiff's position is confusing in that it impermissibly seeks judgment against the City for the officers' actions.  If the officers did what the Plaintiff says they did, i.e., arrested him **solely** for asking questions, which is denied, the City would not be liable for the officers' actions.

In response to the City's interrogatories asking the Plaintiff to specifically identify the alleged custom, the Plaintiff was unable to do so and simply referred to City Code § 10-34(b).  (Ex. M, Plaintiff's response to City's First Set of Interrogatories, No. 21).  The Plaintiff's response is not sufficient to identify a specific custom.

In addition, Officer Long testified that she did not arrest the Plaintiff for anything that he said or the content of any speech.  She is trained not to do so and she testified that it is not proper to arrest a person for simply asking questions.  Officer Long described the Plaintiff's physical actions, separate and apart from any speech, as the basis of the Plaintiff's arrest.  (Ex. C, Long depo at 15-6, 80-92, 140, 148-52, 154-55).

In fact, according to the Plaintiff's expert, this arrest resulted **not** necessarily from the officers following an existing City custom or practice to arrest persons who verbally oppose police action, but from the officers disregarding the training they had received concerning probable cause and First Amendment liberties.  (Ex. F, Tucker depo at 186-90).  The Plaintiff's expert testified that the officers received proper training on First

Amendment and probable cause issues.[16]  He also testified that the officers violated the City's written policy to make arrests based on probable cause.  (Ex. F, Tucker depo at 175-6).  Whether the arresting officer may have violated such training and breached the City's written policy in this incident is not imputable to the City and clearly demonstrates that there is no custom allowing arrests under the circumstances alleged by the Plaintiff.

Clearly, the actions complained of here are not evidence of a municipal policy or custom if those actions were taken in disregard of the officers' training and the City's written directives.  The Plaintiff has failed to specifically identify a City policy or custom and the City is entitled to summary judgment.

**2.    The Plaintiff has not shown that any custom may be attributed to the City.**

In the case at hand, even if the Plaintiff were able to establish that a constitutional violation occurred and that it resulted from a practice or custom of City employees, he would also have to show that this policy or custom was known by City policymakers.

> 'Custom and usage,' . . . may be attributed to a municipality when the duration and frequency of the practices 'warrants a finding of either actual or constructive knowledge by the governing body that the practices have become customary among its employees.  Actual knowledge may be evidenced by recorded reports to or discussions by a municipal governing body.  Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them.

Spell v. McDaniel, 824 F.2d 1380, 1387 (4th. Cir. 1987).  "A municipal custom may arise if a practice is so persistent and widespread and so permanent and well settled as to

---

[16]  The Plaintiff has not alleged that the City is liable pursuant to § 1983 for failure to train.  See Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999) (stating a municipality may be held liable for a policy or custom through an omission, such as a failure to properly train officers).

constitute a custom or usage with the force of law." <u>Carter v. Morris</u>, 164 F.3d 215, 218 (4th Cir. 1999) (internal quotations omitted).

Municipal liability attaches only when the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. <u>Pembaur v. City of Cincinnatti</u>, 475 U.S. 469, 483 (1986).

The City of Columbia has adopted the council-manager form of government as permitted by state law. Under that form of government, all legislative powers of the municipality and the determination of all matters of policy shall be vested in the municipal council. S.C. Code Ann. § 5-13-30 (2004). The Supreme Court of South Carolina has clearly established that only the city council is the policymaker for a municipality with the council-manager form of government. <u>Todd v. Smith</u>, 305 S.C. 227, 407 S.E.2d 644 (1991); <u>Stanley v. Kirkpatrick</u>, 357 S.C. 169, 592 S.E.2d 296 (2004) (holding that the policymaker for the City of Columbia is the City Council). Neither the City Manager, the Police Chief, nor any other employee can be a policymaker.

Therefore, to establish municipal liability in this case, the Plaintiff must demonstrate not only that there was an unconstitutional policy or custom, but that it was known to the members of City Council. The Plaintiff is unable to meet that burden. The Plaintiff testified that he was contacted by "more than seven, but less than 30" persons who complained to him after his arrest of similar acts. However, the Plaintiff could not provide their names during his deposition and did not have any information that the unknown persons' concerns were presented to City Council. (Ex. A, McCoy depo at 343-5). In a subsequent written discovery response, the Plaintiff could provide the name

of **only one** person who had contacted the Plaintiff concerning an arrest for interfering with a police officer.  (Ex. M, Plaintiff's answer to City's Interrogatory No. 16).

In his written discovery responses, the Plaintiff did not identify any **policymakers** who had knowledge of the alleged custom or practice.  (Ex. M, Plaintiff's answer to City's Interrogatory No. 22).  The Plaintiff simply alleged in his discovery response that the "individuals" responsible for the ordinance's enforcement were aware of its unconstitutional usage.  There is no evidence that the referenced "individuals" are policymakers or how the "individuals" would have been aware of the ordinance's unconstitutional usage.  The Plaintiff's expert, who opined concerning the City's alleged policy and custom did not have any evidence or knowledge that City policymakers knew of the alleged custom or practice.  (Ex. F, Tucker depo at 181).  Clearly, there is no evidence that City Council, as a body or as individual council members, were aware of the Plaintiff's contention of an alleged unconstitutional custom prior to the institution of this lawsuit.  Without such knowledge by City Council, the alleged unconstitutional conduct of which the Plaintiff complains would not represent official City custom and the City cannot be liable for the Plaintiff's claims.

It is anticipated that the Plaintiff will point to past incident reports for interference arrests to establish evidence of either actual or constructive knowledge of City policymakers.  However, there is no evidence in this matter that City policymakers were ever provided any past incident reports, much less informed that the facts stated in any incident report set forth a constitutional violation.  Likewise, constructive knowledge cannot be established in this matter based on past incident reports.  The Plaintiff may argue that City policymakers had some opportunity or duty of responsibility to be

informed.  However, the constitutional violations alleged in this case, even if assumed to be true, are not something that policymakers would be expected to know from reading incident reports.  It certainly cannot be expected that City Council members would scour past incident reports to be on the lookout for the possibility of constitutional violations hidden beneath false statements in incident reports.[17]  Moreover, incident reports do not establish police misconduct.  They do not establish which incidents led to convictions. The Plaintiff has not produced any evidence that any past incident reports resulted in complaints to the City.  The Plaintiff would have this court accept, without more, that past incident reports conclusively establish misconduct, and that such misconduct should have been known, recognized and remedied by City Council.

Moreover, the Plaintiff has not produced evidence that the alleged custom was persistent, widespread, or permanent.  This is not a case like Spell where the plaintiff produced voluminous evidence of prior incidents sufficient to create a triable issue concerning a municipal custom.  See Spell, supra.  In Spell, the plaintiff presented numerous lay witnesses who had "observed or directly experienced acts of brutality" and multiple officers testified that they had been trained to use excessive force.  Id. at 1393. This evidence was sufficient to show a widespread and permanent custom that resulted from the deliberate indifference of the town's policymakers to the constitutional rights of persons within the town's jurisdiction.  Here, the Plaintiff has not named a single witness who will testify concerning a similar experience of being arrested "for conduct based on speech or actions that question or oppose police action."  (Am. Compl. at ¶ 60).  Nor has

---

[17]  The Plaintiff alleges that the officers maliciously prepared a false and materially inaccurate incident report.  (Amended Complaint at ¶¶ 37-8).  If the alleged custom or practice is to arrest individuals for speech or actions that question police action, i.e., without probable cause, and to falsify reports, as testified to by the Plaintiff's expert, there is no way City Council could have knowledge of such a practice.  (Ex. F, Tucker depo at 175-7).

the Plaintiff named any officers or witnesses to testify that they had been trained to make arrests under the circumstances alleged by the Plaintiff.  As explained earlier, it is undisputed that officers were properly trained **not** to make arrests based on speech.

### 3.    The Plaintiff has not established that any custom proximately caused the deprivation of a constitutional right.

In any event, even a persistent or widespread custom is not attributable to the City unless there is an "affirmative link" between the custom and the alleged constitutional violation.  Spell, supra.  This affirmative link may be established if policymakers fail, as a matter of specific intent or deliberate indifference, **after** learning, through actual or constructive knowledge, of a custom's existence, to correct or stop the practice.  Randall v. Prince George's County, 302 F.3d 188 (4th Cir. 2002).

> A municipality is not subject to section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality. Rather, the plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the moving force behind the injury alleged. Accordingly, to impose section 1983 liability on a municipality, a claimant must first show that a municipal decision reflects *deliberate indifference* to the risk that a violation of a particular constitutional or statutory right will follow the decision.  If a section 1983 claimant can demonstrate the requisite degree of culpability, she must then show a direct causal link between the municipal action and the deprivation of federal rights.

Riddick v. Sch. Bd. of the City of Portsmouth, 238 F.3d 518 (4th Cir. 2000). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011).

There is no evidence of an affirmative link, or a direct causal link, between the alleged municipal custom and the Plaintiff's alleged deprivation of his federal rights.  In fact, "one looks in vain for a possible causative link between any municipal decision and

[the Plaintiff's] own experience."  Carter v. Morris, 164 F.3d 215, 220 (4th Cir. 1999). This is especially true in light of the proper training received by the officers regarding the relationship between the First Amendment and police action.  There is simply no evidence that the Plaintiff would have been arrested had he not physically encroached into the arrest scene.  Likewise, there is simply no evidence that City policymakers deliberately failed to correct a practice of arresting individuals for simply and solely asking questions – there is no responsibility to correct a practice that is not known to policymakers.  Moreover, evidence of past arrests for interfering with a police officer, without more, do not make an unlawful arrest under the Plaintiff's alleged circumstances "almost bound to happen."  Spell, 824 F.2d at 1390.  A sufficient causal link is only established by evidence that shows the "specific violation was made reasonably probable by **permitted** continuation of the custom."  Id. at 1391 (emphasis added).

**IV.    The City is entitled to summary judgment on the Plaintiff's claims for malicious prosecution, false imprisonment, assault and battery, and negligence since they are barred by the South Carolina Tort Claims Act.**

The Plaintiff asserts tort claims for malicious prosecution, false imprisonment, assault and battery, and negligence.

A tort claim against a municipality based upon the conduct of a municipal employee is governed by the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 et seq., which is the exclusive remedy for any tort committed by an employee of a governmental entity.  S.C. Code Ann. § 15-78-70(a).  The provisions of the Tort Claims Act must be liberally construed in favor of limiting liability.  S.C. Code Ann. § 15-78-20(f); Adkins v. Varn, 312 S.C. 188, 439 S.E.2d 822 (1993).  The Tort Claims Act waives immunity for the sovereign, subject to a number of exemptions from liability

which are set out in S.C. Code Ann. §15-78-60.  It is on the basis of these exemptions that the Defendants are entitled to summary judgment.

One of the first exceptions to a municipality's waiver of immunity found in the Tort Claims Act provides that a governmental entity is not liable for a loss resulting from the "enforcement [of] . . . any law . . . including, but not limited to, any . . . ordinance . . . ."  S.C. Code Ann. § 15-78-60(4) (2005).

The entire thrust of the Plaintiff's claims concerns the City's enforcement of § 10-34(b) of the City Code.  In fact, the Amended Complaint asks the court to "[e]njoin Defendants from enforcing City of Columbia Municipal Code Section 10-34(b) against McCoy . . . ."  (Am. Compl. at p.17).  Therefore, the City is entitled to immunity from the Plaintiff's tort claims by the plain terms of the Tort Claims Act.

Another exception to a municipality's waiver of immunity found in the Tort Claims Act provides that "(t)he governmental entity is not liable for a loss resulting from . . . institution or prosecution of any judicial or administrative proceeding . . . ."  S.C. Code Ann. § 15-78-60(23) (2005).

The Plaintiff's Third Cause of Action is for malicious prosecution.  One of the elements which must be proven in a malicious prosecution action is the institution or continuation of original judicial proceedings, either civil or criminal.  Jordan v. Deese, 452 S.E.2d 838 (1995).  This language is strikingly similar to that of section 15-78-60(23).  It is apparent that the General Assembly intended to exempt municipalities from liability for torts stemming from arrests.

The Plaintiff alleges that the Defendants "maliciously instituted and continued criminal proceedings against McCoy without probable cause."  (Am. Compl. ¶ 75).  For

purposes of this motion, the City admits that it instituted and prosecuted the criminal proceeding against the Plaintiff.  (See also City's Answer to Am. Compl. ¶ 20).

Based on the Plaintiff's allegations and the facts admitted in this matter, there is no factual dispute concerning whether the City instituted and prosecuted a judicial proceeding.  Therefore, the City is entitled to summary judgment on the Plaintiff's claim for malicious prosecution based on the exception found in S.C. Code Ann. § 15-78-60(23).  See Gedrich v. Fairfax County Dept. of Family Servs., 282 F.Supp.2d 439 (E.D. Va. 2003) (holding that nearly identical provision in Virginia's Tort Claims Act bars malicious prosecution claims); Gray v. City of Hammond, 693 F.Supp.2d 823 (N.D. Ind. 2010) (holding the Indiana Tort Claims Act bars a claim for malicious prosecution against a governmental entity).

In addition to the exceptions to the waiver of immunity discussed above, S.C. Code Ann. § 15-78-60(17) (2005) provides that "(t)he governmental entity is not liable for a loss resulting from . . . employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude . . . ."

The Plaintiff's pleadings and the facts discovered in this case demonstrate that the Plaintiff intends to show that the individual Defendants acted with actual fraud, actual malice, and intent to harm.  First, the Plaintiff alleges in the Amended Complaint that the Defendants "maliciously" instituted the charge against him.  (Am. Compl. ¶¶ 75, 77). The Plaintiff testified that Officer Passmore acted with malice when he pushed the Plaintiff.  (Ex. A, McCoy depo. at 269).

In written discovery, the City specifically asked whether the Plaintiff contended that the conduct complained of by the City's employees constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.  The Plaintiff initially responded by reciting the general alleged facts of the Amended Complaint.  (Ex. M, Plaintiff's Answers to City's First Interrogatories, No. 9).   The Plaintiff then supplemented this answer and stated that his original "answer to this Interrogatory fully describes the factual basis and evidence proving his contention that the Defendants acted with ***actual fraud, actual malice, intent to harm and moral turpitude*** when they violated his constitutionally afforded rights, unlawfully arrested him and charged him with violating City of Columbia Municipal Ordinance § 10-34(b)."  (Ex. N, Plaintiff's First Supplemental Answer to City's First Interrogatories, No. 9) (emphasis added).

Pursuant to the Plaintiff's Amended Complaint and the facts developed in discovery, the Plaintiff has taken this case out of the scope of the Tort Claims Act.  The Plaintiff has alleged and testified that the Defendants acted with actual fraud, actual malice, and intent to harm.  Therefore, the Defendant is entitled to summary judgment on the Plaintiff's state tort claims.   Additionally, if any officer acted with malice in instituting a criminal charge against the Plaintiff, such conduct would fall outside the scope of an officer's official duties, and the City is entitled to the dismissal of the Plaintiff's claims on that basis as well.

**V.     The City is entitled to summary judgment on the Plaintiff's tort claim for malicious prosecution because there is no evidence of a favorable termination of the criminal charge.**

The Plaintiff alleges in his cause of action for malicious prosecution that the "criminal proceedings were terminated in [his] favor and under circumstances consistent or implicit with his innocence."  (Am. Compl. ¶ 76).

To maintain an action for malicious prosecution, a plaintiff must establish:  (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and, (6) resulting injury or damage.  Parrott v. Plowden Motor Co., 246 S.C. 318, 321, 143 S.E.2d 607, 608 (1965).  An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence.  Id. at 322, 143 S.E.2d at 609.

The City is entitled to summary judgment because the Plaintiff has failed to establish a favorable termination of his criminal charge.  Prior to 1991, South Carolina followed the minority position that a malicious prosecution action could never be brought if the underlying charge was *nolle prossed*.  In McKenney v. Jack Eckerd Co., 304 S.C. 21, 22, 402 S.E.2d 887, 888 (1991), the South Carolina Supreme Court held "where an accused establishes that charges were *nolle prossed* for reasons which imply or are consistent with innocence, an action for malicious prosecution may be maintained."  However, when a charge is nolle prossed for other reasons, an action for malicious prosecution is barred.  Id.

In the present case, the charge against the Plaintiff was *nolle prossed* for reasons not consistent with the Plaintiff's innocence.  The charge was *nolle prossed* on the record by the special prosecutor, Danny Crowe, wherein he stated the reasons for the *nolle pros*,

none of which included the view that the Plaintiff was innocent.     Specifically, the prosecutor stated that

> the City chooses to *nolle pros* the interfering with police charge under City Code section 10-34 against Jonathan McCoy . . . with leave to re-bring the charge when the S.L.E.D. investigation ends and Officer Heywood returns from active duty military service currently in Iraq.     The S.L.E.D. investigation encumbers the ability of the police officers to testify in a criminal case against Mr. McCoy and Officer Heywood's military service renders him unable to testify in person before the jury.     For these reasons and not based on any view of the merits of the case the City chooses not to prosecute at this time.

(Ex. G, Transcript of Record, May 20, 2010).

The prosecutor reaffirmed his reasons for the *nolle pros* when the Plaintiff took his deposition.     In his testimony, the prosecutor stated that his *nolle pros* of the case was not based on any conclusion of innocence on the part of McCoy.     (Ex. O, Crowe depo. at 44).     He further testified based on his view of the evidence he believed that the Plaintiff's actions were "an impediment or hindrance to the activities of the police" and it "was clear that there had been physical action by McCoy that . . . would have constituted interference with police when they were plainly trying to effect an arrest."     (Ex. O, Crowe depo. at 30-1, 35-7).     The prosecutor also testified that he believed there was probable cause to arrest the Plaintiff for interfering with police.     (Ex. O, Crowe depo. at 73-5).

The discontinuance of the prosecution was therefore not based upon the Plaintiff's innocence but upon the reasons stated by the special prosecutor.     One of the primary reasons for the *nolle pros* was the unavailability of the officer who had written the incident report.     It was the special prosecutor's understanding and belief that the Plaintiff's attorney planned to vigorously cross-examine the officers based on the incident report and he wanted the author of the incident report to be able to present live

testimony.  (Ex. O, Crowe depo. at 44, 73-4).   Under these circumstances, the Plaintiff cannot establish the favorable termination of the underlying charge and an action for malicious prosecution is barred as a matter of law.  See also State v. Patrick, 318 S.C. 352, 457 S.E.2d 632 (Ct. App. 1995) (holding there is no bar to future prosecution where a *nolle prosequi* is entered prior to the jury being empaneled and sworn).

## VI.    The City is entitled to summary judgment on the false imprisonment and malicious prosecution claims since there was probable cause to arrest as a matter of law.

The Plaintiff asserts causes of action for false imprisonment and malicious prosecution.  Claims for false arrest and malicious prosecution may not be maintained where a police officer makes an arrest with probable cause.  Jackson v. City of Abbeville, 366 S.C. 662, 623 S.E.2d 656 (Ct.App. 2005).  It is the Plaintiff's burden to demonstrate a lack of probable cause.  Id.  Probable cause to arrest turns not on an individual's actual guilt or innocence but on whether the facts within the officers' knowledge would lead a reasonable person to believe the individual was guilty of a crime.  Id.  The determination of probable cause is made at the time of arrest, based on the facts and circumstances known to the officer, and not as an academic exercise in hindsight.  Id.

Based on the facts and reasons previously stated herein, the Defendants had probable cause to arrest the Plaintiff for the charged offense and/or other uncharged offenses.  The City is therefore entitled to summary judgment on the claims for false arrest and malicious prosecution.

## VII.    The City is entitled to summary judgment on the Plaintiff's cause of action for assault and battery because the arrest was lawful and made with probable cause.

The Plaintiff's claim for assault and battery stems mainly from the fact that Officer Passmore pushed the Plaintiff when the Plaintiff approached the arrest scene.

(Ex. A, McCoy Depo at pp. 260-1, 269).  The Plaintiff claims that being pushed away from the arrest scene constituted excessive force.  The Plaintiff also claims that excessive force was used from the fact that he was placed under arrest.  However, the Plaintiff did not suffer any injuries.  (Ex. A, McCoy Depo at pp. 295-301).  The Plaintiff does not allege in his Amended Complaint that excessive force was used against him.  He simply alleges that an assault and battery occurred when he was shoved and placed in handcuffs.  (Am. Compl. ¶ 87).

The Plaintiff's claim must be dismissed because the Plaintiff was lawfully arrested pursuant to probable cause and because Officer Passmore was justified in using reasonable force to move the Plaintiff from the arrest scene.  Officers must take all steps reasonably necessary to protect an arrestee from injury by others and they "shall prevent bystanders from approaching the arrestee until the arrestee is transported from the scene." (Exhibit J, Model Policy for Arrest, attached to Report of Plaintiff's Expert).  The force used by Officer Passmore was reasonable and necessary to protect the arrestee and the officers.  The force used by Officer Passmore did not injure the Plaintiff.  Other than the pushing, the Plaintiff does not claim that unreasonable force was used other than his view that the arrest itself constituted excessive force.  "A police officer who uses reasonable force in effectuating a lawful arrest is not liable for assault or battery."  Roberts v. City of Forest Acres,  902 F.Supp. 662, 671-2 (D.S.C. 1995); see also 6 Am. Jur. 2d, Assault and Battery §105 (same).

**VIII.   The City is entitled to summary judgment on the negligence claim because it does not state a claim upon which relief can be granted and there is no evidence of negligence.**

The Plaintiff's sixth cause of action is for negligence. However, an analysis of the Plaintiff's particulars shows that this cause of action is really nothing more than a restatement of a false imprisonment cause of action. Most, if not all, of the particulars of the negligence claim are things that could conceivably lead to a false arrest. (Am. Compl. ¶ 91, subsections (a), (b), (d), (e), (f), (g), (k), and (l)). It is certainly undisputed that the Plaintiff was arrested. All of his causes of action flow from the arrest. The City submits that a plaintiff asserting a claim for a wrongful arrest must bring the claim as either false arrest/imprisonment or malicious prosecution. In either case, a plaintiff must prove the absence of probable cause as a part of his claim. For example, if a court or jury were to find that an arrest was made with probable cause a negligence action should not survive. The courts of this state have not adopted an alternative theory of liability for wrongful arrest with a negligence standard for liability. The Plaintiff's allegations seem nothing more than another way of saying that the City was required to have probable cause before arresting the Plaintiff.

The Plaintiff's theory would represent a back door around the traditional hurdles of false imprisonment and malicious prosecution and finds no support in the law. Other courts that have considered this issue have rejected claims of this nature. See Guntlow v. Barbera, 907 N.Y.S.2d 86 (N.Y. App. Div. 2010) (stating that claim for negligent investigation does not state cause of action separate from false arrest and malicious prosecution); Laymon v. Dep't of Natural Resources, 994 P.2d 232 (Wash. Ct. App. 2007) (stating there is no claim for negligent investigation against police officers).

Even if such a claim existed, there is no evidence of negligence by the city. The undisputed facts establish probable cause for the Plaintiff's arrest and Officer Long clearly had a reasonable, good faith belief that the Plaintiff committed the offense.

Similarly, Plaintiff's allegations of negligence in training have no evidentiary support. No proof has been offered to substantiate this assertion. In contrast, the evidence demonstrates that the officers received training on probable cause and First Amendment issues and that the training was proper. (Ex. F, Tucker depo at 186-90).

Likewise, as part of his negligence claim, the Plaintiff asserts that falsifying incident reports proximately caused his arrest. There is no evidentiary or legal support for this allegation. Incident reports are completed after an arrest is made and a false incident report would not proximately cause an arrest.

Finally, there is no evidence that the Defendants failed to "properly rotate the force of officers to other locations" or that Defendants failed to "terminate, dismiss, or discipline officers that have a history and propensity of effectuated unlawful arrests." There is no evidence that any of the individual Defendants have a history or propensity to make unlawful arrests. There is also no evidence that failure to rotate officers caused the alleged injury.

## CONCLUSION

For the reasons stated herein, the City asks this Court to dismiss the Plaintiff's section 1983 action against the City on the ground that the Plaintiff's pleadings do not sufficiently show a municipal custom. The City also asks this Court to grant its motion for summary judgment and find that the City ordinance is constitutional on its face and as

applied to the Plaintiff.  Finally, the City seeks a dismissal of the Plaintiff's common law

tort claims.

Respectfully submitted,


**_s/Peter M. Balthazor_**
Peter M. Balthazor, Fed ID # 9236
Office of the City Attorney
Post Office Box 667
Columbia, South Carolina 29202
Telephone (803) 737-4242
Facsimile (803) 737-4250
Attorney for Defendant City of Columbia

October 18, 2012