UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Jonathan David McCoy, | ) | C/A No. 5:10-132-JFA-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| City of Columbia, John K. Passmore, | ) | |
| James Heywood, and Amanda H. Long, all | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court[1] on the following motions: Motion for Judgment on the
Pleadings and for Summary Judgment, filed by Defendant City of Columbia ("City"), ECF No.
200; Motion for Partial Summary Judgment on Constitutionality of City of Columbia Municipal
Ordinance Section 10-34(b), filed by Plaintiff Jonathan David McCoy, ECF No. 201; and Motion
for Summary Judgment filed by Defendants John K. Passmore, James Heywood, and Amanda H.
Long (collectively "Officer Defendants"), ECF No. 203. The court conducted a hearing on these
Motions on December 11, 2012. Based on the parties' memoranda, as well as argument of
counsel, the court recommends Plaintiff's Motion, ECF No. 201, and the Motion of the Officer
Defendants, ECF No. 203, be denied and the Motion of the City, ECF No. 200, be granted in part
and denied in part as set forth herein.

I. Background

Plaintiff instituted this action against Defendants City of Columbia and the Officer
Defendants[2] subsequent to his October 17, 2009 arrest for violating City of Columbia Municipal
Ordinance Section 10-34(b) ("Ordinance") for "interfering with a police officer." Plaintiff's

---

[1] Pretrial matters in this case were assigned to the undersigned pursuant to Local Civil Rule
73.02(B)(2) (D.S.C.), on January 2, 2012. ECF Nos. 121, 122. Because the Motions at issue are
dispositive, this Report and Recommendation is entered for consideration by the district judge.
[2] Any reference to "Defendants" herein refers collectively to Defendant City of Columbia and the
Officer Defendants.

arrest took place in Columbia's Five Points area, where Plaintiff had been socializing with friends. The City of Columbia *nolle prossed* charges against Plaintiff on or around May 20, 2010. *See* Am. Compl., ECF No. 30.

In his Amended Complaint, Plaintiff brings claims under 42 U.S.C. § 1983 ("§ 1983") for violations of his First and Fourth Amendment rights; seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.; and claims under South Carolina law for malicious prosecution, false imprisonment, and assault and battery.[3] He seeks declaratory and injunctive relief, as well as monetary damages. Am. Compl., ECF No. 30.

II.  Standard of Review

Plaintiff moves for partial summary judgment as to the constitutionality of a City of Columbia ordinance, ECF No. 201; the City moves for summary judgment on that same ground, among others, ECF No. 202. The City also moves for judgment on the pleadings as to Plaintiff's cause of action brought pursuant to 42 U.S.C. § 1983. ECF No. 202. The Officer Defendants also move for summary judgment as to all claims against them. ECF No. 203.

For a judgment on the pleadings or summary judgment, the court will view the facts in the light most favorable to the non-moving party and determine whether there is a genuine issue of material fact. *King v. Gemini Food Servs.*, Inc., 438 F. Supp. 964, 966 (D. Va. 1976). The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477

---

[3] Although Plaintiff's Amended Complaint also includes a cause of action for negligence, in responding to Defendants' dispositive motions, Plaintiff indicated he was voluntarily dismissing his negligence cause of action. *See* Pl.'s Consol. Mem. in Opp. 1, n.1 ("Pl.'s Opp'n"), ECF No. 212.

U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255.

When more than one party files a motion for summary judgment, as they have here regarding the constitutionality of an ordinance, the court applies the same standards of review. *Creech v. N.D.T. Indus., Inc.*, 815 F. Supp. 165, 166-67 (D.S.C. 1993) ("[T]he [c]ourt must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56."); *see also ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted)). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967); *see also* 10A Charles Alan Wright, *et al.*, *Fed. Prac. & Proc.* § 2720 (3d ed.).

3

III. Facts

On the night of October 16, 2009, Plaintiff McCoy, a licensed South Carolina attorney, and his friend, Allen Keith McAlister Jr. ("McAlister"), were socializing with a wedding party in the Five Points District of Columbia, South Carolina. *See* Am. Compl. ¶ 10, ECF No. 30.  At approximately 1:30 a.m. on October 17, 2009, they walked to a bar known as Red Hot Tomatoes. McCoy Dep. 76:5-9, 19-20, ECF No. 212-2.  Plaintiff testified that he "believed that [he] did order a mixed drink" at Red Hot Tomatoes, but recalls drinking "a lot of water there" because he was "having issues towards the end of the night with [his] stomach." *Id.* at 78:11-23.

While at Red Hot Tomatoes, McAlister became involved in a disagreement with the bar's employees and was asked to leave. Dep. of Red Hot Tomatoes Bouncer/Doorman, Richard Dennis ("Dennis Dep.") 29:6-9, ECF No. 203-5. Plaintiff was unaware that McAlister had been told to leave the bar. McCoy Dep. 85:17-22; ECF No. 203-6.  While standing outside the bar talking on his cell phone, Plaintiff saw McAlister talking with Officer Defendants; this was when Plaintiff first realized there was an issue with McAlister. *Id.* at 86:1-7.  Plaintiff testified that McAlister "walked away from the police" and that Plaintiff realized that "it wasn't a normal conversation." *Id.* at 88:2-6.  Plaintiff testified that he spoke briefly with McAlister, and then went back inside the bar to close his tab. *Id.* at 89:2-8.

Officer Defendants Long and Passmore assert that that they remained at the bar in order to monitor the situation and ensure that McAlister did not return. Long Aff. ¶ 70, ECF No. 203-3; Passmore Aff. ¶ 21, ECF No. 203-2. While waiting at the bar, the Officer Defendants observed McAlister walk back toward the bar, stop at Sharky's,[4] and lean against the wall.  Long Aff. ¶ 36, ECF No. 203-3; Passmore Aff. ¶ 21, ECF No. 203-2; Heywood Aff. ¶ 36, ECF No. 203-4. Officer Defendants Long and Heywood indicate that they then walked toward McAlister

---

[4] Red Hot Tomatoes and Sharky's are bars located adjacent to one another, separated by an alleyway. Dennis Dep. 39:10-16; ECF No. 202-5.

and placed him under arrest. Long Aff. ¶ 39, ECF No. 203-3; Heywood Aff. ¶ 37, ECF No. 203-4. McAlister was arrested for "Refusal to Leave" Red Hot Tomatoes, pursuant to S.C. Code Ann. § 16-11-620[5] and Resisting Arrest pursuant to City of Columbia Municipal Ordinance § 10-34(a). Am. Compl. ¶ 13.

Video cameras located outside of Red Hot Tomatoes and Sharky's captured the arrest scene, without audio, of both Plaintiff and McAlister.[6]  Plaintiff exited Red Hot Tomatoes and saw "the three officers on top of [McAlister]." McCoy Dep. 254:18-19, ECF No. 203-6. While McAlister was being handcuffed, Plaintiff stood "about 8 feet away" from the officers. *Id.* at 255:6-9.  Plaintiff walked around to the front of Officer Defendants because he wanted to get Defendant Officer Passmore's attention. *Id.* at 256:5-9. When he walked up to Defendant Officer Passmore, McAlister was standing. *Id.* at 257:19-25.  At that time, Plaintiff did not know why McAlister was being arrested. *Id.* at 258:8-11.  Plaintiff was within arms' reach of Officer Defendant Passmore. *Id.* at 260:19-22.  Officer Defendant Passmore pulled McAlister away from Plaintiff and pushed Plaintiff away while instructing him to step back. Passmore Aff. ¶ 31, ECF No. 203-2.  Plaintiff did not advance forward, and holding his hands up, Plaintiff asked Officer

---

[5] Section 16-11-620 of the South Carolina Code provides as follows:

> Any person who, without legal cause or good excuse, enters into the dwelling house, place of business, or on the premises of another person after having been warned not to do so or any person who, having entered into the dwelling house, place of business, or on the premises of another person without having been warned fails and refuses, without good cause or good excuse, to leave immediately upon being ordered or requested to do so by the person in possession or his agent or representative shall, on conviction, be fined not more than two hundred dollars or be imprisoned for not more than thirty days.

[6] Plaintiff attached a copy of a DVD with video footage of the period at issue as an exhibit to the Amended Complaint.  ECF No. 30-1. Several parties provided the court with a copy of the video in connection with the motions before the court. The records are visual only; no sound recording of the events has been provided. *See* Ex. H. to City's Mem., ECF No. 202-8; Ex. 6 to Pl.'s Resp., ECF No. 212-6; Ex. 6 to Pl.'s Mem., ECF No. 201-6; *see also* Officer Defs.' Mem. 2, ECF No. 203-1 at 2 (referring to video attached to Compl. and Am. Compl.). No party has questioned the video's authenticity.

Defendant Passmore what was happening. McCoy Dep. 261:10-22, ECF No. 212-2. Plaintiff testified that he said, "'[w]hoa, wait a minute' . . . 'this guy is staying with me. I just need to know where to pick him up, which jail you all are taking him to. What's he under arrest for,' or words to that effect." *Id.* at 261:25, 262:1-4. Because "Plaintiff failed to comply with [Passmore's] commands to back away . . . [Passmore] pushed him again in order to move him further away from McAlister and [himself]." Passmore Aff. ¶ 31, ECF No. 203-2. Officer Defendant Long also pushed Plaintiff away and instructed him to step back. Long Aff. ¶ 43, ECF No. 203-3. Officer Defendant Long avers that Plaintiff "remained in close proximity" and "verbally contested the arrest of McAlister, saying that he was 'officially his attorney' and generally telling us that we could not arrest McAlister."[7] Long Aff. ¶¶ 44-45, ECF No. 203-3. Officer Defendant Long positioned herself between Plaintiff and the other officers and avers that Plaintiff began using profanities toward her and then grabbed her right arm. *Id.* ¶¶ 47-48. Plaintiff said that, after the second push, he told the Officer Defendants "something to the effect of, 'hang on, guys. . . . No need to get all upset.'" McCoy Dep. 262:18-20, ECF No. 212-2. Plaintiff denies using "fighting words or anything of that nature." *Id.* at 317:3-4. Plaintiff denies touching any of the Officer Defendants. *Id.* at 264:16-24.

Plaintiff testified that as Officer Defendant Heywood was walking McAlister away, he saw Officer Defendant Long reach for her handcuffs and he started "back-pedaling." McCoy Dep. 262:23-24, 263:1; ECF No. 212-2. Then both Officer Defendants Passmore and Long grabbed Plaintiff's arms and placed him under arrest. McCoy Dep. 263:5-8, ECF No. 212-2. Plaintiff was arrested for interfering with a police officer in violation of City of Columbia Municipal Ordinance § 10-34(b). Long Aff. ¶ 49, ECF No. 203-3.

Section 10-34 is titled "Resisting arrest; interfering with police officer" and provides:

---

[7] Officer Defendant Long also states in her affidavit that she did not know Plaintiff and McAlister were "in any way acquainted until some point after Plaintiff had been arrested." Long Aff. ¶ 71, ECF No. 203-3.

> (a) It shall be unlawful for any person, after having been placed under arrest or taken into custody by the police or other persons authorized to do so, to resist arrest whether actively or by flight.
>
> (b) It shall be unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties.

Ordinance, copy available at ECF No. 203-7.

> Officer Defendant Long averred:
>
> Plaintiff's approach within arm's reach of the arrest of McAlister presented a serious potential threat to myself, the other officers, and McAlister. Plaintiff's proximity also distracted me from the arrest of McAlister and required I refocus attention on Plaintiff to ensure he did not try to assault me or the other officers, assault McAlister, or attempt to aid McAlister in resisting arrest or escaping. This division of attention decreased my ability to assist with controlling McAlister, critically since McAlister resisted arrest and was substantially larger than me and even the other officers. Furthermore, Plaintiff positioned himself between us and our patrol cars, constituting another impediment to effecting the arrest of, and securing, McAlister.

Long Aff. ¶ 49, ECF No. 203-3.

Plaintiff alleges that when was escorted to the patrol car, he continued to ask the officers why he was arrested and was told it was for "asking questions" and nothing else. McCoy Dep. 318:1-8; 319:4-17, ECF No. 203-6.

Officer Defendant Heywood stated that he was not involved in the arrest of Plaintiff, but testified in his affidavit that he believed Plaintiff's actions constituted interference with police. "This belief is based upon the substantial physical interference Plaintiff created during the course of our arrest of McAlister. Plaintiff's approach within arm's length of us and McAlister required me to split my attention between McAlister and his resistance and Plaintiff. Plaintiff's actions inhibited and obstructed my ability to deal with the arrest of McAlister, created an unknown threat to my safety, the safety of the other officers, and the safety of McAlister." Heywood Aff. ¶ 51, ECF No. 203-4. Officer Defendant Heywood transported Plaintiff and McAlister to the Alvin S. Glenn Detention Center for booking on the charges. *Id.* ¶ 57. Officer Defendant

Heywood also completed the incident report of the events at issue based on his "recollection of the events [he] observed with input from Officer Long." *Id.* ¶ 61.

Once at the detention center, McCoy and McAlister were assigned a cell in the general population ward. McCoy Dep. 101:1-4, ECF No. 203-6. While awaiting his bond hearing, McCoy witnessed a neighboring cellmate commit suicide by hanging himself. *Id.* at 120:3-123:15. Prior to the trial of the criminal charge, City of Columbia special prosecutor Danny J. Crowe, Esq., *nolle prossed* the criminal charge against Plaintiff with leave to reinstate the charge at the end of the SLED investigation, and when Officer Defendant Heywood returned from active duty military service. *City of Columbia v. McCoy*, Ticket No. 13586EW, Hr'g Tr. 2, May 20, 2010, ECF No. 202-7.

IV. Analysis

In Plaintiff's first cause of action, he seeks relief pursuant to 42 U.S.C. § 1983, alleging that he was arrested based on his "expression of his First Amendment liberties" and that he was arrested and imprisoned without probable cause in violation of the Fourth Amendment. Plaintiff seeks the court's order declaring the Ordinance unconstitutional on its face and as applied to him. He also seeks damages, including attorneys' fees and costs. Am. Compl. ¶¶ 43-68; *see also id.* ¶¶ 69-73 (Pl.'s 2d cause of action seeking declaratory judgment that Ordinance unconstitutional on its face and as applied to him). Issues concerning the Ordinance's constitutionality are inextricably intertwined with all of Plaintiff's claims. Accordingly, the court first considers Plaintiff's First Amendment challenge to the Ordinance.

A. Plaintiff's Constitutional Challenge to the Ordinance

In his Motion for Partial Summary Judgment, ECF No. 201, Plaintiff seeks judgment as a matter of law based on the claimed unconstitutionality of the Ordinance. He seeks judgment both (a) on his § 1983 cause of action "to the extent that [the Ordinance] is unconstitutional;" and (b) as to his cause of action for a declaratory judgment. Pl.'s Mem. 1, ECF No. 201-1. The crux of

8

the issue is whether the Ordinance making it unlawful for a person to "interfere with or molest a police officer in the lawful discharge of his duties[]" is constitutionally overbroad and/or vague under the First Amendment. Plaintiff argues the Ordinance is facially unconstitutional "because it criminalizes a substantial amount of constitutionally protected speech afforded by the First Amendment to the United States Constitution." ECF No. 201-1 at 7; Am. Compl. ¶¶ 53, 66, 69-73. He also submits the Ordinance was unconstitutional as applied to him. ECF No. 201-1 at 15-17; Am. Compl. ¶¶ 67, 69-73.

The City and the Officer Defendants oppose Plaintiff's Motion. ECF Nos. 211, 213.[8] In addition, the City seeks judgment as a matter of law on Plaintiff's claim that the Ordinance is unconstitutionally overbroad or vague. ECF No. 202.[9] In opposition to this portion of the City's Motion, Plaintiff reiterates his arguments from his own Motion. ECF No. 212 at 7-9.

    1.    The Ordinance

The City of Columbia enacted the Ordinance at issue as part of its Code of Ordinances in 1979. The Ordinance provides:

    Section 10-34 Resisting Arrest; **Interfering with Police Officer**

    (a) It shall be unlawful for any person, after having been placed under arrest or taken into custody by the police or other persons authorized to do so, to resist arrest whether actively or by flight.
    **(b) It shall be unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties.**

---

[8] The Officer Defendants posit that Plaintiff's Motion "does not appear to be addressed to the claims against [them]." Officer Defs.' Resp. 1, ECF No. 213. To the extent Plaintiff's Motion is directed toward them, the Officer Defendants, they incorporate their own Motion for Summary Judgment, ECF No. 203; the City's Motion, ECF No. 202; and the City's Response to Plaintiff's Motion, ECF No. 211. In a separately filed Memorandum in Opposition to Plaintiff's Motion, the Officer Defendants add an additional argument that focuses on Plaintiff's claim that the Ordinance is unconstitutionally vague. Officer Defs.' Resp. 2-10, ECF No. 213. Unless otherwise noted herein, the court's recommendations regarding challenges to the Ordinance's constitutionality apply to the arguments of all parties.

[9] The City also seeks summary judgment as to Plaintiff's claim that the Ordinance was unconstitutional as applied to him. ECF No. 200. Plaintiff also opposes that Motion. ECF No. 212. This argument is discussed in connection with other aspects of Plaintiff's § 1983 claim, *infra*.

9

City Code § 10-34 (emphasis added to section being challenged). Violation of the Ordinance is a misdemeanor.  Plaintiff was charged under subsection (b), which is the only section at issue in this litigation.

### 2.     Applicable Law

Both Plaintiff and the City seek the court's ruling regarding the Ordinance's constitutionality. Statutes and ordinances are presumed to be constitutional. *See Fitts v. Kolb*, 779 F. Supp. 1502, 1513 (D.S.C. 1991) (noting state statutes are presumed constitutional). Plaintiff, as the party challenging the Ordinance's constitutionality bears the burden of so proving. *Id.* ("One who challenges constitutionality of statute assumes burden of proving that it is unconstitutional.").  As well explained by the court in *Fitts*, the court must remain mindful that it "'should avoid a statutory interpretation which raises constitutional questions if there is a reasonable reading of the statute which does not [raise] those issues.'" *Id.* (quoting *Bob Jones Univ. v. Johnson*, 396 F. Supp. 597, 608 (D.S.C. 1974)). Similarly, courts are to avoid an unconstitutional construction of a law when possible. *Id.* (quoting *Springs Mills, Inc. v. Consumer Prod. Safety Comm'n*, 434 F. Supp. 416, 432 (D.S.C. 1977)).[10]

### 3.     Plaintiff's Facial Challenge

The court first examines Plaintiff's facial challenge to the Ordinance. "[W]hen overbreadth or vagueness challenges to a law are made, those challenges usually should be resolved before the validity of the law as applied is addressed." *Ross v. Reed*, 719 F.2d 689, 692 (4th Cir. 1983) (citation omitted).

Plaintiff's facial challenge that the Ordinance violates the First Amendment is a question of law for the court to determine. *See New England Reg. Council of Carpenters v. Kinton*, 284

---

[10] When a federal court evaluates a challenge to a state or municipal law, the court must consider any limiting construction that a state court or enforcement agency has proffered. *Grayned v. City of Rockford*, 408 U.S. 104 (1972). Here, however, the parties indicate that no other court has interpreted the ordinance, nor has it been asked to do so.

F.3d 9, 19 (1st Cir. 2002) (noting facial challenge to regulation was a "pure question of law").[11]
One making a "facial" challenge to a law is arguing that the law is "invalid in toto—and
therefore incapable of any valid application." *Steffel v. Thompson*, 415 U.S. 452, 474 (1974).
The Supreme Court explained that, in considering a facial challenge to a law's overbreadth and
vagueness, the court must first "determine whether the enactment reaches a substantial amount of
constitutionally protected conduct." *Village of Hoffman Estates v. The Flipside, Hoffman Estates*,
455 U.S. 489, 494 (1982) (footnote omitted). Although this Report addresses Plaintiff's
overbreadth and vagueness challenges to the ordinance separately, the undersigned notes that the
doctrines are related. *See Kolender v. Lawson*, 461 U.S. 352, 358, n.8 (1983) (noting the Court
has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines.").

### a. Overbreadth

Criminal statutes that "make unlawful a substantial amount of constitutionally protected
conduct may be held facially invalid even if they also have legitimate application." *City of
Houston v. Hill*, 482 U.S. 451, 459 (1987). "Only a statute that is substantially overbroad may be
invalidated on its face." *Id.* at 458. That a statute may evoke a "single impermissible application"
is insufficient to show facial overbreadth. *Id.* at 457 (quotation omitted). The purpose underlying
the overbreadth doctrine is to prevent vastly sweeping laws from repeatedly chilling the exercise
of free expression. *New York v. Ferber*, 458 U.S. 747, 772 (1982). As the Court has explained,
"the requirement of substantial overbreadth stems from the underlying justification for the
overbreadth exception itself—the interest in preventing an invalid statute from inhibiting the
speech of third parties who are not before the Court." *City Council of Los Angeles v. Vincent*,
466 U.S. 789, 802 (1984). Further, the challenging party must demonstrate that the enactment's

---

[11] Because this is a pure question of law, the court's ruling does not turn on facts. Accordingly,
facts are not material to this portion of the court's decision, and it need not consider facts in a
light more favorable to either party. *Cf.* Fed. R. Civ. P. (a) (providing summary judgment shall
be granted if movant entitled to judgment as matter of law and there is no genuine issue of
*material* fact).

overbreadth is shown to be substantial in relation to its legitimate sweep. *Ferber*, 458 U.S. at 772. The United States Supreme Court has warned against overuse of the doctrine, describing it as "strong medicine" that should be utilized "only as a last resort." *See, e.g., Virginia v. Hicks*, 539 U.S. 113, 119-20 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

In support of his overbreadth argument, Plaintiff relies principally on *Hill*, 482 U.S. 451, in which the United States Supreme Court struck down as facially unconstitutional an ordinance criminalizing actions that "interfered" with a police officer. Pl.'s Mem. 8-10, ECF No. 201-1. Other than argue that the Ordinance is like the one struck as unconstitutionally overbroad in *Hill*, Plaintiff has not demonstrated the Ordinance's potential to chill First Amendment freedoms.

On the other hand, the City argues that the Court's ruling in *Hill* is readily distinguishable and that review of *Hill* and other cases shows that the Ordinance "addresses physical conduct and does not criminalize constitutionally protected free speech." City's Mem. 7, ECF No. 202. Further, the City submits, on its face, "it is not apparent whether [the Ordinance] prohibits speech at all." *Id.* To the extent the Ordinance does apply to speech, the City submits it is not overbroad. *Id.*

The undersigned agrees with the City. The portion of the enactment under review in *Hill* made it "'unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty.'" 482 U.S. at 461.[12] The Supreme Court in *Hill* reasoned that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers," *id.*, noting that the Constitution does not allow such speech to be made a crime, *id.* at 462. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63. "'Speech is often provocative and

---

[12] Although Houston's ordinance also included language making it unlawful to "assault or strike," the parties stipulated that a portion of the Texas Penal Code preempted that portion of the local ordinance. 482 U.S. at 460-61 & n.8.

challenging . . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *Id.* at 461 (quoting *Terminello v. Chicago*, 337 U.S. 1, 4 (1949)). "[A] properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" *Id.* (quotation and citation omitted). The Supreme Court held Houston's interference ordinance "is not narrowly tailored to prohibit only disorderly conduct or fighting words." *Id.* at 465.

Plaintiff argues that the Ordinance at issue here is "seemingly more broad and less defined than Houston's ordinance," because the Houston ordinance prohibited actions that "'assault, strike or in any manner oppose, molest, abuse or interrupt any policeman.'" Pl.'s Mem. 10, ECF. No. 201-1 (citing Houston ordinance). In distinguishing the ordinance and decision in *Hill*, the City points out that the "assault, strike" part of Houston ordinance was not considered as part of the statute under review. City Resp. 4, ECF No. 211. The undersigned agrees with the City. In *Hill*, the Court found the Houston ordinance was overbroad based on its provision that "'makes it unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policemen in the execution of his duty[.]'" 482 U.S. at 461. The Court characterized that ordinance as "prohibit[ing] *verbal* interruptions of police officers." *Id.* (emphasis added). The Ordinance at issue in the case at bar, on the other hand, makes it unlawful for a person to "interfere with or molest a police officer in the lawful discharge of his duties." It states noting about verbal interruptions.

The undersigned recommends a legal conclusion that the Ordinance's prohibition against a person's "interfer[ing]" with a police officer lawfully executing his duty does not, on its face, make mere words said to an officer an unlawful interference. Rather, the term "interfere," facially pertains to acts that pose an actual hindrance to the officer's accomplishing a specific

13

duty. The ordinance that was stricken in *Hill*, by contrast, used the term "interrupt," and primarily pertained to spoken interruptions. *See* 482 U.S. at 466-67 (concluding that the Houston ordinance is "susceptible of regular application to protected expression"). Further, the undersigned does not find it apparent that the Ordinance, by its very wording, chills free speech. *See id.* (stating that the ability to conceive of an unconstitutional application of a law does not, by itself, render it overbroad); *see also Vincent*, 466 U.S. at 802 (finding plaintiffs had not met burden of showing ordinance unconstitutionally overbroad because they had failed to "demonstrate a realistic danger that the ordinance [would] significantly compromise recognized First Amendment protections . . ."). Accordingly, the *Hill* Court's finding of overbreadth does not compel this court to conclude that the Ordinance at issue is unconstitutionally overbroad. Plaintiff has not carried his burden of demonstrating that the Ordinance is overly broad on its face.

Additionally, the undersigned notes the South Carolina case of *City of Charleston v. Mitchell*, 123 S.E.2d 512 (S.C. 1961), *rev'd on other grounds*, 378 U.S. 551 (1964), in which the South Carolina Supreme Court interpreted the word "interfere" in a similar City of Charleston ordinance. In *Mitchell*, the criminal defendants had been charged and convicted pursuant to a Charleston ordinance for "interference with a police officer in the discharge of his duty" because they refused to leave the premises and property of a business after having been ordered to do so by police. 123 S.E.2d at 520.[13]

---

[13] The *Mitchell* defendants had also been charged with and convicted of violating a state statute that made it unlawful to trespass on another's property. *See* 123 S.E.2d at 515-17. The Supreme Court of South Carolina upheld that portion of the defendants' convictions. *Id.* at 517-20. The United States Supreme Court reversed that portion of the decision. 378 U.S. 551 (1964); *see* also *Bouie v. City of Columbia*, 378 U.S. 347 (1964) (finding application of S.C. trespass statute was unconstitutionally applied to patrons who legally entered premises but remained there after being asked to leave). The *Bouie* case did not include consideration of an "interference" ordinance. The Court's decisions in *Mitchell* and *Bouie* turned on consideration of the state statute; neither of those decisions considered or addressed an "interference" ordinance.

On appeal, the Supreme Court of South Carolina considered whether the "act of the [criminal defendants] in doing 'nothing' and refusing to leave the premises in question, after being ordered and requested to do so, amount[ed] to an unlawful interference by them of 'the police officer who instructed them to leave the premises . . . .'" *Id.* The court considered authorities interpreting the word "interfere" as referring to "action, not mere inaction, an active rather than a passive condition," and held that the defendants' "refusing obedience to the request of the [police officer] was merely inaction on their part and did not constitute interference with said officer in the discharge of his official duty." *Id.* at 520-21.

Comparing the Ordinance to the ordinance struck down in *Hill*, and considering the Supreme Court of South Carolina's finding that criminal "interference" with a police officer required some action, the undersigned is of the opinion that Plaintiff has not established that the Ordinance "reaches a substantial amount of constitutionally protected conduct," *Hoffman*, 455 U.S. at 494, *i.e.*, pure speech.  For these reasons, the undersigned recommends that the court *deny* the portion of Plaintiff's Motion for Summary Judgment, ECF No. 201, that seeks judgment as a matter of law that the Ordinance is unconstitutionally overbroad, and *grant* the portion of the City's Motion, ECF No. 202, seeking judgment as a matter of law that the Ordinance is not unconstitutionally overbroad on its face.

b.  Vagueness

Plaintiff also challenges the Ordinance's constitutionality on grounds it is void for vagueness. Pl.'s Mem. 11-14, ECF No. 201-1.  Defendants disagree and seek judgment as a matter of law that the Ordinance is not unconstitutionally vague. City's Mem. 13-17, ECF No. 202; City's Resp. 5-6, ECF No. 211; Officer Defs,' Resp. 2-10, ECF No. 213.

"A statute is 'void for vagueness' when its 'terms are so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Fitts*, 779 F. Supp. at 1516 (citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1925)). "Laws must be written

so as to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Id.* (citing *United States v. Biocic*, 928 F.2d 112, 114 (4th Cir. 1991)). A statute is impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Plaintiff argues that, because the Ordinance does not define "interfere with," citizens cannot reasonably understand what type of conduct is prohibited. Pl.'s Mem. 11, ECF No. 201-1. Plaintiff generally argues that the Ordinance is vague because, based on testimony of the individual Officer Defendants, they "do not understand what type of 'interference' is criminal." *Id.* Further, Plaintiff submits that, in the Officer Defendants' application of the Ordinance, what is and what is not criminal interference is improperly left to the discretion of the arresting officer. *Id.* Plaintiff develops this argument more fully in connection with his challenge to how the Ordinance was applied to him. The court will therefore consider this argument when addressing Plaintiff's claim that the Ordinance was unconstitutionally applied to him, *infra*.

The bulk of Plaintiff's vagueness challenge relies largely on the South Carolina case of *Town of Honea Path v. Flynn*, 176 S.E.2d 564 (S.C. 1970). *See* Pl.'s Mem. 12-14, ECF No. 201-1. In *Flynn*, the court found a Honea Path ordinance vague because it made "abuse of" or "interference" with an officer "'in any manner, by word or act' a penal offense." 176 S.E.2d at 566-67. The court considered the ordinance at issue and found it was unconstitutionally vague, because, "[a]side from any invasion of the constitutional guaranties of freedom of speech*, just what kind of word or words would amount to interference with an officer is not at all indicated by the ordinance*." 176 S.E.2d at 567 (emphasis added). The court found that an enactment that gave officers the "discretion to arrest and prosecute those whom they feel have made inappropriate remarks" would "invite gross abuses of discretion and impose unfair penalties and burdens upon the citizenry." *Id.*

16

Defendants argue the case is distinguishable because the court's ruling hinged not on what the word "interfere" itself meant, but because the ordinance broadly outlawed interference with an officer "in any manner, by word or act." *See* City's Mem. 14-15, ECF No. 202. The City notes the court's focus on how the "in any manner, by word or act" language gave the officers too much discretion to arrest and prosecute those whom they believe made inappropriate remarks. The City also submits that "dictionary definitions and common sense can facilitate the vagueness inquiry." *Id.* at 14 (citing *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 370-71 (4th Cir. 2012)).

The undersigned agrees with Defendants. Plaintiff is correct that the *Flynn* court found an ordinance employing the word "interfere" to be unconstitutionally vague. However, the court's focus was upon the vagueness of interference "in any manner, by word or act," and upon the lack of guidance as to what "kind of word or words" would amount to interference. *See* 176 S.E.2d at 567. In so noting, the court focused not on what "interfere" itself meant, but on the statute's proscription of interference "in any manner, by word or act," and noting that the ordinance gave the officers too much discretion to decide what "word or words" would amount to interference. *Id.* Here, the Ordinance focuses on interference. As discussed above, unless otherwise specifically noted as addressing speech, interference is generally viewed as action.

For these reasons, and for reasons noted above in the discussion of Plaintiff's overbreadth challenge, *see Kolender*, 461 U.S. at 358 n.8, the undersigned recommends that the portion of Plaintiff's Motion challenging the Ordinance as being unconstitutionally vague be *denied* and the portion of Defendants' Motion for judgment as a matter of law that the Ordinance is not unconstitutionally vague on its face be *granted.*

### 4.    As-Applied Challenge

In addition to his facial challenge to the Ordinance, Plaintiff claims the Ordinance is unconstitutional as applied to him. *See* Am. Compl. ¶¶ 67 (part of Plaintiff's § 1983 cause of

action), ¶ 73 (part of cause of action seeking declaratory judgment that his arrest and the Ordinance are "unconstitutional as applied to him."). "An 'as-applied' challenge consists of a challenge to a regulation's application only to the party before the court. If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 258 n.4 (4th Cir. 2003) (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758-59 (1988)).

While included as part of Plaintiff's Motion for Partial Summary Judgment concerning the Ordinance's constitutionality, his as-applied challenge relates not to the general (facial) constitutionality of the Ordinance, but to whether, under the facts of this case, Defendants violated his constitutional rights under the First and Fourth Amendments by arresting him under the Ordinance on the morning in question. Similarly, Defendants' opposition to this portion of Plaintiff's Motion, as well as the City's own Motion as to this issue, relates to the Ordinance as applied to Plaintiff. Accordingly, as briefed and analyzed, Plaintiff's as-applied challenge relates to proving one element of his § 1983 cause of action, i.e., "that a right secured by the Constitution or laws of the United States was violated." *See* 42 U.S.C. § 1983. The undersigned's consideration of and recommendations regarding this portion of Plaintiff's challenge to the Ordinance comprise only a portion of the analysis of Plaintiff's § 1983 cause of action.

Plaintiff seeks summary judgment as to his as-applied challenge, claiming that "[t]he facts in the case clearly demonstrate that [Plaintiff] was arrested for speech that merely questioned the actions of [the Officer Defendants]." Pl.'s Mem. 15, ECF No. 201-1. In support, Plaintiff cites to his own deposition, as well as the depositions of Officers Long and Heywood, claiming that, "[b]ased on the video and overwhelming evidence related to this arrest," he is entitled to the court's declaration that the Ordinance is unconstitutional as applied to him. *Id.* at 17.

a.  As to City

In opposing Plaintiff's Motion, the City takes issue with Plaintiff's characterization of the facts and offers citation to additional facts that it contends contradict Plaintiff's version of what happened. City Resp. 6-7, ECF No. 211. The City argues Plaintiff has neither demonstrated that his actions did *not* interfere with the Officer Defendants' discharge of their duties, nor has he shown how his actions are entitled to constitutional protection. *Id.* at 7.  In addition, the City argues that Plaintiff cannot succeed on his as-applied challenge regarding the City because Plaintiff has not established *how* the City "unconstitutionally applied" the Ordinance. *Id.* at 8-9.

Further, in the City's own Motion, it seeks judgment as a matter of law regarding Plaintiff's claim that the Ordinance was unconstitutional as applied to him. City's Mem. 20-26 (regarding First Amendment claim), 27-28 (regarding probable cause/Fourth Amendment claim), 29-36 (arguing no policy or custom attributable to City for purposes of claimed § 1983 violation), ECF No. 202. The City combines this portion of its Motion with its quest for summary judgment as to Plaintiff's § 1983 claim. The City reiterates its version of the facts, arguing the "undisputed time and manner of the Plaintiff's involvement [in the arrest of his friend] plainly interfered with official police activity involving a third person." City's Mem. 24, ECF No. 202.[14] The City submits that it is "entitled to summary judgment on the Plaintiff's as-applied challenge to the constitutionality of § 10-34(b)." *Id.* at 27. It argues that Plaintiff's "undisputed conduct" was similar to that of defendants in cases from other jurisdictions that considered conduct involving police officers. *See id.* at 22-27.

In response, Plaintiff argues that the City is liable pursuant to § 1983 based on the unconstitutionality of the Ordinance. Pl.'s Opp'n 4-10, ECF No. 212. Plaintiff urges the court to find the City responsible under § 1983, arguing that "the facts clearly prove that [Plaintiff's]

---

[14] The City incorporates the affidavits of the Officer Defendants in support of its Motion. *See* City's Mem. 1, n.1, ECF No. 202. It also cites to depositions of the Officer Defendants and to Plaintiff's deposition in setting forth its version of the facts. *Id.* at 1-6.

arrest was motivated by his words and expressive conduct." *Id.* at 6. The City further argues that, even if the Ordinance had been unconstitutionally applied to Plaintiff, Plaintiff has not established liability pursuant to § 1983 because he has not established how the City unconstitutionally applied the Ordinance. *Id.* at 8. The City submits that only police officers can apply the Ordinance and any application by law enforcement can only be imputed to the City by showing such application was pursuant to an unconstitutional practice or custom. *Id.* (citing *Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994)).

In considering the cross-motions of Plaintiff and the City on whether the Ordinance was unconstitutional as applied to Plaintiff, the court is mindful that it must consider the material facts at issue in the light most favorable to the City and the Officer Defendants in considering Plaintiff's Motion on this issue and in the light most favorable to Plaintiff in considering the City's cross-motion on this same issue. *See Creech*, 815 F. Supp. at 166-67. Even so, Plaintiff bears the burden of proof.

When considering Plaintiff's Motion, then, the court considers the facts in the light most favorable to Defendants. Defendants aver Plaintiff was arrested for interfering with the Officer Defendants because Plaintiff approached to within arm's reach during McAlister's arrest. *See* Long Aff. ¶ 49, ECF No. 203-3. Officer Defendant Long also testifies that Plaintiff began using profanities toward her and grabbed her right arm. *Id.* ¶¶ 47-48. Plaintiff's version of the facts is materially different. *See* McCoy Dep. 264:16-24, ECF No. 212-2 (Plaintiff's testimony that he did not initiate contact with any of the Officer Defendants, including Officer Defendant Long); McCoy Dep. 318:1-8, ECF No. 203-6 (Plaintiff's testimony that, when he asked Officer Defendants Long and Passmore for what he was being arrested, he was told "[for] asking questions"); *id.* at 319:4-17 (Plaintiff's testimony that Officer Defendant Long told him his arrest had "nothing to do with anything other than you asking questions, and you're still not doing it. You haven't learned your lesson. That's it.") Accordingly, genuine issues of material fact exist,

and the undersigned recommends the court *deny* the portion of Plaintiff's Motion that seeks judgment as a matter of law that the Ordinance was unconstitutionally applied to him on the morning in question.

Similarly, the undersigned finds genuine issues of material fact as to the City's request for judgment as a matter of law finding the Ordinance was *not* unconstitutionally applied to Plaintiff. Taking the facts in the light most favorable to Plaintiff, Plaintiff submits that the Officer Defendants arrested him for "just asking questions." *See* McCoy Dep. 318:1-8; 319:4-17, ECF No. 203-6. Defendants dispute Plaintiff's characterization of what was said and why he was arrested. *See* Long Aff. ¶¶ 47-49, ECF No. 203-3. Accordingly, genuine issues of material fact exist, and the undersigned recommends the court *deny* the portion of the City's Motion that seeks judgment as a matter of law regarding Plaintiff's as-applied challenge.

The undersigned cannot determine as a matter of law whether Plaintiff was arrested for "asking questions," as he argues, or whether his conduct demonstrated interference that involved physical actions, as Defendants argue. Accordingly, the undersigned recommends finding neither Plaintiff nor the City is entitled to judgment as a matter of law as to Plaintiff's as-applied constitutional challenge. The factual discrepancies and various factual characterizations indicate factual disputes. Moreover, Plaintiff's as-applied challenge is inextricably tied to the analysis of his claims brought pursuant to § 1983.

### b.     As to the Officer Defendants

Plaintiff's Motion for Summary Judgment does not direct itself at the Officer Defendants, nor does Plaintiff specifically indicate he seeks partial judgment against the Officer Defendants regarding his as-applied challenge. The Officer Defendants filed a brief response to Plaintiff's Motion in which they note that Plaintiff's Motion does not appear to be addressed to claims against them. Officer Defs.' Resp. 1, ECF No. 213. To the extent Plaintiff's Motion is directed toward the constitutionality of his arrest, the Officer Defendants incorporate by reference their

own Motion for Summary Judgment, as well as the City's Motion and the City's Response to Plaintiff's Motion. *Id.* at 1-2. Importantly, though, the Officer Defendants refer to the portion of their own Motion in which they argue that, even if the Ordinance were to be determined unconstitutional at this point, they would not necessarily be liable. *Id.* at 2, n.2.[15]

Plaintiff submits that the Ordinance is unconstitutional as applied to him because he was arrested under the Ordinance "for speech that merely questioned the actions of [the Officer Defendants]." Pl.'s Mem. 15, ECF No. 201-1. Plaintiff submits that he was told he was being arrested for "asking questions." *Id.* at 15-16. He submits that the words he used were protected by the First Amendment, making his arrest unconstitutional. In further arguing that the Ordinance as interpreted and applied by the City impermissibly authorizes arbitrary and discriminatory enforcement by police officers, Plaintiff asserts Defendants have a "broad, all encompassing, view of what constitutes 'interference.'" *Id.* at 17. Plaintiff cites to the deposition testimony of Officer Defendant Long, who stated that "[r]efusing to back out of a reactionary gap, refusing to back away from the scene, refusing to back away from a crime scene, refusing to back away from a law officer who's trying to handle another situation" are actions that "go along with the words" when considering what constitutes interference. Long Dep. 86:6-11, ECF No. 202-3. Plaintiff asserts that "Defendants cannot define criminal interference" and cites to the deposition testimony of Officer Defendant Heywood. Pl.'s Mem. 17, ECF No. 201-1. Plaintiff asserts that Heywood testified he *could not define* "interfering" versus "inquiring" stating it was a "case-by-case situation." *Id.* However, Officer Defendant Heywood's actual testimony of the "case-by-case situation" was in response to the question of "[h]ow far do you let someone go before they become interfering versus inquiring." Heywood Dep. 11:24-12:4, ECF No. 201-8.

---

[15] The balance of the Officer Defendants' Response adds little to the analysis. *See* Officer Defs.' Resp. 2-10, ECF No. 213 (citing excerpts of Plaintiff's deposition testimony regarding what he believed to constitute the crime of assault and battery in South Carolina).

Plaintiff ends his Motion by seeking a declaration that the Ordinance is unconstitutional as applied to him, "[b]ased on the video and overwhelming evidence related to this arrest[.]" Pl.'s Mem. 17, ECF No. 201-1. As framed, then, whether the Ordinance is unconstitutional as applied to Plaintiff turns on whether Plaintiff was arrested solely for "asking questions" or whether he was arrested for actions that were separate from any protected speech. Taken in the light most favorable to the Defendants, as the court is constrained to do in considering Plaintiff's Motion, the facts do not support judgment as a matter of law that the Ordinance impermissibly authorizes or encourages arbitrary or discriminatory enforcement by police. However, as discussed within, whether Plaintiff was arrested for speech alone is hotly disputed and creates a quintessential question of fact. Accordingly, to the extent the district judge construes Plaintiff's Motion for Summary Judgment as seeking a ruling as to his as-applied challenge against the Officer Defendants, the undersigned recommends the Motion be *denied* because it presents genuine issues of material fact. As with the as-applied challenge directed to the City, further analysis pursuant to § 1983 is appropriate.

B.      Plaintiff's Claims Pursuant to 42 U.S.C. § 1983

To state a § 1983 claim, Plaintiff has to establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Local governments cannot be held liable under § 1983 for injuries inflicted by their employees or agents based on the theory of respondeat superior. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Rather, "[l]ocal governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" only when an alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. In addition, "local governments, like every other § 1983 'person,' [] may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91.

          1.     The City's Motion for Judgment on the Pleadings Based on Plaintiff's Alleged Failure to Sufficiently Plead a Custom as Required By § 1983

In Plaintiff's § 1983 cause of action, he avers that "Defendants routinely, through their custom, usage, or practice, arrest individuals in or around the City of Columbia in violation of [the Ordinance] for "conduct based on speech or actions that question or oppose police action, all in violation of constitutionally-afforded liberties." Am Compl. ¶ 60. In an argument similar to its argument regarding Plaintiff's as-applied challenge, the City seeks judgment on the pleadings as to Plaintiff's § 1983 claim because Plaintiff has not alleged facts that show the City has a "custom" attributable to the City that proximately caused Plaintiff a constitutional deprivation. ECF No. 18-20 (seeking judgment pursuant to Rule 12(c) because Plaintiff has not alleged sufficient facts on this element of § 1983). The City submits that, other than its bare pleading regarding Defendants' "custom, usage, or practice," Plaintiff has not pleaded sufficient facts to satisfy pleading standards as to the § 1983 claim addressed to the City. ECF No. 202 at 19.

Plaintiff responds to this argument in short order, arguing that is the Ordinance itself that he alleges to be the lynch-pin for his § 1983 claim against the City. ECF No. 212 at 4-6. As Plaintiff correctly noted, "[a] municipality is not immune from section 1983 liability for

unconstitutional enactments and other legislative activities of the local legislature." *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 296 (4th Cir. 1995).[16]

The undersigned agrees that Plaintiff sufficiently pleaded this element of § 1983. Accordingly, the undersigned recommends that this portion of the City's Motion be *denied*. This, however, does not end the analysis of the parties' Motions regarding Plaintiff's § 1983 claims.

        2.        The City's Motion for Summary Judgment as to Plaintiff's § 1983 Claims

In arguing under Rule 56 for summary judgment, the City submits that Plaintiff has not explained or established how it unconstitutionally applied the Ordinance, claiming such failure is fatal to Plaintiff's Motion for Summary Judgment on his as-applied constitutional challenge. City's Resp. 8, ECF No. 211. The City notes that it does not apply the Ordinance, and that it may only be applied by individual police officers. *Id.* The City also argues at length that there is no policy or custom attributable to it, making summary judgment in its favor appropriate. City's Mem. 29-36, ECF No. 202; *see also* City's Resp. 8, ECF No. 211. In response, Plaintiff submits that the City discussed "wholly irrelevant and unnecessary legal arguments" regarding a municipality's liability for unofficial custom and practice. Pl.'s Opp'n 6, ECF No. 212. Rather, Plaintiff explains, the City is subject to municipal liability because Plaintiff "was arrested under the color of an unconstitutional ordinance." *Id.*

Because the undersigned recommends a finding that the Ordinance is not facially unconstitutional, it follows that a finding that Plaintiff has not established § 1983 liability as to the City. Further, the court notes that Plaintiff apparently attempts to bolster his argument by citing record evidence that at least 115 arrests were made pursuant to the Ordinance in 2009. Pl.'s Opp'n 6, ECF No. 212. This argument is unavailing. When asked at oral argument whether

---

[16] At the hearing, counsel for the City did not dispute that an ordinance could provide the basis for a municipality's § 1983 liability. Rather, counsel sought a stipulation from Plaintiff's counsel that the Ordinance itself was the sole basis on which it sought to place § 1983 liability. Plaintiff did not so stipulate.

Plaintiff had evidence regarding how many of those 115 arrests were made based on individuals merely speaking to officers, counsel for Plaintiff indicated that such information was unavailable. With no evidence that any of the 115 arrests in 2009 involved constitutionally protected speech, Plaintiff is unable to carry his burden that the City has a policy of constitutionally improper enforcement of the Ordinance. Accordingly, the City's Motion for Summary Judgment as to Plaintiff's § 1983 claim should be *granted*.

The City also argues that it cannot be liable to Plaintiff because probable cause existed for his arrest. *See* City's Mem. 28, ECF No. 202 ("To the extent probable cause existed to arrest the Plaintiff, the City cannot be liable for a violation of the Plaintiff's civil rights.").  In this case, Plaintiff avers Defendants violated his First and Fourth Amendment rights. Am. Compl. ¶ 68. The City briefly argues that Plaintiff's claim regarding his allegedly unconstitutional arrest must be analyzed under the Fourth Amendment. *See id.* at 28 & n.14, ECF No. 202 (citing *Albright v. Oliver*, 510 U.S. 266 (plurality decision)). The City further submits, without discussion, that the portion of Plaintiff's Amended Complaint brought pursuant to the First Amendment should be dismissed because it fails to state a claim. *Id.*

This argument is without merit. In *Albright v. Oliver*, the question before the Court was whether the plaintiff's arrest violated his Fourth and Fourteenth Amendment rights. The *Albright* plaintiff argued his Fourteenth Amendment right of substantive due process had also been violated as a result of his arrest. 510 U.S. at 271. The Court found that the Fourth Amendment provided a remedy (if one existed) in that instance because when a "particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, Plaintiff avers violation of the "explicit" right to freedom of speech pursuant to the First Amendment and the right "of people secure in their

persons, houses, papers, and effects, against unreasonable seizures." U.S. Const. amend. IV. Both are express Constitutional rights.

The City also adopts the arguments of the Officer Defendants that probable cause existed to arrest Plaintiff for the charged offense as well as other, uncharged, offenses. City's Mem. 28 n.15, ECF No. 202. The undersigned addresses the arguments regarding probable cause below. However, the City itself does not apply the Ordinance and acts through its officers. Based on the undersigned's recommendation, *supra*, that the City is not liable under § 1983 because Plaintiff has not proven the Ordinance is unconstitutional, nor has he proven an unconstitutional custom or policy that the City applied, *see Monell,* 436 U.S. at 690-91, the court need not consider that argument in connection with the City's Motion.

### 3. Officer Defendants' Motion for Summary Judgment as to Plaintiff's § 1983

The Officer Defendants also move for summary judgment on Plaintiff's § 1983 claims, arguing Plaintiff has not established that his October 17, 2009 arrest violated his Fourth Amendment rights because he has not shown the Officer Defendants lacked probable cause to arrest him. Officer Defs.' Mem. 7-19, ECF No. 203-1.[17] The Officer Defendants also argue that, even if probable cause was lacking, they are entitled to qualified immunity. ECF No. 203-1 at 31-35.

Plaintiff opposes the Officer Defendants' arguments by claiming he was arrested on a warrantless charge that lacked probable cause and the "set of facts" before the court show that it was "unjustifiable for a reasonable officer to conclude [Plaintiff was] violating the law." ECF No. 212 at 23. Plaintiff also argues the Officer Defendants' request for summary judgment on their qualified immunity defense should be denied because genuine issues of material fact exist

---

[17] The court discusses below Officer Defendant Heywood's argument that he is entitled to summary judgment as to Plaintiff's § 1983 claim because he was not "personally involved" in Plaintiff's arrest. ECF No. 203-1 at 24-25.

as to whether they are entitled to such a defense. *Id.* at 30-33. The court considers these arguments in turn.

>    a. The Officer Defendants' Argument that Plaintiff Has Not Established the Absence of Probable Cause

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991). "The determination and existence of probable cause is a "practical, nontechnical conception," and it involves "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949). Probable cause will be found when "the facts and circumstances within an officer's knowledge— or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000). "'Whether probable cause exists in a

particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Rogers v. Pendleton,* 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)).  "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." *Id.* A court's inquiry should be made based on the information possessed by the officer at the time of the arrest that was then reasonably available to him at the time of arrest, and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett,* 973 F.2d at 312.  When a plaintiff alleges a lack of probable cause for an arrest, he "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" that the plaintiff was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002).

The Officer Defendants argue that the facts before the court clearly establish that they had probable cause to arrest Plaintiff for interference with a police officer pursuant to the Ordinance.  The Officer Defendants contend that the following facts support probable cause to arrest Plaintiff:

- Plaintiff approached the scene of an arrest and came within an arm's reach of the Officers Defendants and the arrestee;

- Plaintiff verbally contested the arrest;

- Plaintiff positioned himself between the officers and their vehicle; and

- Plaintiff failed to heed clear verbal commands to step away from the arrest.

McCoy Dep. 260:3-11, 17-25, 261:1-262:22, ECF Nos. 212-2; Passmore Aff. ¶¶ 31-35, ECF No. 203-2; Long Aff. ¶¶ 42-48, 203-3. The Officer Defendants argue that Plaintiff's actions were perceived as a threat to the safety of the officers and the arrestee, delayed the officers in securing the arrestee in the patrol car, and divided the officers' attention from the arrestee thereby

increasing the threat of harm. Officer Defs.' Resp. 14, ECF No. 203-1. Plaintiff contends that he approached the officers in a "non-threatening, non confrontational, passive" manner to inquire about "the abusive treatment" of his friend who was being arrested and to "ask what jail he was being taken to." Pl.'s Opp'n 25, ECF No. 212. Plaintiff argues that he "made no threatening remarks, uttered no words that would incite a breach of peace, and made no threatening movements towards the officers." McCoy Aff. ¶ 5, ECF No. 212. Plaintiff denies that he put the officers in any danger or that he attempted to prevent the arrest or obstruct the officer from taking the arrestee to the police car. *Id.* ¶¶ 6-7. Plaintiff does not deny that he was standing within arm's reach of the officers but argues that this does not rise to criminal activity. Pl.'s Opp'n 26, ECF No. 212. Plaintiff contends he was arrested for "asking questions." McCoy Aff. ¶ 8, ECF No. 212-1. Both parties also offer copies of video that captured Plaintiff's arrest and argue that the video supports their version of the facts.

In considering this Motion, the court is required to view the facts in the light most favorable to Plaintiff. *Anderson*, 477 U.S. at 255. The undersigned has reviewed the evidence before the court, including the video of the incident, and finds that there is a genuine question of material fact as to whether the "facts and circumstances within the officer's knowledge . . . [were] sufficient to warrant a prudent person . . . in the circumstances shown" to conclude that Plaintiff had violated the Ordinance. *See Willingham v. Crooke*, 40 F. App'x 850, 852 (4th Cir. 2002) (finding it appropriate to submit the question of probable cause to a jury when genuine factual issues exist regarding whether there was probable cause for arrest); *cf. Pritchett*, 973 F.2d at 313 (in deciding issue of qualified immunity, finding that "[i]f there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial.").

The Officer Defendants also argue that sufficient probable cause existed because they had had probable cause to arrest Plaintiff for public intoxication pursuant to S.C. Code Ann. §16-17-

530,[18] and City of Columbia Ordinance §14-98.[19]  Officer Defs.' Mem. 15-19, ECF No. 203-1.[20]

*See Devenpeck*, 543 U.S. at 153 (noting the "subjective reason for making the arrest need not be

the criminal offense as to which the known facts provide probable cause.").

In support of this argument, Officer Defendant Passmore testified that he could "clearly

smell" alcohol on Plaintiff's "breath and person[,]" that Plaintiff's appearance was "disheveled

and he seemed slightly disoriented[,]" and that his standing and walking were impaired.

Passmore Aff. ¶ 37, ECF No. 203-2.  Officer Defendant Long testified similarly. Long Aff. ¶ 52,

ECF No. 203-3 (testifying Plaintiff was publicly intoxicated at time of arrest based on

observations that his "standing and walking were impaired," he "smelled strongly of alcoholic

beverages," and he "was having trouble speaking clearly and was slurring his words."). In large

measure, the Officer Defendants' allegations of Plaintiff's public intoxication are based on

review of the video. *See, e.g.*, Passmore Aff. ¶ 15 (noting he reviewed video in preparing

affidavit in support of motion), ¶ 37 ("Based on my training and experience, Plaintiff's ability to

walk appears impaired on this video."), ECF No. 203-2 at 4, 10; Long Aff. ¶¶ 54-55 (indicating

she was unaware of the video cameras when she arrested Plaintiff, and indicating she reviewed

the videos provided by Plaintiff in preparing her affidavit), ¶¶ 77-78 (referring to video and

indicating that, based on her "observation of Plaintiff's gait" and her "experience and training,"

Plaintiff appears to be "under the influence of alcohol."), ECF No. 203-3. Plaintiff challenges the

contention that there was probable cause to arrest him for public intoxication. He argues that the

Officer Defendants did not witness him drinking alcohol, that he was not administered a

---

[18] Section 16-17-530(a) provides in part that "[a]ny person who shall be found on any highway or at any public place or gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, . . . shall be deemed guilty of a misdemeanor."
[19] Section 14-98 states that "[a]ny person who shall be found drunk or intoxicated in the corporate limits of the city in any place, public or private, so as to be offensive to others shall be guilty of a misdemeanor . . . ." Copy available at ECF No. 203-9.
[20] As noted above, the City also argues that the Officer Defendants had probable cause to arrest Plaintiff. *See* City's Mem. 42-43, ECF No. 202.

breathalyzer or sobriety test as he requested, and that the encounter before his arrest was too brief for the officers to determine whether he was intoxicated.  Pl.'s Opp'n 28, ECF No. 212; Long Dep. 102:22-24, ECF No. 212-10.

The court agrees, in principle, with the Officer Defendants' argument that they may establish probable cause for purposes of the Fourth-Amendment analysis by demonstrating probable cause existed for offenses other than violation of the Ordinance. *See Devenpeck*, 543 U.S. at 153. However, from the court's review of the video of the arrest, it is not apparent that Plaintiff is disoriented or stumbling.  Based on the evidence before the court, the undersigned finds that there is a genuine issue of material fact as to whether probable cause existed to arrest Plaintiff for public intoxication, making summary judgment inappropriate as to this issue.

In making this recommendation, the undersigned is mindful of the decision of the United States Supreme Court in *Scott v. Harris*, 550 U.S. 372 (2007). In *Scott*, the Court determined the lower court had erroneously found issues of fact to exist because versions of the facts at issue— particularly the automobile chase between the plaintiff and police officers—differed. 550 U.S. at 378-81. In so finding, the Court determined that the plaintiff's version of the at-issue events was "blatantly contradicted" by a videotape in the record. 550 U.S. at 380-81. In that instance, the Court had noted that the videotape told "quite a different story[]" about the car chase than the facts provided by the plaintiff. 550 U.S. at 378-79. The Court held that the facts should have been viewed "in the light depicted by the videotape." 550 U.S. at 381. In so finding, the Court instructed as follows:

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

550 U.S. at 380. *See also Witt v. W. Va. State Police*, 633 F.3d 272, 276 (4th Cir. 2011) (finding "*Scott* does not hold that courts should reject a plaintiff's account on summary judgment

whenever documentary evidence, such as a video, offers *some* support for a governmental officer's version of events.") (emphasis in original).

Nor does the undersigned find the Officer Defendants are entitled to summary judgment based on their argument that they had probable cause to arrest Plaintiff for assault and battery[21] because of his "touching" of Officer Defendant Long. ECF No. 203-1 at 17. In support of that argument, the Officer Defendants argue that Plaintiff's conduct "implies an oppositional intent on Plaintiff's behalf." ECF No. 203-1 at 18. Officer Defendant Passmore testified he heard Plaintiff use profanity that "appeared to be directed to Officer Long." Passmore Aff. ¶ 33, ECF No. 203-2. Officer Defendant Long testified that Plaintiff grabbed her right arm. Long Aff. ¶ 92, ECF No. 203-3.

Plaintiff denies having grabbed Officer Defendant Long's arm; he submits that the video clearly demonstrates that he did not grab her arm and that he did not "get in an officer's face." Pl.'s Opp'n 27, ECF No. 212; McCoy Aff. ¶¶ 5-6, ECF No. 212-1. Plaintiff also notes that Officer Defendant Passmore testified that he did not see Plaintiff physically grab Officer Defendant Long. Passmore Dep. 70:5-8, ECF No. 212-12.

Although the Officer Defendants acknowledge Plaintiff's denial of having touched Officer Defendant Long, they argue this factual discrepancy is "insufficient to defeat a finding of probable cause for [Plaintiff's] arrest." Officer Defs.' Mem. 19 n.9, ECF No. 203-1. As support, the Officer Defendants cite *Scott,* 550 U.S. 372, claiming the Court's decision in that § 1983 case requires a finding that summary judgment is appropriate here. The Officer Defendants submit that the videotape of the interaction between Plaintiff and Officer Defendant Long provides

---

[21] Under South Carolina law, "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Jones v. Winn-Dixie Greenville, Inc.,* 456 S.E.2d 429, 432 (S.C. Ct. App. 1995) (citing *Gathers v. Harris Teeter Supermarket, Inc.,* 317 S.E.2d 748 (S.C. Ct. App. 1984)).

evidence sufficient to overcome any factual discrepancies as to whether probable cause existed for arresting Plaintiff on assault and battery charges.

The undersigned is of the opinion that material issues of fact exist on the probable-cause issue, making summary judgment inappropriate. *Scott* does not require a different conclusion. *See Witt*, 633 F.3d at 276 (finding "*Scott* does not hold that courts should reject a plaintiff's account on summary judgment whenever documentary evidence, such as a video, offers *some* support for a governmental officer's version of events.") (emphasis in original).

The undersigned has considered carefully the evidence presented by all parties, including the video of the incident. Having reviewed all evidence, including the video, in accordance with *Scott* and other applicable standards, the undersigned finds a question of fact exists as to whether the Officer Defendants had probable cause to arrest Plaintiff for assault and battery.

Accordingly, based upon the evidence before the court and given the totality of the facts and circumstances within the Officer Defendants' knowledge at the time of the October 17, 2009 arrest, the undersigned finds that there is genuine issue of material fact whether a prudent or reasonable person would have believed that Plaintiff had committed or was committing a criminal offense.   The undersigned recommends the portion of the Officer Defendants' Motion in which they seek summary judgment because probable cause existed to arrest Plaintiff for interference with an officer, public intoxication, and/or assault and battery be *denied*.

       b.  The Officer Defendants' Motion for Summary Judgment on Qualified Immunity

The Officer Defendants contend they are entitled to qualified immunity because the record fails to demonstrate that they crossed any bright line of constitutional conduct, arguing that a reasonable officer in their position would have believed probable cause existed to arrest Plaintiff. ECF No. 203-1 at 31-35.

In *Harlow v. Fitzgerald*, the Supreme Court of the United States set forth objective standards for a qualified immunity defense, holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818 (1982). When evaluating this defense, the court must determine the following: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

Qualified immunity is not lost when an officer violates the Fourth Amendment unless a reasonable police officer would know that the specific conduct at issue was impermissible. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). The appropriate question is whether a reasonable police officer could have believed that arresting the plaintiff was lawful in light of clearly established law and the information the officers possessed. *Cf. Wilson v. Layne*, 526 U.S. 603, 615 (1999). Officers are not afforded protection when they are "plainly incompetent or . . . knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Whether a right allegedly violated was "clearly established at the appropriate level of inquiry and at the time of the challenged conduct is always a matter of law for the court[.]"

*Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). Having considered the arguments of the parties, the undersigned finds that, at the time of the alleged misconduct, the following constitutional rights were clearly established:  (1) to arrest someone without probable cause violates the Fourth Amendment, *see, e.g., United States v. Watson*, 423 U.S. 411, 417 (1976) (noting if an officer effects an arrest in the absence of probable cause, he violates the arrestee's Fourth Amendment right to be free from unreasonable seizure); *Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 627 (4th Cir. 2007) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir.1996) ("'[T]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.'"); and (2) to arrest a third party for criticizing a police officer, absent the use of fighting words, during an arrest of another violates the First Amendment, *see, e.g., Lewis v. City of New Orleans*, 415 U.S. 130, 132 (1974) (examining the arrest of a third party for cursing at police officers and finding that the First Amendment protects "obscene" or "opprobrious" language directed at police officers so long as fighting words are not used); *Hill*, 482 U.S. at 461 (holding that third party's verbal criticism of an officer's treatment of his friend must do more than "interrupt . . . any policeman in the execution of his duty" to be constitutionally sanctionable).  It was also clearly established at the time of Plaintiff's arrest that the police may not arrest "a third party for . . . refusing to leave the scene of an arrest."  *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (affirming district court's finding that right clearly established under Virginia law).

As the Fourth Circuit has noted, however, although the purely legal question of whether the constitutional right at issue was clearly established "is always capable of decision at the summary judgment stage," a genuine question of material fact regarding "[w]hether the conduct allegedly violative of the right(s) actually occurred . . . must be reserved for trial." *Pritchett*, 973 F.2d at 313.  As discussed in detail above, the undersigned finds that, when viewing material

facts in the light most favorable to Plaintiff, and when considering the video evidence provided by all parties, a question of fact exists as to whether the Officer Defendants violated Plaintiff's clearly established constitutional rights. The court cannot determine at the summary-judgment phase that the Officer Defendants' actions were objectively reasonable for purposes of granting qualified immunity. Accordingly, the undersigned recommends that the Officer Defendants be *denied* qualified immunity.

> c. Officer Defendant Heywood's Motion for Summary Judgment Based on Lack of Personal Involvement

Officer Defendant Heywood argues he is entitled to summary judgment as to Plaintiff's § 1983 claim because there is no evidence in this case that he was personally involved in Plaintiff's arrest other than transporting Plaintiff to the detention center, and therefore Plaintiff cannot state a constitutional deprivation against him. Officer Defs.' Mem. 24-25, ECF No. 203-1.  Plaintiff opposes this portion of the Motion, arguing Officer Defendant Heywood was personally involved in the deprivation of Plaintiff's rights because he was present during the arrest, transported Plaintiff to the detention center, and drafted a "fabricated Incident Report."  Pl.'s Opp'n 35, ECF No. 212.  Plaintiff further argues that if Officer Defendant Heywood was not involved in his arrest, then "why did the special prosecutor offer his inability to attend trial as another excuse to *nolle pross* the charge?"  *Id.* Regarding his involvement with Plaintiff's arrest, Defendant Heywood attests that:

> I was not involved in the arrest of Plaintiff as I was securing McAlister at the time, However, based upon my training and experience, I believe that Plaintiff's actions constituted interference with police in violation of City of Columbia ordinance § 10-34(b). This belief is based upon the substantial physical interference Plaintiff created during the course of our arrest of McAlister. Plaintiff's approach within arm's length of us and McAlister required me to split my attention between McAlister and his resistance and Plaintiff. Plaintiff's actions inhibited and obstructed my ability to deal with the arrest of McAlister, created an unknown threat to my safety, the safety of the other officers, and the safety of McAlister.

Heywood Aff. ¶ 51, ECF No. 203-4.

37

In order to sustain a § 1983 claim, a plaintiff must prove that he or she was deprived of a constitutional right by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). It is well-settled that Plaintiff also must establish that each Defendant was personally involved in the deprivation of his constitutional rights in order to sustain a claim under § 1983. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). However, the Fourth Circuit has found that 42 U.S.C. § 1983 "allows the imposition of liability upon actors more remote than those who actually inflict the ultimate constitutional injury, where their own conduct can be said to have played a significant role in "causing" that injury." *Cook v. James,* 100 F. App'x 178, 180-81 (4th Cir. 2004). The undersigned finds that there is sufficient evidence in the record that would establish that Officer Defendant Heywood was a remote actor for the purposes of § 1983 liability. The undersigned recommends that Defendant Heywood's Motion for Summary Judgment based on his claimed lack of personal involvement be *denied*.[22]

    C. Defendants' Motions for Summary Judgment as to Plaintiff's State-Law Causes of Action

In addition to relief pursuant to § 1983, Plaintiff also brings claims under South Carolina law for malicious prosecution, false imprisonment, and assault and battery.[23] *See* Am. Compl. ¶¶ 74-89, ECF No. 30. The City and the Officer Defendants seek summary judgment as to each of these state-law claims. City's Mem. 42-43, ECF No. 202; Officer Defs.' Mem. 22-23, 25-31, ECF No. 203-1.

---

[22] During argument before the court, counsel for the Officer Defendants also argued that Officer Defendant Passmore should be granted summary judgment as he was not personally involved in Plaintiff's arrest. The undersigned recommends that Defendant Passmore's motion be denied for the same reasons articulated above.

[23] Because Plaintiff has indicated he is voluntarily dismissing his negligence cause of action, *see* Pl.'s Mem. 1, n.1, ECF No. 212, the undersigned need not consider the parties' arguments regarding that cause of action.

1.  South Carolina Tort Claims Act ("SCTCA")

Both the City and the Officer Defendants seek summary judgment as to the state law claims based, in part, on defenses pursuant to the SCTCA. The SCTCA grants immunity to employees of South Carolina and its political subdivisions "while acting within the scope of official duty" except as expressly waived.  S.C. Code Ann. § 15-78-20(b); *see also id.* § 15-78-70(a) (stating "employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided in subsection (b)"); *id.*§ 15-78-70(b) (stating employees are not entitled to immunity "if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."). A corresponding waiver of sovereign immunity allows suits against South Carolina and its political subdivisions except for "employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude[.]" S.C. Code Ann. § 15-78-60.

i.  SCTCA Applicability to Officer Defendants

As a threshold matter, the Officer Defendants contend they are entitled to summary judgment on Plaintiff's state tort law claims against them because they "were employees of the City of Columbia at the time of the incident alleged within the Amended Complaint and that they were acting within the course and scope of their employment." Officer Defs.' Mem. 22, ECF No. 203-1.  The Officer Defendants aver that, because Plaintiff makes no allegation within the Amended Complaint that they were acting outside the scope of their employment, Plaintiff may not properly pursue state tort law claims against them.  *Id.* at 22-23.

In response, Plaintiff contends that this portion of the Officer Defendants' Motion should be denied because he has offered alternative statements of a claim against the Officer Defendants and has argued that the Officer Defendants were acting pursuant to their official duties while also

alternatively presenting "sufficient evidence for a finder of fact to conclude that the Officers acted with actual fraud, actual malice, and intent to harm."  Pl.'s Opp'n 34, ECF No. 212.

The Officer Defendants also contend that Plaintiff's claims are subject to dismissal under "various exceptions to the government's waiver of sovereign immunity contained within Section 15-78-60 of the South Carolina Code of Laws."   Officer Defs.' Mem. 26, ECF No. 203-1. Plaintiff denies that the Officer Defendants are entitled to the "purported immunities afforded to them under the SCTCA," because the SCTCA "is only applicable to the City as an entity, and not the individual defendants."  Pl.'s Opp'n 37, ECF No. 212.

In an Order dated March 11, 2011, the court adopted a modified Report and Recommendation and dismissed Plaintiff's action against the Officer Defendants in their official capacities.  Order, Mar. 11, 2011, 2, ECF No. 79 (noting that, as to the Officer Defendants, the action will proceed "in their individual capacities only").   Because Plaintiff may no longer pursue claims against the Officer Defendants in their official capacities, the undersigned recommends that the court find the immunities provided under the SCTCA are no longer available to the Officer Defendants.  The undersigned, therefore recommends that portion of the Officer Defendants' Motion seeking judgment as a matter of law as to Plaintiff's state-law claims based upon the SCTCA be *denied*.

> B. City's Argument that Specific Exceptions to SCTCA Apply to All State-Law Claims Against It

The City also argues that Plaintiff's state law tort claims are barred by the exceptions to South Carolina's waiver of immunity contained within the SCTCA.  City's Mem. 36-39, ECF No. 202. The City argues that S.C. Code § 15-78-60(4) provides immunity to government entities for losses resulting from "the enforcement [of] . . . any law . . . including, but not limited to, any . . . ordinance . . . ." S.C. Code Ann. § 15-78-60(4).  City's Mem. 37, ECF No. 202. The City contends that "the entire thrust of Plaintiff's claims concern the City's enforcement of §10-

34(b) of the City Code," and therefore the City is entitled to immunity from Plaintiff's torts claims. *Id.*

Plaintiff opposes this portion of the City's Motion and argues that his case "does not involve enforcement of an ordinance, but rather the Officers' warrantless arrest of [Plaintiff] without probable cause." Pl.'s Opp'n 10, ECF No. 212. Plaintiff submits that to apply the ordinance-enforcement exception to his claims would prevent any person from ever bringing a claim against a governmental entity for an arrest made without probable cause. *Id.* Therefore, Plaintiff contends that S.C. Code § 15-78-60(4) is not applicable to his case.

The undersigned has found, *supra*, that the Ordinance at issue is not unconstitutional and has recommended summary judgment as to Plaintiff's § 1983 claim on that basis, among others. It follows, therefore, that no claims remain against the City for its "enforcement of an ordinance." Plaintiff, however, has also articulated a theory of liability based on his arrest lacking probable cause, and the undersigned finds that the City is not entitled to immunity based on the above-cited statutory provision for those claims.

The City also argues that it is not liable for loss pursuant to the SCTCA's immunity for "employee conduct outside the scope of his official duties that constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-60(17). *See* City's Mem. 28, ECF No. 202.  The City argues that the facts developed during discovery establish that Plaintiff plans to argue that the Officer Defendants acted with actual fraud, actual malice and intent to harm.  *Id.* at 39; *see* McCoy Dep. 269:10-12, ECF No. 202-1 (testifying that Officer Defendant Passmore acted with malice when pushing Plaintiff). The City also contends that if any of the Officer Defendants acted with malice in instituting a criminal charge, then that conduct falls outside the officer's scope of duties, which would also entitle the City to summary judgment. City's Mem. 39, ECF No. 202 (arguing if any Officer Defendant acted with malice,

41

"such conduct would fall outside the scope of an officer's official duties," entitling City to dismissal).

Plaintiff avers that this argument fails because the "officers admit they were acting lawfully within the official duties." Pl.'s Opp'n 11, ECF No. 212. Plaintiff further argues that, because the Officer Defendants assert that their actions do not constitute actual fraud or malice, intent to harm or crime involving moral turpitude, issues of fact exist as to whether the Officer Defendants' conduct falls outside the scope of the SCTCA. *Id.* Plaintiff also contends that malicious prosecution does not require a showing of actual malice, and that the malice element may be met by "proof of a mental state that does not rise to the level of 'actual malice' required for the City to be immune from suit." *Id.* at 11-12. Plaintiff contends that the evidence in this case "clearly creates an issue of fact concerning the motives and mental state of the City's employees in pursuing Plaintiff's arrest and prosecution." *Id.* at 12.

The undersigned has reviewed the record and finds that there is a genuine issue of material fact as to whether the Officer Defendants acted in a manner that would limit the City's liability under the SCTCA, and therefore, recommends that this argument for summary judgment based on this exception to the SCTCA be *denied*.

The undersigned now considers whether summary judgment is appropriate on Plaintiff's state-law claims as against the City and against the Officer Defendants in their *individual* capacities. These arguments are best considered separately as to each of Plaintiff's remaining tort causes of action.

2. Defendants' Motion for Summary Judgment on Malicious Prosecution Claim

Defendant City of Columbia and the Officer Defendants seek summary judgment on Plaintiff's malicious prosecution claim. The elements of malicious prosecution are (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such

proceedings; (5) lack of probable cause; and (6) resulting injury or damage. *Law v. S.C. Dept. of Corr.*, 629 S.E.2d 642, 648 (S.C. 2006). In this cause of action, malice is "the deliberate intentional doing of a wrongful act without just cause or excuse." *Eaves v. Broad River Elec. Coop., Inc.*, 289 S.E.2d 414, 416 (S.C. 1982) (internal quotation omitted). In this context, "malice" does not necessarily mean a defendant acted out of spite, revenge, or with a malignant disposition. *Law*, 629 S.E.2d at 649. "In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution." 629 S.E.2d at 649. "[O]ne need not show actual malice in order to successfully maintain an action for malicious prosecution." *McBride v. Sch. Dist. of Greenville Cnty.*, 698 S.E.2d 845, 855 (S.C. Ct. App. 2010).

### a. As to the City: Institution/Prosecution of Proceeding

As to the first element of Plaintiff's malicious prosecution claim, the City contends that it is entitled to summary judgment because it is immune from suit relating to "the institution or prosecution of a judicial proceeding" under the SCTCA, S.C. Code Ann. § 15-78-60(23). City's Mem. 37, ECF No. 202. Plaintiff argues that South Carolina courts have found that the SCTCA does not bar suits involving false arrest and that this same analysis is equally applicable to Plaintiff's malicious prosecution claim against the City. Pl.'s Opp'n 11, ECF No. 212 (citing *Gist v. Berkeley Cnty. Sheriff's Dept.*, 521 S.E.2d 163 (S.C. 1999)). In *Gist*, the court was considering the sheriff department's argument that section (3) of the SCTCA, S.C. Code § 15-78-60(3), provided it immunity from plaintiff's claim for false arrest. That section excepts liability for "loss resulting from . . . execution, enforcement, or implementation of the orders of any court or execution, enforcement, or lawful implementation of any process[.]" 521 S.E.2d at 166-67. The Court of Appeals held the exception did not apply because the false arrest claim concerned the sheriff department's allegedly "securing the [arrest] warrant without probable cause[,]" rather

than from executing, enforcing, or implementing the arrest warrant that had been issued by a magistrate. *Id.*

That analysis is inapposite here. For purposes of its Motion, the City admits that it instituted and prosecuted a claim against Plaintiff. City's Mem. 38, ECF No. 202; *see also* City's Answer to Am. Compl. ¶ 20, ECF No. 37.  Plaintiff's cause of action for malicious prosecution plainly falls within this express exception. Without establishing that the City "instituted or prosecuted" a claim against Plaintiff, Plaintiff could not establish the first element of the malicious prosecution claim. Accordingly, the undersigned recommends that City be *granted* summary judgment on Plaintiff's malicious prosecution claim.

### b.  As to Officer Defendants in their Individual Capacities

The Officer Defendants argue that they are also entitled to summary judgment as Plaintiff is unable to meet the third, fourth, and fifth elements of a malicious prosecution claim.  Officer Defs.' Mem. 25-28, ECF No. 203-1. Concerning element three—the termination of a proceeding in Plaintiff's favor—Plaintiff has the burden of proving that the *nolle prosequi* of his case was entered under circumstances that imply or are consistent with his innocence. *See Nicholas v. Wal-Mart Stores*, *Inc.*, 33 F. App'x 61, 64-65 (4th Cir. 2002) (placing burden on plaintiff and finding district court erred in denying judgment as a matter of law on plaintiff's malicious prosecution claim when plaintiff did not produce sufficient evidence from which it could be inferred that the reason for the *nolle prosequi* of her charges was her innocence).

The Officer Defendants also note that the City's special prosecutor informed the municipal court it was *nolle prossing* Plaintiff's charges with leave to reinstate, which did not indicate the proceedings had been ended in Plaintiff's favor. Officer Defs.' Mem. 26, ECF No. 203-1. As noted by the special prosecutor, the City chose to *nolle prosequi* the matter against Plaintiff because:

> The S.L.E.D. investigation [of Plaintiff's arrest] encumbers the ability of the police officers to testify in a criminal case against [Plaintiff] and Officer Heywood's military service renders him unable to testify in person before the jury. For these reasons and not based on any view of the merits of the case the City chooses not to prosecute at this time.

*City of Columbia v. McCoy*, Ticket No. 13586EW, Hr'g Tr. 2, May 20, 2010, available at ECF No. 202-7.

In response, Plaintiff contends that the totality of the circumstances surrounding the dismissal of the criminal proceeding shows that the charges were dismissed in Plaintiff's favor. Pl.'s Opp'n 26, ECF No. 212. He argues questions of fact exist regarding whether Defendants acted with malice. *Id.* at 10-12. Plaintiff argues that the video evidence strongly suggests that the officers fabricated the incident report to justify the arrest and the officers refusal to testify against Plaintiff for fear of self-incrimination "either impl[ies] or is consistent with [Plaintiff's innocence." Pl.'s Opp'n 26, ECF No. 212. Plaintiff also argues that Defendant Heywood's inability to attend the criminal prosecution was irrelevant because the special prosecutor had not planned to call any of the Officer Defendants to testify. Plaintiff further avers that the special prosecutor researched how to *nolle prosequi* Plaintiff's charges in a manner that would limit the City's civil liability. Pl.'s Opp'n 36-37, ECF No. 212.

Viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that a question of material fact exists as to whether the dismissal of Plaintiff's charges was under circumstances that imply or are consistent with his innocence. Therefore, the undersigned recommends that the Officer Defendants' Motion for Summary judgment on Plaintiff's malicious prosecution claim be *denied* on this ground.

Addressing the Officer Defendants' arguments concerning elements number four and five—malice in instituting the proceedings and the lack of probable cause—as noted above, there is a question of fact as to whether probable cause existed to arrest Plaintiff. Because the malice element can be met by showing the lack of probable cause supporting an arrest, *see Law*, 629

S.E.2d at 649, the undersigned finds the Officer Defendants are not entitled to summary judgment as to whether Plaintiff can meet these elements of a malicious prosecution claim. Further the record before the court shows that there is a genuine issue of material fact as to whether Plaintiff has suffered damages. Accordingly, it is recommended that the Officer Defendants' Motion as to Plaintiff's malicious prosecution claim against them in their individual capacities be *denied*. [24]

> 3. Defendants' Motions for Summary Judgment as to False Imprisonment Claim

False imprisonment is "deprivation of a person's liberty without justification[,]" *Caldwell v. K-Mart Corp.*, 410 S.E.2d 21, 23 (S.C. App. 1991), and cannot be maintained when the plaintiff was arrested by lawful authority. *Jones v. City of Columbia*, 389 S.E.2d 662 (S.C. 1990). In making such a determination, the "fundamental issue [] is whether there was 'probable cause' to make the arrest. *Wortman v. City of Spartanburg*, 425 S.E.2d 18, 20 (S.C. 1992).

Here, the City and the Officer Defendants argue Plaintiff has not demonstrated a lack of probable cause, and that such failure is fatal to his claim for false imprisonment. City's Mem. 42, ECF No. 202; Officer Defs.' Mem. 29-30, ECF No. 203-1. As discussed above, the undersigned recommends finding an issue of fact as to whether there was probable cause to arrest Plaintiff. Accordingly, the undersigned recommends the Motion of the City and Officer Defendants in their individual capacities as to Plaintiff's claim of false imprisonment be *denied*.

---

[24] The City also argues it is entitled to judgment as a matter of law on the malicious prosecution cause of action because Plaintiff cannot demonstrate the proceedings against him were terminated in his favor, making him unable to satisfy the third element of the tort, City's Mem. 40-42, ECF No. 202, and because Plaintiff has not demonstrated he was arrested without probable cause, *id.* at 42. Because the undersigned recommends summary judgment for the City on the malicious prosecution claim based on S.C. Code Ann. § 15-78-60(23), it does not specifically focus on the City's other arguments as to this cause of action. If, however, the court determines the SCTCA protections do not apply to the malicious prosecution claim against the City, the analysis of the claims against the Officer Defendants would apply.

4.  Defendants' Motion for Summary Judgment as to Assault and Battery Claim

Plaintiff also sues the City and the Officer Defendants for assault and battery, claiming "Defendants inflicted offensive and forcible contact on the person of [Plaintiff] by shoving and grabbing him and thereafter placing him in handcuffs in their efforts to unlawfully detain and arrest [him]." Am. Compl. ¶ 87, ECF No. 30 at 15. The City and Officer Defendants argue they are entitled to summary judgment because their arrest of Plaintiff was lawful, therefore no cause of action for assault and battery is available. City's Mem. 42-43, ECF No. 202; Officer Defs.' Mem. 30-31, ECF No. 203-1.

South Carolina law provides that "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Jones v. Winn-Dixie Greenville, Inc.*, 456 S.E.2d 429, 432 (S.C. Ct. App. 1995) (citation omitted). Further, a law enforcement officer who uses reasonable force in effecting a *lawful* arrest is not liable for assault or battery. *See Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995).

Here, as discussed above, the undersigned is of the opinion that questions of fact exist regarding whether there was probable cause to arrest Plaintiff. Accordingly, the undersigned recommends the Motion of the City and the Officer Defendants in their individual capacities be *denied* as to Plaintiff's assault and battery claim.

D.  Punitive Damages

The Officer Defendants contend that Plaintiff's claims for punitive damages pursuant to his state tort law claims are clearly barred by the SCTCA and therefore should be dismissed as a matter of law. Officer Defs.' Mem. 23, ECF No. 203-1.  Plaintiff agrees that punitive damages are excluded under the SCTCA, but argues that he can still recover punitive damages from the Officer Defendants in their individual capacities. Pl.'s Opp'n 34, ECF No. 212.  As noted above,

47

Plaintiff has offered sufficient evidence to create an issue of fact as to whether the Officer Defendants' actions constituted malice or intent to harm or otherwise fall outside the scope of acts protected by the SCTCA. Accordingly, the undersigned recommends that the Motion of the Officer Defendants in their individual capacities be *denied* as to Plaintiff's prayer for punitive damages.

## V. Conclusion

For the foregoing reasons, the undersigned recommends the following:

a) Plaintiff's Motion for Partial Summary Judgment On Constitutionality of Ordinance, ECF No. 201, be *denied*;

b) City's Motion for Judgment on the Pleadings and for Summary Judgment, ECF No. 202,
   a. be *granted* as to finding Ordinance is not unconstitutionally overbroad or vague on its face;
   b. be *denied* as to finding entitlement to judgment as a matter of law that Ordinance was not unconstitutionally applied to Plaintiff (to be further considered in conjunction with Plaintiff's § 1983 cause of action);
   c. be *denied* as to sufficiency of Plaintiff's pleading his § 1983 cause of action;
   d. be *granted* as to Plaintiff's § 1983 cause of action;
   e. be *denied* as to applicability of South Carolina Tort Claims Act to all of Plaintiff's state-law causes of action; be *granted* as to Plaintiff's cause of action for malicious prosecution; be *denied* as to Plaintiff's causes of action for false imprisonment and assault and battery;

c) Officer Defendants' Motion for Summary Judgment, ECF No. 203,
   a. be *denied* to extent Plaintiff's as-applied constitutional challenge to Ordinance applies to Officer Defendants (to be further considered in conjunction with Plaintiff's § 1983 cause of action);
   b. be *denied* as to whether Plaintiff has established a lack of probable cause as to Plaintiff's § 1983 cause of action and as to whether Officer Defendants are entitled to qualified immunity defense;
   c. be *denied* as to applicability of South Carolina Tort Claims Act;
   d. be *denied* as to Plaintiff's causes of action for malicious prosecution, false imprisonment, and assault and battery; and
   e. be *denied* as to Plaintiff's entitlement to punitive damages.

IT IS SO RECOMMENDED.

January 16, 2013                                    Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**