IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jonathan David McCoy, | C/A No. 5:10-cv-00132-JFA |
| Plaintiff, | |
| vs. | |
| City of Columbia, John K. Passmore, James Heywood, and Amanda H. Long, | **ORDER** |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Jonathan David McCoy (McCoy) brings this action against the above-captioned defendants pursuant to 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights which allegedly occurred during his arrest pursuant to City of Columbia Municipal Ordinance Section 10-34(b) (the Ordinance) on October 17, 2009. McCoy additionally seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, that the Ordinance is unconstitutional on its face or as applied to him. Finally, McCoy brings tort claims against these defendants under South Carolina law for malicious prosecution, false imprisonment, and assault and battery.

This matter is before the court on the parties' several dispositive motions. In particular, McCoy has moved for partial summary judgment on the constitutionality of the Ordinance and, to the extent the Ordinance is unconstitutional, on his cause of action under § 1983. *See* ECF No. 201. Defendant City of Columbia (the City) has moved for judgment on the pleadings as to McCoy's § 1983 cause of action. The City has also moved for summary judgment on all of McCoy's claims. *See* ECF Nos. 200, 202. Defendants John K. Passmore, James Heywood, and

1

Amanda H. Long (the Officer Defendants) have moved for summary judgment on McCoy's § 1983 and state law tort claims against them. *See* ECF No. 203.

The Magistrate Judge assigned to this matter heard argument on the parties' motions on December 11, 2012 and has prepared a Report and Recommendation.[1]  *See* ECF No. 220.  Her Report and Recommendation sets forth in detail the relevant facts and standards of review in this matter, and the court incorporates such without a recitation.  In general, the Magistrate Judge recommended the following disposition of the parties' motions.  First, the Magistrate Judge recommended that the court deny McCoy's motion for partial summary judgment on the constitutionality of the Ordinance.  Next, regarding the City's motions, the Magistrate Judge recommended the court deny the City's motion for judgment on the pleadings and grant, in part, and deny, in part, the City's motion for summary judgment.  Finally, the Magistrate Judge recommended that the court deny the Officer Defendants' motion for summary judgment.  The parties timely filed extensive objections to the Report and Recommendation, *see* ECF Nos. 226, 228–29, and this court heard argument on the parties' objections on February 12, 2013.  Thus, this matter is ripe for review.

After detailed consideration of the Report and Recommendation, the briefs of the parties, and the arguments held on the parties' objections, the court modifies the Report and Recommendation as set forth below.  Additionally, the court adopts those portions of the Report and Recommendation which are not inconsistent with this Order.

## II. DISCUSSION

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976).  The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made and the court may accept, reject, or modify, in whole or in part, the recommendation of

A.  Constitutionality of the Ordinance

McCoy was arrested pursuant to City of Columbia Ordinance Section 10-34(b), which states: "It shall be unlawful for any person to interfere with or molest a police officer in the lawful discharge of his duties."  Focusing in particular on the phrase "interfere with" in the Ordinance, McCoy asserts that the Ordinance is facially unconstitutional as overly broad and/or vague.  McCoy further asserts that the Ordinance is unconstitutional as applied to him in his arrest.

The Magistrate Judge first considered both the alleged overbreadth and vagueness of the Ordinance, and she recommended a ruling that the Ordinance is neither overly broad nor unduly vague in violation of the Constitution.  Thus, with respect to McCoy's facial challenge, the Magistrate Judge recommended that the court deny McCoy's motion for summary judgment and grant the City's motion for summary judgment.  The Magistrate Judge then reviewed McCoy's as-applied challenge and found that genuine issues of material fact preclude entry of summary judgment in favor of any of the parties.[2]

The legal standards for analyzing whether the Ordinance is unconstitutionally overbroad or vague are set forth in detail in the Report and Recommendation, and the court only briefly summarizes them here.  First, regarding overbreadth, "[o]nly a statute which is substantially overbroad may be invalidated on its face."  *City of Houston v. Hill*, 482 U.S. 451, 458 (1987) (citing *New York v. Ferber*, 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973)).  Thus, the Supreme Court has "never held that a statute should be held invalid on its

---

the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).
[2] McCoy's motion for summary judgment on the constitutionality of the Ordinance, whether facially or as-applied, is not directed at the Officer Defendants.  Noting that there appears to have been some confusion among the parties as to whether it was, the Magistrate Judge found that, to the extent it was, it should be denied.

face merely because it is possible to conceive of a single impermissible application." *Id.* (quoting *Broadrick*, 413 U.S. at 630) (internal quotation marks omitted). The requirement that the overbreadth be substantial "stems from the underlying justification for the overbreadth exception itself—the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court." *City Council of Los Angeles v. Vincent*, 466 U.S. 789, 802 (1984). However, it is well-settled that the degree of permissible overbreadth depends on the nature of the statute or ordinance at issue. For example, criminal statutes, like the one at issue in this case, "must be scrutinized with particular care." *City of Houston*, 482 U.S. at 459 (citing *Winters v. New York*, 333 U.S. 507, 515 (1948)). Thus, criminal statutes which "make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.*

Next, a statute is impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56–57 (1999)). The Supreme Court has explained that

> [v]ague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. . . . .

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (internal footnote call numbers omitted). As with challenges based on overbreadth, in evaluating vagueness challenges, the

4

Court has "expressed a greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Village of Hoffman Estates*, 455 U.S. at 499 (citing *Winters*, 333 U.S. at 515). However, "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id.* Finally, "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Id.* Thus, although it is possible for a law which "does not reach constitutionally protected conduct" to be declared facially unduly vague, "[i]f, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Id.* at 497, 499.

In reviewing "a facial challenge to the overbreadth and vagueness of a law," this court must first "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Id.* at 494. Accordingly, the court will now examine the extent to which the Ordinance reaches constitutionally protected conduct. At the outset, it is important to understand that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston*, 482 U.S. at 461. Indeed, the "freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462–63. Freedom of speech is protected against censorship and punishment precisely because "[s]peech is often provocative and challenging," and "[i]t may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949). Speech directed at police officers may only be censored where it is "shown likely to produce a clear and present danger of a serious

5

substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* Notably, even the exception for fighting words "might require a narrower application in cases involving words addressed to a police officer, because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to fighting words." *City of Houston*, 482 U.S. at 462 (internal quotation marks omitted). Because "the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups," "[t]here is no room under our Constitution for a more restrictive view." *Terminiello*, 337 U.S. at 4–5.

In *City of Houston v. Hill*, the Supreme Court struck down as unconstitutionally overbroad a City of Houston ordinance which was similar to the Ordinance at issue in this case. The enforceable portion[3] of the City of Houston's ordinance, entitled "Assaulting or interfering with policemen," made it "unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." *City of Houston*, 482 U.S. at 461. Unlike the unenforceable language in the ordinance making it unlawful to "assault" or "strike" a police officer, the enforceable portion "deal[t] not with core criminal conduct, but with speech." *Id.* at 460. Noting in particular the phrase "in any manner . . . interrupt[s] any policeman," the Supreme Court stated that the ordinance swept broadly and was not "narrowly tailored to prohibit only disorderly conduct or fighting words." *Id.* at 462–63, 465.

Additionally, although the City of Houston argued that imprecision was inevitable in such statutes, the Court disagreed. The Court expressed sympathy with "the difficulties of drafting precise laws," but it noted that it has "repeatedly invalidated laws that provide the police

---

[3] The Texas Penal Code preempted another portion of the City of Houston's ordinance which made it unlawful to "assault" or "strike" any policeman in the execution of his duty. *Id.*

with unfettered discretion to arrest individuals for words or conduct that annoy or offend them." *Id.* at 465. Municipalities are not powerless to punish *physical* obstruction of police action, but they must do so through statutes which are narrowly-tailored. *Id.* at 462 n.11. For example, the majority agreed that "a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection." *Id.* (internal quotation marks omitted). To do so, however, the majority explained that the municipality must properly tailor its statute, such as by enacting "a disorderly conduct statute that makes it unlawful to fail to disperse in response to a valid police order or to create a traffic hazard." *Id.* Likewise, in response to the example of a person who runs beside an officer who is pursuing a felon in a public street while at the same time shouting at the officer, the Court noted that the concern "is not simply contentious speech, but rather the possibility that by shouting and running beside the officer the person may physically obstruct the officer's investigation." *Id.* Again, to punish such a person, a municipality must tailor a statute to prohibit "individuals from physically obstructing an officer's investigation" rather than merely enacting "a broad statute aimed at speech." *Id.* In contrast to the narrowly-tailored statutes the Court suggested in these examples, the City of Houston ordinance was "susceptible of regular application to protected expression" because only those individuals "chosen by the police in their unguided discretion" are arrested. *Id.* at 466–67.

Based on the plain language of the Ordinance, the Supreme Court's decision in *City of Houston*,[4] and South Carolina cases interpreting the language of similar ordinances, the court

---

[4] As indicated at oral argument, were this court writing on a clean slate, it might well have determined that the free speech protections of the First Amendment do not extend to bystanders who reproach, or even curse at, officers making an arrest. The Supreme Court has spoken, however, and this court is bound to follow its holdings regardless of the undersigned's personal views on the subject.

finds that the Ordinance in this case covers protected speech.  In *City of Houston*, the Supreme Court held that the language "in any manner . . . oppose, molest, abuse or interrupt" plainly dealt with speech.  *Id.* at 460–61.  In other words, though the City of Houston's ordinance did not specifically proscribe speech, it prohibited interruption "in any manner," so it must have prohibited both physical and verbal interruptions.  Similarly, that ordinance must have prohibited both physical and verbal opposition, molestation, and abuse.

Like the City of Houston's ordinance, the Ordinance in this case does not specifically proscribe speech.  However, of the four terms proscribing certain conduct in the City of Houston's ordinance, the Ordinance here only includes the term "molest."  Additionally, the Ordinance does not include the phrase "in any manner."  Thus, the question is whether the language "interfere with or molest," by itself, is clearly limited to *physical* interference or molestation.

The court finds it is not.  The ordinary meanings of the terms "interfere" and "molest" are not limited to physical conduct.  As the City conceded during argument on the pending motions, a person can interfere verbally.  To take but one example the Supreme Court used, it would surely be interference for a person to "to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection." *Id.* at 462 n.11.  If the same person were to verbally annoy or harass the officer, that conduct surely falls within the ordinary definition of the term molest.  Indeed, there are numerous examples in which a person's speech could interfere with or molest a police officer in the lawful discharge of the officer's duties.  Because the Ordinance does not include any limitation on the types of interference or molestation proscribed, the court finds that the Ordinance covers protected speech.

8

Importantly, decisions of the Supreme Court of South Carolina have construed the term "interfere" and its synonyms broadly, and thus these decisions support the court's determination. First, *City of Charleston v. Mitchell*, 123 S.E.2d 512 (S.C. 1961), *rev'd on other grounds*, 378 U.S. 551 (1964), involved the arrest and conviction of twenty-four African-American high school students who refused to leave the lunch counter of S.H. Kress & Co. after being ordered to do so.  Among other violations, the students were convicted of violating Section 33-39 of the Code of the City of Charleston, which made it unlawful "for any person to assault, resist, hinder, oppose, molest, or interfere with any employee of the . . . police department of the city, in discharge of official duties."  *Id.* at 520.  The evidence showed that when the manager of the store asked the students to leave, they "did 'nothing' and that when the Chief of Police requested them to leave the store, they did 'nothing', but when he told them that they were under arrest, the [students] 'all stood up'."  *Id.*  The students "were not discourteous, did not disobey any order when they were placed under arrest, and they were not loud or boisterous in any way, and the [students] left the store in company of the officers without causing any trouble."  *Id.*  The trial court found that the students had interfered with the Chief of Police in violation of the Charleston City ordinance, and thus the question for the South Carolina Supreme Court was whether "the act of the appellants in doing 'nothing' and refusing to leave the premises in question, after being ordered and requested to do so, amount[ed] to an unlawful interference by them of the said Chief of Police."  *Id.*

The South Carolina Supreme Court reversed, holding that "the conduct of appellants in refusing obedience to the request of the Chief of Police of the City of Charleston was *merely inaction* on their part and did not constitute interference with said officer in the discharge of his official duty."  *Id.* at 521 (emphasis added).  In determining that mere inaction did not constitute

9

interference, the supreme court considered various definitions of the term "interfere" provided in both Corpus Juris Secundum and in *State v. Estes*, 117 S.E. 581 (N.C. 1923), a case involving a statute which prohibited interfering with an officer of the state board of health.  For example, among other definitions, both authorities stated that interfere can mean "to do something which hinders or prevents or tends to prevent the performance of legal duty."  *Mitchell*, 123 S.E.2d at 521.  However, no definition the supreme court considered, including the one just mentioned, limited interference to physical conduct.  And notably, as discussed in more detail below, the *Estes* case specifically stated that a defendant could be guilty of interference by words alone. *Estes*, 117 S.E. at 582–83.

Additionally, in *State v. Etherage*, 290 S.E.2d 413 (S.C. 1982), the South Carolina Supreme Court found that the phrase "hinder, prevent, or obstruct any officer" in a state statute covered speech.  More specifically, in *Etherage* the defendant had been arrested and convicted for violating S.C. CODE ANN. § 16-5-50, which makes it unlawful to, among other things, "hinder, prevent, or obstruct any officer or other person charged with the execution of any warrant or other process issued under the provisions of this chapter in arresting any person for whose apprehension such warrant or other process may have been issued."  In this case, a deputy sheriff had been in the process of arresting the defendant's brother for driving without a license, when the defendant, a passenger in the car, began cursing and threatening the officer.  *Id.* at 413–14.  The supreme court stated that the "deputy testified that although no physical contact was made, appellant did interfere with his interview of the subject of the arrest."  *Id.* at 414.  On appeal, the defendant argued that the abusive language he directed at the officer was not sufficient to support his conviction.  *Id.*

10

The South Carolina Supreme Court disagreed. First, citing *Mitchell*, it noted that "[w]here defendants are not discourteous, loud or boisterous in any way, no violation of a city ordinance containing language similar to Section 16-5-50 has been found." *Id.* Additionally, the supreme court noted that *Mitchell* cited *Estes* with approval and that, "[u]nder *Estes*, an officer can be hindered by language intended to put him in fear, intimidate or impede him in the discharge of his official duties." *Id.* Accordingly, the supreme court ruled that the defendant's cursing, name-calling, and threats to the deputy sheriff during the course of the arrest of the defendant's brother constituted "obstruction or hindrance." *Id.*

*Etherage* predated the Court's opinion in *City of Houston*, and the constitutionality of the state statute was not an issue in *Etherage*. This court expresses no opinion thereon. Instead, the court relies on *Etherage* only for the proposition that statutes which use words like "hinder," "prevent," and "obstruct" with no limiting definition can apply to speech directed at a police officer. If these words can cover speech, in the court's opinion so can the words "interfere" and "molest."

The First Amendment protects a significant amount of speech directed at police officers, and as explained above the Ordinance clearly proscribes at least some such speech. Whether the amount of protected speech the Ordinance covers is "substantial" is slightly less clear, however. As noted above, the City of Houston's ordinance included the phrase "in any manner," whereas the Ordinance in this case does not. It is arguable, then, that the City of Houston's ordinance casts a wider net than the City of Columbia's does here. On the other hand, like the City of Houston's ordinance, the Ordinance here is not limited to disorderly conduct or fighting words and "effectively grants police the discretion to make arrests selectively on the basis of the content of the speech" it does cover. *City of Houston*, 482 U.S. at 465 & n.15. Also, the

Columbia City Council quite easily could have diminished the breadth of the Ordinance by including the adverb "physically" before the phrase "interfere with or molest," but it chose not to do so.  Notably, the Supreme Court offered the same advice regarding narrowly tailoring a statute so that the statute could constitutionally punish a person who runs beside an officer who is pursuing a felon in a public street while at the same time shouting at the officer.  *See id.* at 462 n.11.  Hence, whether the Ordinance is unconstitutional as substantially overbroad is a close question.

Importantly, however, whether the Ordinance is unconstitutionally vague is not. Applying the stricter test for vagueness that is required when a statute implicates protected speech, *Village of Hoffman Estates*, 455 U.S. at 499, the court finds that the Ordinance both "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and "authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill*, 530 U.S. at 732 (citing *Morales*, 527 U.S. at 56–57).  Therefore, it is not necessary for the court to decide the overbreadth issue.

Relevant to the court's vagueness analysis the South Carolina Supreme Court's decision in *Town of Honea Path v. Flynn*, 176 S.E.2d 564 (S.C. 1970).  In *Flynn*, the supreme court struck down as unconstitutionally vague an ordinance which made it unlawful "for any person to assault, resist, abuse or *in any manner, by word or act, interfere with* a police officer or any other officer or employee of the City in the discharge of his duty . . . ."  *Id.* at 566 (emphasis added). The supreme court first reiterated that laws must place persons on notice as to the precise conduct proscribed, stating that "[t]he vice of unconstitutional vagueness becomes aggravated where a statute operates to inhibit the exercise of individual freedoms effectively guaranteed by the State and Federal Constitutions."  *Id.* at 567.  The *Flynn* court then explained that because the

12

terms "abuse" and "interfere" are not defined, citizens cannot determine what conduct is prohibited.  For example, "[o]ne's view as to what [the term 'abuse'] was intended to mean or connote would likely vary considerably, depending on whether the viewpoint was that of the alleged abuser or that of the person allegedly abused."  *Id.*  Also, the ordinance "makes it a penal offense for one to interfere with a police officer 'in any manner, by word or act,'" but "just what kind of word or words would amount to interference with an officer is not at all indicated."  *Id.*  Moreover, the ordinance would "allow police officers . . . the discretion to arrest and prosecute those whom they feel have made inappropriate remarks."  *Id.*

While acknowledging that the Columbia City Council did not define any of the terms in this Ordinance, the City attempts to distinguish it from the ordinance at issue in *Flynn*.  It argues that persons of ordinary intelligence can understand what conduct the Ordinance prohibits by merely applying the ordinary and everyday definitions of the term "interfere."  In this regard, the court notes that the City advocated both "obstruction" and "hindrance," among other terms, as a definition of the term "interfere."  *See* ECF No. 202 at 14.  The City contends that the plain terms of the Ordinance pertain only to physical acts, *id.* at 16, but as noted above the *Etherage* court disagreed; it found that a person could obstruct or hinder an officer verbally.  That the City and the Supreme Court of South Carolina apparently disagree on the ordinary meaning of these terms illustrates the imprecision of the Ordinance.

The City also emphasizes that the Ordinance here lacks the phrase "in any manner," which appeared in the City of Houston's ordinance, and the phrase "in any manner, by word or act," which appeared in the Town of Honea Path's ordinance.  It is not apparent to this court, however, how the *absence* of these phrases makes the Ordinance *less* vague.  The ordinances at issue in *City of Houston* and *Flynn* are arguably more precise than the Ordinance here.  By

13

including an adverbial phrase, they explain the type (or at least the scope) of opposition, molestation, abuse, interruption and interference that is prohibited. This is not to say that including the above phrases made those ordinances less broad, but that is not the issue here. Although the Town of Honea Path clearly specified that its ordinance prohibited verbal acts, a person of ordinary intelligence can only speculate as to what the Columbia City Council intended to prohibit with its Ordinance. *See Flynn*, 176 S.E.2d at 566 ("The underlying principle is that all are entitled to be informed as to what the state commands or forbids and no one should be required, at peril of life, liberty or property, to speculate as to the meaning of penal statutes.") (internal quotation marks omitted). Consequently, although the Ordinance may arguably sweep less broadly because it lacks a variation of the phrase "in any manner," it is certainly not more clear.

The Ordinance is not readily intelligible for several other reasons. In particular, although the Supreme Court has noted that "an ambiguous term may be given more precise content by the neighboring words with which it is associated," *United States v. Stevens*, 559 U.S. 460 (2010) (internal quotation marks omitted), here, the Ordinance includes only two terms—interfere and molest. In contrast, many of the statutes and ordinances at issue in the nonbinding authority the City cited include series of terms having related meanings and thus provide additional context for the person of ordinary intelligence to understand what conduct is prohibited. *See, e.g.*, *Newton v. City of Muskogee*, 2007 WL 4150946, at *3 (D. Okla. 2007) (statute making it "unlawful to resist, oppose, or assault, prevent, fail to cooperate with, or in any way interfere with a police officer . . . while the officer . . . is discharging or attempting to discharge his official duties"); *Dickens v. United States*, 19 A.3d 321, 322 (D.C. Ct. App. 2011) (statute providing that whoever "without justifiable and excusable cause, assaults, resists, opposes,

14

impedes, intimidates, or interferes with a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties" is guilty of a misdemeanor); *State v. Williams*, 534 A.2d 230, 231 (Conn. 1987) (statute providing that a "person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer . . . in the performance of his duties"). Further, the Ordinance lacks a scienter requirement, something the Supreme Court noted could mitigate a statute's vagueness. *See Hill*, 530 U.S. at 732; *Village of Hoffman Estates*, 455 U.S. at 499; *cf. Dickens*, 19 A.3d at 322 (upholding as constitutional statute which required absence of "justifiable and excusable cause"); *State v. Krawsky*, 426 N.W.2d 875, 876 (Minn. 1988) (upholding as constitutional statute which required that a person "intentionally obstruct[], hinder[] or prevent[] the lawful execution of any legal process").

Still, the City argues that local legislators should not be held to "unattainable" drafting standards. *See* ECF No. 202 at 14. As explained above, the court acknowledges that it may in some cases be difficult to draft precise statutes. *See City of Houston*, 482 U.S. at 465. However, requiring the Columbia City Council to have more narrowly tailored its Ordinance by, for example, adding the adverb "physically" is quite attainable. And if requiring municipalities to narrowly tailor their ordinances so that their citizens can know the precise conduct prohibited causes "some constitutionally unprotected speech [to] go unpunished, that is a price worth paying to preserve the vitality of the First Amendment." *Id.* at 462 n.11.

Furthermore, like the ordinance at issue in *Flynn*, the Ordinance here includes no objective standard to guide the police in determining that conduct constitutes unlawful interference or molestation. In this regard, the City only argues that the Ordinance does not provide officers with unfettered discretion in making arrests because the Ordinance applies only

15

to physical acts. As explained in detail above, the Ordinance is broad enough to cover protected speech, and by failing to include a standard by which citizens and police officers can determine whether interference or molestation is unlawful, the statute at the very least authorizes, if not encourages, discriminatory enforcement. For example, conviction under this Ordinance could rest "upon nothing more than mere words uttered by [a person] which were not pleasing to the local police officers who obviously did not like anyone questioning or challenging their authority." *Flynn*, 176 S.E.2d at 567–68; *see also City of Houston*, 482 U.S. at 454 n.2 (noting that "there is a 'possibility of abuse' where convictions under an ordinance frequently turn on the resolution of a 'direct conflict of testimony as to "who said what"'" (quoting *Lewis v. City of New Orleans*, 415 U.S. 130, 135 n.94 (1974) (Powell, J., concurring))). Finally, the court notes that this is not "speculation about possible vagueness in hypothetical situations not before the [c]ourt." *Hill*, 530 U.S. at 733. Indeed, McCoy has alleged that the Officer Defendants arrested him based solely on speech, and thus whether the words interfere and molest in the Ordinance are so vague as to permit police officers to arrest a person based on speech alone goes to the heart of the very situation before this court. Moreover, because the Columbia City Council chose to leave the terms of the Ordinance undefined, it is not clear whether the Columbia City Council intended the Ordinance to apply to physical conduct alone, and the court cannot say that the Ordinance is valid "in the vast majority of its intended applications." *Id.* (citation omitted).

Based on the above, the Ordinance is facially unconstitutional as unduly vague. McCoy's motion for summary judgment on this issue is granted, and the City's motion is denied. However, as noted above, McCoy has also challenged the Ordinance as unconstitutional as applied to him in this case. Initially, the court notes that the fact that the Ordinance is facially unconstitutional as unduly vague does not mean that it was unconstitutionally applied to McCoy

16

in this case.  *See, e.g.*, *Broadrick*, 413 U.S. at 611–12 (explaining that, where a statute covers speech protected under the First Amendment, "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression").  Nonetheless, as discussed in more detail below, it might have been.

Importantly, though, as the Magistrate Judge recognized, McCoy's as-applied challenge is coextensive with one aspect of McCoy's claims under § 1983.  To prove that either the City or the Officer Defendants is liable under § 1983, McCoy must show that his arrest violated either his First or Fourth Amendment rights.  And to prove that that the Ordinance was unconstitutionally applied to him, McCoy would need to show that he was arrested based on his speech in violation of his First Amendment rights.  Accordingly, the court believes it should discuss McCoy's as-applied challenge below in the context of the City's and the Officer Defendants' motions for summary judgment on his § 1983 claims.

### B.  McCoy's § 1983 Claims

To prevail on a claim under § 1983, McCoy must show that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) that a person acting under color of state law committed the deprivation.  *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003); *see West v. Atkins*, 487 U.S. 42, 48 (1988).  Local governments are not liable under § 1983 based on the theory of respondeat superior.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  Rather, "[l]ocal governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" when an alleged unconstitutional action "implements or

17

executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. Further, "local governments, like every other § 1983 'person,' . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91.

### 1. The Officer Defendants' Motion for Summary Judgment

As noted above, McCoy has alleged that his arrest violated his rights under both the First and Fourth Amendments. The Officer Defendants have moved for summary judgment on McCoy's § 1983 claims, asserting that the existence of probable cause to arrest McCoy negates any Fourth Amendment violation and that the record fails to demonstrate any evidence of retaliatory arrest in violation of the First Amendment. The Officer Defendants further assert that, even if they are found to have violated McCoy's constitutional rights, they are nonetheless entitled to qualified immunity.

The Magistrate Judge found that genuine issues of material fact exist as to whether the Officer Defendants possessed probable cause to arrest McCoy for any of several criminal offenses, including violation of the Ordinance; violation of S.C. CODE ANN. § 16-17-530 and City of Columbia Ordinance § 14-98 (both of which generally prohibit public intoxication); and assault and battery. Because she found that genuine issues of material fact exist as to whether the Officer Defendants actually violated McCoy's clearly-established constitutional rights, the Magistrate Judge determined that the Officer Defendants were not entitled to qualified immunity.

Accordingly, the Magistrate Judge recommended that the court deny the Officer Defendants' motion.[5]

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts considering whether to dismiss a complaint based on qualified immunity should consider both "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right" and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 232 (citations omitted). The court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 236.

Here, the court believes it should address the first prong first because the Officer Defendants have asserted that they possessed probable cause to arrest McCoy. In particular, although the Officer Defendants treated the issues of probable cause and qualified immunity separately, if the Officer Defendants possessed probable cause to arrest McCoy, their arrest did not violate McCoy's rights under the Fourth Amendment. Thus, question of probable cause is in fact subsumed within the first prong of qualified immunity analysis in this case, to which the court now turns.

---

[5] The Magistrate Judge also considered Officer Defendant Heywood's and Officer Defendant Passmore's arguments that they should each be granted summary judgment because they were not personally involved in the arrest. The Magistrate Judge recommended that the court deny these motions because there is evidence in the record that these officers were "remote actors" for the purposes of § 1983 liability under the Fourth Circuit's decision in *Cook v. James*, 100 F. App'x 178, 180–81 (4th Cir. 2004). As discussed in more detail below, it is not necessary for the court to consider these arguments to dispose of the Officer Defendants' motion for summary judgment. Accordingly, the court rejects this portion of the Report and Recommendation.

19

If McCoy has not shown violations of either his First or Fourth Amendment rights, the Officer Defendants are entitled to qualified immunity. The following discussion of whether McCoy has shown a violation of his constitutional rights analyzes the alleged violations in reverse order, taking the Fourth Amendment first. This is because the court's analysis of probable cause may bear upon the question of a First Amendment violation, as discussed in more detail below.

Warrantless arrests like the one at issue in this case are "reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause to justify an arrest "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Importantly, the "validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. Moreover, the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153; *see Jackson v. City of Abbeville*, 623 S.E.2d 656, 660 (S.C. Ct. App. 2005) (noting that, in South Carolina, "it is permissible to rely on an uncharged offense to establish probable cause"). "'Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as shown to the officer, and the contours of the offense thought to be committed by that conduct.'" *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). The court's inquiry is based on the

information that was reasonably available to the officer(s) at the time of the arrest and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett*, 973 F.2d at 312.

The Supreme Court's opinion in *Michigan v. DeFillippo* is instructive with respect to the question of probable cause in this case. In *DeFillippo*, an officer arrested the respondent pursuant to a Detroit City ordinance which permitted a police officer to "stop and question an individual if he has reasonable cause to believe that the individual's behavior warrants further investigation for criminal activity" and which made it unlawful for "any person stopped pursuant thereto to refuse to identify himself and produce evidence of his identity." *DeFillippo*, 443 U.S. at 33. The officer had received a report of two individuals who appeared to be intoxicated in an alley at approximately 10 p.m. *Id.* When the officer found the respondent, he was with a young woman who was "in the process of lowering her slacks," and she told the officer "she was about to relieve herself." *Id.* The respondent failed to identify himself and was taken into custody. *Id.* at 33–34. During a subsequent search, the officer found drugs on the respondent's person and charged the respondent with possession of a controlled substance. *Id.* at 34. The trial court denied a motion by respondent to suppress the evidence of a controlled substance found during the search, but on appeal the Michigan Court of Appeals reversed, holding that the Detroit ordinance was unconstitutionally vague. *Id.* Additionally, the court of appeals held that because respondent was arrested pursuant to that ordinance, both the arrest and the search were invalid. *Id.*

The Supreme Court reversed on the latter issue, holding that "an arrest made in good-faith reliance on an ordinance, which at the time had not been declared unconstitutional, is valid regardless of a subsequent judicial determination of its unconstitutionality." *DeFillippo*, 443

U.S. at 33, 36–38.  The Court explained that when the officer arrested the respondent, "he had abundant probable cause to believe that respondent's conduct violated the terms of the ordinance."  *Id.* at 36.  For example, respondent's "presence with a woman, in the circumstances described, in an alley at 10 p.m. was clearly, in the words of the ordinance, 'behavior . . . warrant[ing] further investigation,'" and respondent gave "inconsistent and evasive responses to the officer's request that he identify himself."  *Id.* at 37.  At the time of the arrest, "there was no controlling precedent that [the Detroit] ordinance was or was not constitutional, and hence the conduct observed violated the presumptively valid ordinance."  *Id.*  The Court noted that a "prudent officer, in the course of determining whether respondent had committed an offense under all the circumstances shown by this record, should not have been required to anticipate that a court would later hold the ordinance unconstitutional."  *Id.* at 37–38.  Unless "a law [is] so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws," the "enactment of [the] law forecloses speculation by enforcement officers concerning its constitutionality."  *Id.* at 38.  Accordingly, the arrest was valid despite the Detroit ordinance being declared unconstitutional, and the Supreme Court held that the evidence discovered during the search should not have been suppressed.  *Id.* at 40.  Therefore, the fact that this court has declared the Ordinance to be facially unconstitutional does not render McCoy's arrest invalid if the Officer Defendants possessed probable cause to arrest him.

In reviewing the parties' briefs, the Report and Recommendation, and the parties' objections thereto, it appears to the court that the parties dispute, in varying degrees, the events which led up to and which occurred during and after the Officer Defendants arrested McCoy.  By way of example, the parties dispute whether McCoy was intoxicated, whether McCoy touched Officer Defendant Long, what was said between McCoy and the Officer Defendants during and

immediately following the arrest, and whether the incident report is an accurate representation of the events which transpired. However, as discussed below, these disputed facts are not necessary to resolve the Officer Defendants' motion for summary judgment. The "first step in assessing the constitutionality of [the Officer Defendants'] actions is to determine the *relevant* facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (emphasis added). The "'mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Id.* at 380 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). The only relevant facts in an analysis of whether probable cause for arrest existed are those facts and circumstances known to the Officer Defendants at the time of McCoy's arrest.

Fortunately for the court, there is a video in the record which captured most of the events in question. The video does not include sound, so the court cannot independently ascertain the exact words exchanged between the Officer Defendants and McCoy. Also, because of the angle at which the video captured the arrest scene, the court cannot ascertain whether McCoy touched Officer Defendant Long, and there is conflicting testimony on this point. However, except for a few seconds during which the bodies of Officer Defendants Passmore and Long are between the camera and McCoy, the video shows in perfect clarity the events which transpired and the circumstances in which they occurred. The video shows the actions of McCoy, McAlister, and the Officer Defendants from several minutes prior to the time the Officer Defendants engaged McAlister and placed him under arrest up to the time Officer Defendants Passmore and Long arrested McCoy. Importantly, *this* undisputed evidence of the facts and circumstances known to the Officer Defendants at the time of McCoy's arrest, along with the other facts on which the

parties agree, is more than sufficient to establish that probable cause existed to arrest McCoy for violating the Ordinance.

As is clearly shown in the video, at approximately 3:45 a.m. on a busy sidewalk in front of several bars, McCoy approached to within an arm's reach of officers attempting to secure an arrestee. McCoy positioned himself in between the officers and their patrol car, where the officers were attempting to move the arrestee. McCoy verbally contested the arrest of the arrestee. The officers pushed McCoy backwards and indicated that he should step away from the arrest scene, but McCoy failed to heed these clear commands. Importantly, the video shows that McCoy's actions forced the officers to divide their attention between securing the arrestee and engaging McCoy. Indeed, because McCoy did not step back from the arrest scene as instructed, two of the officers were eventually required to let go of the arrestee and focus solely on McCoy. The third officer was left to secure the arrestee alone. In the words of the Ordinance, this conduct surely "interfere[d] with or molest[ed]" the officers "in the lawful discharge of [their] duties." Therefore, it was reasonable for the Officer Defendants to believe that McCoy had violated the Ordinance.

And as the Supreme Court explained in *DeFillippo*, McCoy's arrest is still valid even though this court has determined that the Ordinance pursuant to which McCoy was arrested is unconstitutional, at least as long as the Ordinance was not "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *See DeFillippo*, 440 U.S. at 37–38. Based on the discussion of the statute's constitutionality above, the court does not believe that this exception applies to the Ordinance. At the time of McCoy's arrest, "there was no controlling precedent that [the Ordinance] was or was not constitutional, and hence the conduct observed violated the presumptively valid ordinance." *Id.* at 37.

24

Decisions on the constitutionality of similar ordinances often turn on the specific language of the ordinance, the specific facts of each case, and specific state case law interpreting the ordinance or similar laws.  As the City demonstrated in its briefs, a number of decisions on similar (albeit, in this court's view, distinguishable) statutes reach a conclusion that the statutes at issue are constitutional.  Thus, the court finds that the Officer Defendants "should not have been required to anticipate that a court would later hold the [O]rdinance unconstitutional." *Id.* at 37–38.

Because the court finds that probable cause existed to arrest McCoy for violation of the Ordinance, the Officer Defendants did not violate McCoy's Fourth Amendment rights.  Consequently, the court need not determine whether probable cause also existed to arrest McCoy for either public intoxication or assault and battery.  However, to complete the first prong of the qualified immunity analysis, the court must also address whether the Officer Defendants violated McCoy's rights under the First Amendment.  Notably, in light of the fact that this court has determined that the Officer Defendants possessed probable cause to arrest McCoy, it appears the court must first decide whether McCoy may proceed with his First Amendment claim at all.

In this regard, it is conceptually possible that an officer effectuating an otherwise valid arrest (i.e., an arrest supported by probable cause) may be motivated by a desire to *retaliate* against the arrestee's assertion of First Amendment rights.  In other words, merely showing that the Officer Defendants acted with probable cause may not foreclose the possibility of a First Amendment violation.  However, in *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court held that a plaintiff cannot state a claim of retaliatory *prosecution* in violation of the First Amendment if the charges were supported by probable cause.  Although *Hartman* did not decide whether its no-probable-cause requirement extends to retaliatory *arrests*, several federal courts of appeal have subsequently held that it does.  *McCabe v. Parker*, 608 F.3d 1068, 1075 (8th Cir.

25

2010); *Phillips v. Irvin*, 222 Fed. App'x 928, 929 (11th Cir. 2007); *Barnes v. Wright*, 449 F.3d 709, 729 (6th Cir. 2006); *cf. McBeth v. Himes*, 598 F.3d 708, 719 (10th Cir. 2010) (applying the *Hartman* framework in the context of claim based on suspension of business license in retaliation for exercise of First Amendment rights).

Additionally, in *Reichle v. Howards*, 132 S. Ct. 2088 (2012), the Supreme Court held that, as of the time of the plaintiff's arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment. *Id.* at 2095–97. Therefore, the Court reversed the Tenth Circuit's ruling that Secret Service agents were not entitled to qualified immunity. *Id.* at 2093. However, the Court in *Reichle* did not decide whether a plaintiff could pursue a claim for retaliatory arrest where the arrest was based on probable cause. *See id.* at 2096. In the context of a claim for qualified immunity, the Court explained that the "right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause," and the "Court has never held that there is such a right." *Id.* at 2094. Also, although the Supreme Court noted that some aspects of the rationale in *Hartman* for requiring an absence of probable cause in retaliatory prosecution cases could arguably apply to retaliatory arrest cases, not every aspect may. *Id.* at 2095–96. *Hartman*'s rationale was based on the fact that "the presence of probable cause, while not a 'guarantee' that retaliatory motive did not cause the prosecution, still precluded any prima facie inference that retaliatory motive was the but-for cause of the plaintiff's injury." *Id.* at 2095 (citing *Hartman*, 547 U.S. at 265). This was "especially true because . . . retaliatory prosecution claims involve particularly attenuated causation between the defendant's alleged retaliatory animus and the plaintiff's injury." *Id.* (citing *Hartman*, 547 U.S. at 259–61). Thus, "[l]ike retaliatory prosecution cases, evidence of the presence or absence of

26

probable cause for the arrest will be available in virtually every retaliatory arrest case," and "[s]uch evidence could be thought similarly fatal to a plaintiff's claim that animus caused his arrest, given that retaliatory arrest cases also present a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury." *Id.* However, although "the causal connection in retaliatory prosecution cases is attenuated because those cases necessarily involve the animus of one person and the injurious action of another," in "many retaliatory arrest cases, it is the officer bearing the alleged animus who makes the injurious arrest." *Id.* at 2096. Moreover, "in retaliatory prosecution cases, the causal connection between the defendant's animus and the prosecutor's decision is further weakened by the 'presumption of regularity accorded to prosecutorial decisionmaking.'" *Id.* (quoting *Hartman*, 547 U.S. at 263). Thus, the above decisions provide an argument, but do not require, that McCoy must show an absence of probable cause in order to proceed with his claim of retaliatory arrest.

The Court of Appeals for the Fourth Circuit has not squarely addressed this issue. Recently, however, the Fourth Circuit did address *Hartman* and *Reichle*, albeit in a different procedural context. More specifically, *Tobey v. Jones*, 2013 WL 286226 (4th Cir. Jan. 25, 2013), involved, among other claims, an airline passenger's § 1983 and *Bivens* claims against state and federal officers alleging that his arrest for protesting enhanced screening procedures at an airport violated his First and Fourth Amendment rights. The district court granted the defendants' motion to dismiss the airline passenger's Fourth Amendment claim, but it denied the defendants' motion to dismiss the passenger's First Amendment claim based on qualified immunity. *Id.* at *2. On appeal, the officers argued that, under *Reichle*, the passenger's First Amendment rights were not clearly established and they were entitled to qualified immunity. *Id.* at *9. The Fourth Circuit distinguished *Reichle* because it was an appeal from summary

judgment, stating "*Reichle* does not apply here because [the passenger] specifically alleges that his arrest was *not* supported by probable cause, and 'probable cause or its absence will be at least an evidentiary issue in practically all [] cases.'"  *Id.* (quoting *Hartman*, 547 U.S. at 265) (alteration in original).  At the motion to dismiss stage, the court "must credit [the passenger's] allegation that Appellants arrested or caused him to be arrested without probable cause," and therefore the passenger has "satisfied the requirement in *Hartman* and *Reichle* to plead an absence of probable cause." *Id.*

One view of *Tobey* is that the Fourth Circuit characterized *Hartman* and *Reichle* as requiring that the plaintiff plead an absence of probable cause in order to make out a cognizable First Amendment claim for retaliatory arrest.  If a plaintiff must *plead* an absence of probable cause to survive a motion to dismiss a claim against officers for an arrest in retaliation for expressing First Amendment rights, then it arguably follows that the plaintiff must *show* the absence of probable cause to survive a motion for summary judgment on the First Amendment retaliatory arrest claim.  On the other hand, a more circumspect view of *Tobey* is that the Fourth Circuit was not adopting the *Hartman* rule in the context of retaliatory arrests, but rather determining the effect of *Reichle* and *Hartman* on the appellants' qualified immunity argument at the motion to dismiss stage of litigation.

The latter interpretation of *Tobey* is likely the correct one.  For example, *Reichle* does not actually require that a plaintiff plead an absence of probable cause to state a First Amendment retaliatory arrest claim.  *See Reichle*, 132 S. Ct. at 2096.  Moreover, whether a plaintiff would have to show an absence of probable cause to overcome a *summary judgment* motion on the plaintiff's retaliatory arrest claim was not at issue in *Tobey*.  In light of the important First Amendment issues at stake in this case, the court believes the best approach is to allow McCoy

28

the opportunity to prove retaliatory arrest rather than foreclose his First Amendment claim as a matter of law.

Having decided that McCoy may proceed with his First Amendment retaliation claim despite the fact that the Officer Defendants possessed probable cause to arrest him, the court now turns to the merits. As explained above, this aspect of McCoy's § 1983 claim is coextensive with McCoy's as-applied constitutional challenge to the Ordinance. The Magistrate Judge carefully analyzed the record and the arguments of the parties, and she determined that there are genuine issues of material fact regarding whether McCoy was arrested in retaliation for his speech. This court agrees. The court adopts the Magistrate Judge's discussion of whether the Officer Defendants arrested McCoy in retaliation for his speech and fully incorporates it into this order.[6] Returning momentarily to McCoy's as-applied challenge, then, the court must deny McCoy's and the City's motions for summary judgment.

Although the court finds that there is a genuine issue of material fact as to whether the Officer Defendants violated McCoy's First Amendment rights during the arrest, the court nevertheless finds that they are entitled to qualified immunity. In the second prong of the qualified immunity analysis, the court asks whether the right at issue was clearly established at the time of McCoy's arrest. *See Pearson*, 555 U.S. at 232. As noted above, *Reichle* informs us that the right at issue here "is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Reichle*, 132 S. Ct. at 2094. Notably, the Court stated that it "has never

---

[6] The City and the Officer Defendants object to this finding "to the extent that" the Magistrate Judge did not consider the testimony of Richard Dennis, a third party witness to the encounter. Although the Magistrate Judge did not discuss this testimony, this does not mean she did not consider it. In fact, she noted that the "various factual characterizations indicate factual disputes." Report and Recommendation 21, ECF No. 220. In any event, this court finds that the testimony of Mr. Dennis does not resolve the genuine issues of fact on the issue of retaliatory arrest.

recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause," and as of the date of the plaintiff's arrest in that case—June 16, 2006—such a right was not "otherwise clearly established." *Id.* at 2093. Nor had such a right become clearly established in the Fourth Circuit as of the date of McCoy's arrest—October 17, 2009. Indeed, as discussed above, as of January 25, 2013, there is at least an argument that the Fourth Circuit now requires a plaintiff to plead an *absence* of probable cause to state a cognizable claim for First Amendment retaliatory arrest. *Tobey*, 2013 WL 286226, at *9. Therefore, the Officer Defendants are entitled to qualified immunity because McCoy's First Amendment right to be free from a retaliatory arrest that is supported by probable cause was not clearly established at the time of his arrest.

Accordingly, the court grants the Officer Defendants' motion for summary judgment on McCoy's § 1983 claims.

### 2. *The City's Motion for Judgment on the Pleadings*

According to the City, it is entitled to judgment on the pleadings as to McCoy's § 1983 claim because McCoy has not alleged facts sufficient to show a "custom" attributable to the City that proximately caused a deprivation of McCoy's constitutional rights. As the Magistrate Judge explained, however, McCoy alleges that the City is liable under § 1983 not based on governmental custom, but rather based on express policy—the Ordinance itself. *See Berkley v. Common Council of Charleston*, 63 F.3d 295, 296 (4th Cir. 1995) ("A municipality is not immune from section 1983 liability for unconstitutional enactments and other legislative

activities of the local legislature.").  Therefore, the Magistrate Judge recommended that the court deny this portion of the City's motion.[7]

This court agrees with the Magistrate Judge that McCoy sufficiently pleaded this element of § 1983 liability.  The court adopts the Magistrate Judge's recommendation regarding the City's motion for judgment on the pleadings and fully incorporates her discussion thereof into this order.  The City's motion for judgment on the pleadings is denied.

### 3. The City's Motion for Summary Judgment

The City has also moved for summary judgment as to McCoy's § 1983 claim.  Because the City contends that the Ordinance is constitutional, it argues that McCoy has not shown the existence of a specific policy or custom attributable to the City that inflicted constitutional injury on McCoy.  The City also argues that, to the extent probable cause existed to arrest McCoy, the City cannot be liable for a violation of McCoy's rights.  Conversely, McCoy argues that the Ordinance is unconstitutional and that the City is subject to municipal liability because he was arrested under the color of an unconstitutional enactment.

As noted above, the Magistrate Judge recommended a finding that the Ordinance is constitutional, and she agreed with the City that McCoy failed to show the existence of a policy or custom of unconstitutional enforcement of the Ordinance.  Accordingly, the Magistrate Judge recommended the court grant the City's motion for summary judgment.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), a majority of the Court recognized that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  *Id.* at 480.  For example, "a municipality may

---

[7] The City did not object to this portion of the Report and Recommendation.

be liable under § 1983 for a single decision of its properly constituted legislative body . . . because even a single decision by such a body unquestionably constitutes an act of official government policy." *Id.* Notably, a "policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle*, 326 F.3d at 471 (citation omitted) (alteration in original).

The Ordinance is an express policy of the City. The City Council, the City's legislative body with final policymaking authority, enacted the Ordinance in 1979. *See Stanley v. Kirkpatrick*, 592 S.E.2d 296, 299 n.6 (S.C. 2004) (explaining that the policymaker for the City is the City Council). McCoy was arrested pursuant to the Ordinance. Therefore, the Ordinance is a policy or custom for which the City may be liable.

For the City to be liable under § 1983, however, McCoy must still prove that the arrest deprived him of a constitutional right. *See City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986) (holding that a municipality may not be found liable for a constitutional violation in the absence of an unconstitutional act on the part of at least one municipal actor). Importantly, it is not necessarily the case that a constitutional violation will have occurred when an arrest is made pursuant to a statute that a court subsequently declares to be unconstitutional. *See, e.g.*, *DeFillippo*, 443 U.S. at 40 (holding that an arrest based on probable cause to believe respondent's conduct violated terms of city ordinance did not violate respondent's Fourth and

32

Fourteenth Amendment rights even though ordinance was later declared unconstitutionally vague).  Thus, to the extent McCoy sought summary judgment on his § 1983 claims based on the Ordinance's facial unconstitutionality, this motion is denied.

 Here, McCoy has alleged the arrest violated both his First and Fourth Amendment rights. As explained in detail above, regarding McCoy's Fourth Amendment rights, the Officer Defendants had ample probable cause to arrest McCoy.  Still, the court finds that there are genuine issues of material fact as to whether McCoy was arrested in retaliation for his speech. Although the City could argue that *Tobey* compels the result that McCoy's First Amendment retaliatory arrest claim fails as a matter of law, *see Tobey*, 2013 WL 286226, at *9, and thus McCoy cannot prove a violation of his constitutional rights for which the City could be liable, this court does not read *Tobey* that broadly.  If it did, this court would be placed in the somewhat awkward position of having determined that there are genuine issues of material fact regarding whether McCoy's First Amendment rights were violated, but having also determined that no defendant can be liable for the violation as a matter of law.  Thus, the court hereby denies the City's motion for summary judgment on McCoy's § 1983 claims.[8]  Because the court cannot determine whether the Ordinance is unconstitutional as applied to McCoy, to the extent McCoy sought summary judgment on his § 1983 claims on this basis, this motion is denied.

---

[8] In this regard, the court notes that in this case it is not inconsistent to force the City to undergo a trial while affording qualified immunity to the Officer Defendants.  In particular, it is possible that "a situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality."  *Int'l Ground Transp., Inc. v. Mayor of Ocean City*, 475 F.3d 214, 219 (4th Cir. 2007).  In fact, "such a verdict could result when the individual defendants successfully assert a qualified immunity defense."  *Id.*  Unlike individuals, municipalities cannot assert the defense of qualified immunity.  *Owen v. City of Independence*, 445 U.S. 622 (1980).  Consequently, where individual defendants cause a constitutional violation pursuant to an official policy of the municipality, the individual defendants may escape liability while the municipality may not.  *Int'l Ground Transp.*, 475 F.3d at 219.  Of course, the court is not determining that a First Amendment violation in fact occurred in this case, only emphasizing that, if one did, a jury verdict that the City is liable is not inconsistent with the court holding that the Officer Defendants cannot be liable.

33

C.  McCoy's State Law Tort Claims

The City and the Officer Defendants have each moved for summary judgment on McCoy's state law claims for malicious prosecution, false imprisonment, and assault and battery.[9]  First, both the City and the Officer Defendants assert that they are entitled to summary judgment based on various defenses under the South Carolina Tort Claims Act (SCTCA). Second, the City and the Officer Defendants assert that, even if the SCTCA does not apply, they are nonetheless entitled to summary judgment on each individual state law claim.    The Magistrate Judge found most of the defenses under the SCTCA to be inapplicable.  With respect to the claim for malicious prosecution against the City, however, the Magistrate Judge found the City to be immune under the SCTCA and recommended that the City's motion be granted. Finally, with respect to the claim for malicious prosecution against the Officer Defendants and the claims for false imprisonment and assault and battery against both the City and the Officer Defendants, the Magistrate Judge found that genuine issues of material fact preclude summary judgment.

*1.  Applicability of the SCTCA to the Officer Defendants and to the City*

As an initial matter, both the Officer Defendants and the City object to that portion of the Report and Recommendation wherein the Magistrate Judge construed the SCTCA and allowed McCoy to proceed with his state law claims against both the City and the Officer Defendants. Both the Officer Defendants and the City argue that the SCTCA "permits suits against the employer in most cases, against employees in some specific instances, but never allows both." ECF No. 228 at 2; *see* ECF No. 229 at 13–14.

---

[9] McCoy originally asserted another state law claim based on negligence, which he has voluntarily dismissed.  *See* ECF No. 212 at 1 n.2.

More particularly, the SCTCA grants immunity from liability for any tort to the State, its political subdivisions, and employees, while acting within the scope of official duty, except as waived therein.  S.C. CODE ANN. § 15-78-20(b).  The provisions of the SCTCA "establishing limitations on and exemptions to the liability of the State, its political subdivisions, and employees, while acting within the scope of official duty, must be liberally construed in favor of limiting the liability of the State."  *Id.* § 15-78-20(f).  Under the SCTCA, the general rule is that the employer, not the employee, is named as the party defendant where the employee is acting within the scope of his or her employment.  *See id.* § 15-78-70(a) (providing that an "employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor"); § 15-78-70(c) (stating that "a person, when bringing an action against a governmental entity under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting" and that, "[i]n the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant").  In this regard, the Officer Defendants note that McCoy's Amended Complaint alleges that the Officer Defendants were employees of the City and acting within the course and scope of their employment at the time of the acts at issue in this litigation.  Further, the Officer Defendants' Answer admits these allegations.  Thus, the Officer Defendants assert that they are immune from suit and that the City is the only proper defendant for McCoy's tort claims.

Notwithstanding the above, McCoy argued, and the Magistrate Judge agreed, that McCoy should be able to proceed against the Officer Defendants in their "individual" capacities while also proceeding against the City.  More particularly, the SCTCA provides an exception to the

government's waiver of liability for "employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." *Id.* § 15-78-60(17); *see id.* § 15-78-70(b) (stating that employees are not entitled to immunity "if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude"). McCoy avers that, in addition to arguing that the Officer Defendants were acting pursuant to their official duties, he has alternatively presented sufficient evidence for the jury to conclude that the Officer Defendants "acted with fraud, actual malice, and intent to harm." ECF No. 212 at 34.

Thus, McCoy asserts that he is entitled to pursue alternative theories of liability, citing by way of example FED. R. CIV. P. 8(d) (providing that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically" and noting that "[a] party may state as many separate claims or defenses as it has, regardless of consistency"). In other words, to hold the City liable, McCoy must show that the Officer Defendants acted within the scope of their employment, and normally this would mean that the Officer Defendants are immune from liability. According to McCoy, though, he can simultaneously argue that the Officer Defendants are liable because their conduct was outside the scope of their employment or constituted actual fraud, actual malice, or intent to harm, any of which would mean that the Officer Defendants are not entitled to immunity under the SCTCA. Relying on an earlier order of this court in this litigation which stated that, as to the Officer Defendants, the action will proceed "in their individual capacities only," *see* ECF No. 79 at 2, the Magistrate Judge recommended that the court find that the Officer Defendants are not entitled to immunity under the SCTCA and deny this portion of their motion for summary judgment.

The court first notes that the earlier order on which the Magistrate Judge relied related *only* to McCoy's claims under § 1983. In particular, the earlier order adopted the Magistrate Judge's Report and Recommendation that McCoy's § 1983 claims against the Officer Defendants in their official capacities be dismissed because federal law treats a § 1983 action against defendants in their official capacities as an action against the municipality. *See* ECF No. 52 at 12–13; ECF No. 79 at 2. McCoy's state law causes of action were not at issue in that order. Thus, the Magistrate Judge should not have relied on that order in determining that the Officer Defendants are not entitled to immunity under the SCTCA.

In any event, even if McCoy were correct that he should be allowed to present alternative theories at this stage in the litigation, and considering the facts in the light most favorable to McCoy, McCoy has not shown a genuine issue as to whether the Officer Defendants' conduct meets the exception in the SCTCA allowing employee liability. Based on his responses to the City's interrogatories, to support this claim McCoy appears to be relying primarily on the allegations in his Amended Complaint, the incident report, the video of the arrest, and his own deposition testimony. *See* ECF No. 202 at 39; ECF No. 202-13 at 8. However, as discussed above, based on the video, the Officer Defendants possessed probable cause to arrest McCoy; the video is not "clear exculpatory evidence." Also, there is no evidence that the Officer Defendants falsified the incident report or intentionally failed to timely submit required booking information to the detention center. In his Response to the Officer Defendants' Motion for Summary Judgment, McCoy neither sets forth nor cites to any other record evidence in support of these allegations. Instead, he flatly states that, "in this particular set of facts," his evidence is sufficient. This is not so. "One of the principal purposes of the summary judgment rule is to

isolate and dispose of factually unsupported claims or defenses," and Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Accordingly, the Officer Defendants are entitled to immunity under the SCTCA, S.C. CODE ANN. § 15-78-70(a)–(b).

Next, the City asserts that it is immune based on several provisions of the SCTCA, including sections 15-78-60(4), which provides immunity to government entities for loss resulting from "the enforcement [of] . . . any law . . . including, but not limited to, any ordinance," and 15-78-60(17), which as noted above provides immunity where an employee's conduct is "outside the scope of his official duties or . . . constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." First, based on the above discussion, the court finds that the exception set forth in section 15-78-60(17) does not apply, as the Officer Defendants are entitled to summary judgment on that issue.

Regarding the exception in section 15-78-60(4), the City argues that the entire thrust of McCoy's claims concerns the City's enforcement of the Ordinance and thus the City is entitled to immunity. McCoy disagrees, arguing that his case "does not involve enforcement of an ordinance, but rather the Officers' warrantless arrest of McCoy without probable cause." ECF No. 212 at 10–11. McCoy also argues that South Carolina courts have held governmental immunity under the SCTCA inapplicable in cases involving false arrests. *See id.* at 10.

The court finds that this exception applies to this case. All of McCoy's state law tort claims result from his arrest, which as explained above was supported by probable cause. Therefore, the cases McCoy cites are fully distinguishable. The City is immune from liability for

38

McCoy's state law tort claims under the SCTCA, and the court hereby grants the City's motion for summary judgment in that regard.

### 2. *McCoy's State Law Tort Claims*

As discussed above, the court finds that both the City and the Officer Defendants are immune from liability under the provisions of the SCTCA.[10]  Even if this were not the case with respect to either or both of the City and the Officer Defendants, they would still be entitled to summary judgment on McCoy's state law claims at least because McCoy's arrest was supported by probable cause.[11]  In particular, one element of the tort of malicious prosecution is the lack of probable cause.  *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 648 (S.C. 2006).  Also, a plaintiff cannot maintain a claim based on false imprisonment when the plaintiff is arrested by lawful authority (i.e., when the arrest is supported by probable cause).  *Jones v. City of Columbia*, 389 S.E.2d 662, 663 (S.C. 1990).  Thus, the existence of probable cause to support McCoy's arrest defeats his claims for malicious prosecution and false imprisonment.

Finally, a law enforcement officer who uses reasonable force in effecting a lawful arrest is not liable for assault or battery.  *See Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995); *Moody v. Ferguson*, 732 F. Supp. 627, 632 (D.S.C. 1989).  However, if the officer uses excessive force, or "force greater than is reasonably necessary under the circumstances," the officer may be liable for assault or battery.  *Moody*, 732 F. Supp. at 632. Although McCoy's Amended Complaint does not allege that the Officer Defendants used

---

[10] The City also contends that it is immune from liability for McCoy's malicious prosecution claim under the SCTCA's immunity relating to "the institution or prosecution of a judicial proceeding."  S.C. CODE ANN. § 15-78-60(23).  The Magistrate Judge recommended that the court grant the City's motion for summary judgment on this issue because McCoy's cause of action for malicious prosecution plainly falls within this express exception.  The court agrees.  The court adopts the Magistrate Judge's recommendation regarding the City's motion for judgment on the pleadings and fully incorporates her discussion thereof into this order.

[11] The Officer Defendants assert several other defenses to McCoy's malicious prosecution claim which the court

excessive force during the arrest, in his deposition McCoy testified that the Officer Defendants applied excessive force by pushing him, by handcuffing and arresting him, and by taking him to jail. *See* ECF No. 202-1 at 296. Still, McCoy acknowledged that he was not physically injured in any way during the arrest. *Id.* at 301. In light of this evidence and in view of the video evidence of the arrest, the court finds that the Officer Defendants did not use excessive force in effecting the lawful arrest of McCoy. Although the Officer Defendants did push McCoy, they clearly did so to move McCoy away from the scene of McAlister's arrest. This was reasonable under the circumstances. Moreover, because probable cause supported McCoy's arrest, handcuffing him and taking him to jail was likewise reasonable. Therefore, neither the City nor the Officer Defendants are liable for assault and battery.

Based on the above, the City and the Officer Defendants are entitled to summary judgment on McCoy's state law tort claims both because they are entitled to immunity under the SCTCA and because McCoy cannot show each element of his tort claims as a matter of law.

### D.  Punitive Damages

McCoy's Amended Complaint seeks punitive damages from the Officer Defendants based on his state tort claims. However, the SCTCA states that "[n]o award for damages under this chapter shall include punitive or exemplary damages." S.C. CODE ANN. § 15-78-120(b). Acknowledging that the SCTCA excludes punitive damages, McCoy nevertheless argues that he can at least recover punitive damages from the Officer Defendants in their individual capacities. As explained in detail above, though, the Officer Defendants are entitled to immunity under the SCTCA because McCoy has shown no evidence that the actions of the Officer Defendants were

---

need not consider in light of its finding that probable cause supported McCoy's arrest.

outside the scope of their employment or constituted actual fraud, actual malice, or intent to harm. Consequently, McCoy may not recover punitive damages against the Officer Defendants, and the court hereby grants their motion for summary judgment on McCoy's claim for punitive damages.

## III. CONCLUSION

The court has considered in detail the briefs and arguments of the parties, the Report and Recommendation, and all objections thereto. Based on the foregoing, the court finds that the Ordinance is facially unconstitutional as unduly vague, but the court finds that genuine issues of material fact preclude granting summary judgment to either the City or to McCoy on the issue of whether the Ordinance was unconstitutionally applied to McCoy in this case. Thus, the court hereby grants, in part, and denies, in part, McCoy's motion for summary judgment and denies the City's motion for summary judgment regarding the constitutionality of the Ordinance.

With respect to McCoy's claims under § 1983, the court finds that McCoy's arrest was supported by probable cause and that the Officer Defendants are entitled to qualified immunity. Thus, the court grants the Officer Defendants' motion for summary judgment on these claims. As discussed above, however, the court finds that there are genuine issues of material fact regarding whether McCoy's arrest was in retaliation for his speech despite the existence of probable cause. Therefore, although his Fourth Amendment rights were not violated, it is conceivable that his First Amendment rights could have been. Accordingly, the court denies the City's motion for summary judgment on McCoy's § 1983 claims. To the extent McCoy sought summary judgment on his § 1983 claims against the City based on the Ordinance's unconstitutionality, either facially or as applied, this motion is also denied.

With respect to McCoy's state law tort claims for malicious prosecution, false imprisonment, and assault and battery, the court finds that the City and the Officer Defendants are immune under the provisions of the SCTCA. The court also finds that McCoy's state law tort claims fail as a matter of law. Therefore, the court grants the City's and the Officer Defendants' motions for summary judgment on these claims. Finally, because the court finds that the Officer Defendants are immune under the SCTCA, they cannot be liable for punitive damages. Accordingly, the court grants the Officer Defendants' motions for summary judgment on this issue.

This case will proceed to trial on the constitutionality of the Ordinance as applied to McCoy during his arrest and on the City's liability, if any, under § 1983.

IT IS SO ORDERED.

March 11, 2013
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge